IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 19-cr-00243-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL TRACY McFADDEN,

    **Defendant.**

---

**OBJECTION TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 414, 404(b), AND 807**

---

Mr. McFadden by and through his attorney Sean M. McDermott, submits his response to the Government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 414, 404(b) and 807:

Introduction

Mr. McFadden was a marked man who attempted to do right by his extended but dysfunctional family. Mr. McFadden was marked because of an illegal act of sexual assault that he pled guilty to shortly after his 18th birthday. That offense occurred on December 26, 1989. Mr. McFadden, who himself was abused as a child pled guilty to a sex offense against a minor.

Mr. McFadden was trusted with his extended family's kids and other kids. The kids' parents had serious problems and so the kids would stay with Mr. McFadden. The house was often crowded. Some of the parents would stay at the residence as well. On December 15, 2012, a disgruntled child who was upset with Mr. McFadden made up a story that Mr. McFadden had touched him. This child had previously said that nobody had ever sexually abused him.

This uncorroborated outcry broke the dam and a flood of false accusations followed. A second child who a mere three weeks earlier had denied any touching, changed his story, and alleged Mr. McFadden touched him.

An arrest warrant for Michael McFadden was applied for on January 3, 2013. The warrant alleged there was probable cause for the arrest of Mr. McFadden regarding these allegations against these two children, even though their allegations were objectively suspect.

Mr. McFadden has been unfairly accused. The prosecution takes great pains to point out that Mr. McFadden was convicted in state court. Mr. McFadden was convicted in state court because of the sheer volume of allegations. The prosecution knows that Mr. McFadden has zero chance of prevailing in this case if the Government is allowed to present the evidence that the Government wants to present in their Notice.

It is the **quantity rather than the quality of the allegations against Mr. McFadden that led to his unfair conviction in state Court**. Because the proffered evidence is **unfairly prejudicial**, Mr. McFadden requests that the proffered evidence not be admitted. Against the backdrop of the unfair allegations, that finally occurred in December 2012, by people who had previously said nothing happened, the Court should take into consideration the unfairness of the inflammatory nature of the allegations that are made without any physical corroboration.

Family Background

I.S.'s guardian was Dian S____. I.S. started to stay at Mr. McFadden's residence at 2980 D ½ Road, Grand Junction, CO because his mom worked out of state every other month.

Duane R____ and Anita R____ had a daughter named Cindy R____. Crystal M____ is the daughter of Cindy R____ and Tony M____ who is Michael M____'s half-brother. Crystal M____ has three children. These children include E.S. f/k/a E.M whose father is Mathew

███ S███ She also had a child D.O. whose father is Ryan O█████. She also has a daughter, J.M. (INV_GJPD_0000025). The person who is the father is unknown. Ryan S███ is I.S.'s Uncle.

Terry R███ is the son of Duane and Anita R███. A woman named Theresa R███ is married to Terry R███. Theresa is the daughter-in-law of Cindy R███. Theresa R███ had Michelle R███ who had four kids including L.W. and J.W. Thomas W███ acted as the legal father for L.W. (DOB ██████) and J.W. (DOB ██████). Thomas W███ and Michelle R███ were divorced. (INV_GJPD_0000025). Michelle R███ who is Mr. McFadden's niece and the mother of J.W. and L.W. had difficulty caring for J.W. and L.W. Therefore, the kids would come over. As their uncle, Michael McFadden would care for them

When Theresa R███ would get upset with Mr. McFadden, she would talk about him being a registered sex offender in front of the kids. Theresa R███' grandparents Duane R███ and Anita R███ would also refer to Mr. McFadden being a registered sex offender in front of the kids.

The W█████ family moved next door to Mr. McFadden and others when Mr. McFadden resided at 2980 D ½ Road, Grand Junction Colorado. Prior to this, this family had reports of sexual abuse involving the children and completely independent of Mr. McFadden. These include allegations of someone perpetrating on S.J.W. and K.W. (INV_GJPD_1103), February 2007 allegations that K.W. touched S.J.W. inappropriately. (INV_GJPD_1103), investigation of other incest, *(INV_GJPD_1103)* and KW being a victim of neglect in 2010 (INV_GJPD_1104). K.W. would come to the home because Stacy W█████ was having difficulty with K.W. K.W. would often be put in a stabilizing unit.

Prior to moving to 2980 D ½ Road Mr McFadden resided at 476 Glen Road, Grand Junction, Colorado with Phyllis and John Hockenberry. Mr. McFadden moved in with the

3

Hockenberrys after his divorce from Tammie McFadden. In late 2009 they all moved to 2980 D ½ Road. The Hockenberry's reported that while at 476 Glen Road L.W., E.S., and K.W. would come to the home. They would stay the night. The Hockenberry's had a young son, S.H. who was friends with D.R. D.R. who was the young son of Leslie R███. Therefore, D.R. would come over the house. (INV_GJPD_00000260). Mr. McFadden happened to know Leslie Rader from junior high school.

### Beginning of the Investigation

After I.S. made his December 15, 2012, disclosure, law enforcement pulled Mr. McFadden's record and the reports from the 1989 case. This was done even though I.S. had previously made two false allegations against two different people. Law enforcement knew that Mr. McFadden was a registered sex offender for something he pled guilty to for something that was alleged when he was just north of 18 years old. On December 19, 2012, Detective Prescott looked up the 1990 case (INV_GJPD__48). Detective Prescott contacted Theresa R███ and talked to her about her former son-in-law, Thomas W███ alleging that one of the boys made disturbing statements about things that Mr. McFadden had allegedly done in 2008. (INV_GJPD__49). That investigation had been closed when J.W. and his brother L.W. stated that nothing happened. (INV_GJPD_0000003 and GJPD0000007). LW was interviewed again and again said nothing happened. (INV_GJPD_29).

Detective Prescott went to visit Thomas W███ who was in jail on a parole violation, to revisit this non-disclosure from four years earlier. Although, there was a reasonable basis to pause and conduct further investigation, by January 3, 2013, Detective Prescott asked for and obtained an arrest warrant for allegations made by I.S. and then E.S. Within 17 days of his investigation Detective Prescott asked for and obtained an arrest warrant even though I.S. had made two

4

allegations against two other people and even though 13 days earlier E.S. had said that Mr. McFadden had not inappropriately touched him or I.S. and that I.S. was simply saying this to get Mr. McFadden in trouble. The dominoes fell from there.

## RULE 414 EVIDENCE

### Allegation Made December 15, 2012

**Other alleged Acts Related to I.S.**

On December 15, 2012, almost 23 years after the allegation that got Mr. McFadden branded a sex offender. I.S. made a disclosure that set off the chain of false accusations. His guardian Dian S█████ called the police. She told Officer Eric Wood, that I.S. told her son Ryan S█████ and his cousin E.M. (now E.S.) that Uncle Mike (McFadden) had touched him inappropriately.

Ms. S█████ also stated that I.S. had been acting out. She believed it was because she had to work out of state every other month from June 2012 until October 2012. What is not included in the police report is that I.S. came to stay on weekends with Mr. McFadden after I.S. falsely accused Ryan S█████ of sexually assaulting Mr. McFadden.

I.S. would stay with Uncle Mike (McFadden) at 2980 D ½ Road, Grand Junction, Colorado. At the time Ms. Staudard was interviewed I.S. was staying with Mr. McFadden on weekends while she worked. (INV_GJPD_0000007). What is not included in the report is that I.S. was upset with Mr. McFadden for enforcing Teresa's rules. I.S. then made a false allegation against Mr. McFadden.

I.S. had previously been interviewed by a caseworker. After having behavior issues and after acting out sexually he was interviewed on March 3, 2009, I.S. denied that anyone had ever touched him inappropriately. (INV_GJPD_000179). In October 2011, abuse against I.S. by another person who is not Michael McFadden was investigated. (INV_GJPD_1078).

5

As a result of I.S.'s report E.S. f/k/a E.M. was interviewed on December 21, 2012. E.S. was asked whether he had ever been touched inappropriately by Mr. McFadden. He answered no. E.S. said that I.S. told him that Mr. McFadden or Uncle Mike had touched him inappropriately. E.S. stated that Mike did not touch I.S. or anyone else in the privates. He stated that I.S. said this because he just wanted to get Mr. McFadden in trouble but that he didn't know why he wanted to get Mr. McFadden in trouble. (INV_GJPD_ 000331). In sum, I.S.'s allegation is unfairly prejudicial as misappropriation to Mr. McFadden or retaliation against Mr. McFadden for enforcing I.S.'s mother's rules is a real possibility.

### Other alleged Acts Related to E.S. f/k/a E.M.

As stated above, on December 21, 2012. E.S. denied being touched by Mr. McFadden. He even went as far to say that Mr. McFadden didn't touch him or anyone inappropriately and that I.S. was just trying to get Mr. McFadden in trouble. (INV_GJPD_ 000331). On January 2, 2013, Detective Prescott was scheduled to interview E.M.'s brother D.O. By this time, pressure was mounting to have Mr. McFadden arrested.

E.S. who is D. O's brother showed up at the interview and changed his December 21, 2012, story. E.S.'s allegation against Mr. McFadden is unreliable. Its admission will unfairly prejudice Mr. McFadden. Parenthetically but relevant to the falsity of E.S.'s allegation, during Detective Prescott's interview of D.O., D.O. denied any abuse by Michael McFadden.

### Other alleged Acts Related to J.W.

On January 21, 2009, J.W. denied that Mr. McFadden abused him. (GJ_PD_000050). On December 21, 2012, in an interview with Nicole Surad from Family Services there was another denial of abuse (GJ_PD_000147). While he denied abuse in this December 21, 2012, interview, he did make detailed disclosures related to other adults in his life. (GJ_PD_000147).

6

J.W. said he was not allowed in a pod outside of the house because his mom (Michelle R███) and Crystal M██████ "do drugs." He reported that his mom and Crystal are generally lazy and don't pick up after themselves. They smoke weed and cigarettes. However, when they smoke weed, they get energy and then they clean the whole house. His mom and Aunt Crystal live in the pod. Not being allowed in the pod, because of their drug use, he slept with his Uncle Mike. He said that Uncle Mike was like a father to him. He was asked about sexual behavior and he reported none. He went on to say that the only adult he had seen naked was his mother. (GJ_PD_000147).

On February 7, 2013, in an interview with Detective Prescott and Julie Stogsdill, there was finally an allegation of abuse. A testimonial hearing can reveal that this final interview was very suggestive and therefore unreliable. It also came after others were putting pressure to have Mr. McFadden punished. There is no physical evidence to support the allegations. On their own the allegations in the charging document are suspect.

**Other alleged Acts Related to K.W**.

K.W. and his family had a long history of interaction with Mr. McFadden. K.W. never mentioned any abuse until after Mr. McFadden was arrested on January 3, 2013, and K.W. was travelling back to Colorado with his parents. Detective Prescott contacted the W██████ family and informed them that an arrest warrant for Mr. McFadden had been signed. Following this arrest warrant KW, allegedly had a conversation with his mother on the way back from Nebraska. He said he hoped Mr. McFadden would be put away. His mom asked why. He said because Mr. McFadden had sex with J.W. K.W.'s mom took it upon herself to think that K.W. was talking about himself and not J.W. She took him to counselor Emily Bowman at the Montrose Center for Mental Health and then he disclosed.

No disclosure occurred until the shame of an arrest warrant followed Mr. McFadden. Mr. McFadden had been in K.W.'s life for several years, but no disclosure occurred until now. The W▮ family was no stranger to accusations of sexual abuse. These include allegations of someone perpetrating on S.J.W. and K.W. (INV_GJPD_1103), February 2007 allegations that K.W. touched S.J.W. inappropriately. (INV_GJPD_1103). The possibility of misappropriation is high. Especially considering that in January of 2013 K.W. was telling his mom that Mr. McFadden had done an act to someone who was not him.

### Other alleged Acts Related to S.J.W.

All people who know Mr. McFadden in the police reports state that he favored being around boys rather than girls. However, S.J.W. S.J.W.'s allegations of Mr. McFadden putting his finger up her butt, do not fit. However, S.J.W. was familiar with the topic sexual abuse. There were allegations of her having a special relationship with her father and of K.W. abusing her. (INV_GJPD_1103). The trustworthiness of her allegation is low.

### Other alleged Acts Related to D.R.

On March 26, 2013, law enforcement contacted D.R.'s mom Lesleigh R▮ of the allegations against Mr. McFadden. Lesleigh R▮ told law enforcement that she had previously asked D.R. about the allegations. He told her that Mr. McFadden had not done anything to him. (INV_GJPD_260). At the state jury trial D.R.'s statement was found inadmissible as the Court found that it did not describe sexual touching. (TRAN_1439).

### Other alleged Acts Related to L.W.

On January 21, 2009, L.W. denied any abuse. Almost four years later, in another interview with Detective Prescott, on December 19, 2012, L.W. denied any abuse. L.W. denied any abuse

on January 16, 2013. L.W. continued to deny the abuse as recently as May 22, 2018. He finally alleged abuse on August 8, 2018.

It should be noted that L.W. is K.W. and S.J.W.'s younger brother. His is the most recent allegation. On January 21, 2009. he was interviewed at the same location as his brother who was also interviewed the same day. Like his older K.W. he denied any inappropriate touching by Mr. McFadden. He continued those denials for more than nine years. On its face his allegation is suspect to say the least.

### Acts Regarding M.S.

M.S. involves conduct from 1989. This conduct was 20 years prior to the allegations in this case. Mr. McFadden's plea in that case, most likely led to the poisoning of the well with his family, which led to the first untrue allegation by I.S.

### RULE 404(b) EVIDENCE

The prosecution asks for the Court to admit evidence regarding the use of sleep aids including melatonin and a "clump" in drinks to show that Mr. McFadden, used sleep aids to lull victims to sleep. This should be determined at an evidentiary hearing. At a hearing the Court can determine the likelihood of whether melatonin was misused. Additionally, the Court can weigh whether an unidentified "clump" in a drink is probative under FRE 401 or unfairly prejudicial under FRE 403. With respect to the other grooming behaviors mentioned at Doc. No. 39 p. 13-14, the Court can and should weigh the context of the evidence so that any inadmissible lay opinion can be excluded pre-trial. On the one-hand, while the prosecution may view the activities as grooming, a reasonable person can conclude that the activities and stability provided to the kids of parents with drug problems and other stability problems as something more charitable.

### RULE 807 EVIDENCE

9

The prosecution intends to use a visual and audio recording of a January 16, 2013 interview at the Dolphin House Center in Montrose, Colorado of K.W. Doc. No 39. P. 15. The defense objects to the use of this recording. An evidentiary hearing will establish that the use of this recording is unreliable. K.W. never disclosed anything until he was surrounded by people who influenced his disclosure.

K.W. never mentioned any abuse until after Mr. McFadden was arrested 2013 and K.W. was travelling back to Colorado with his parents. Prior to him speaking with his parents, Detective Prescott contacted the Wesolowski family and informed them that an arrest warrant for Mr. McFadden had been signed. Following this arrest warrant KW, allegedly had a conversation with his mother on the way back from Nebraska. He said he hoped Mr. McFadden would be put away. His mom asked why. He said because Mr. McFadden had sex with J.W. K.W.'s mom took it upon herself to think that K.W. was talking about himself and not J.W. She took him to counselor Emily Bowman at the Montrose Center for Mental Health and then he eventually disclosed.

The circumstances leading up to the January 16, 2013, should be evaluated by this Honorable Court in an evidentiary hearing. At this hearing the Court should determine that the recording does not meet the reliability required by FRE 807.

**ARGUMENT**

The Government does not provide specifics with respect to the evidence it believes is part and parcel of the charged conduct in this case and therefore res gestae. The other acts with respect to K.W. and J.W. lack specificity with respect time, place, and manner, and therefore a sufficient foundation cannot be found at this time. See Doc. No. 39. P. 3-7. *United States v. Kimball,* 73 3.d 269,272 (10th Cir. 1995). Given the unreliability of the initial disclosures by K.W. and J.W. other allegations without support, will unfairly prejudice Mr. McFadden.

**1. I.S.'s Proffered Evidence is Unreliable**

As stated above the initial unreliable disclosure made by I.S. that was made when he had a motive to fabricate, and a history of fabrication started a chain reaction of falsehoods. To recap, on March 3, 2009, I.S. denied that anyone had ever touched him inappropriately. (INV_GJPD_000179).

In October 2011, abuse against I.S. by at least one other person who is not Michael McFadden was investigated. (INV_GJPD_1078). It was determined to be unfounded. He had a motive to get Mr. McFadden in trouble and he had made false allegations regarding other adults.

**2. E.S.'s Proffered Evidence is Unreliable**

E.S. had initially said that I.S. was not telling the truth and that I.S. just wanted to get Mr. McFadden in trouble. E.S. initially denied that Mr. McFadden did anything to him. A hearing should be conducted to determine the circumstances of E.S. changing his story.

**3. J.W.'s Proffered Evidence is Unreliable**

On January 21, 2009, J.W. denied that Mr. McFadden abused him. (GJ_PD_000050). On December 21, 2012, in an interview with Nicole Surad from Family Services there was another denial of abuse (GJ_PD_000147). While he denied abuse in this December 21, 2012, interview, J.W. made detailed disclosures related to other adults in his life. (GJ_PD_000147).

**4. K.W's Proffered Evidence is Unreliable**

K.W. and his family had a long history of interaction with Mr. McFadden. K.W. never mentioned any abuse until after Mr. McFadden was arrested on January 3, 2013, and K.W. was travelling back to Colorado with his parents. Detective Prescott contacted the Wesolowski family and informed them that an arrest warrant for Mr. McFadden had been signed. Following this arrest warrant KW, allegedly had a conversation with his mother on the way back from Nebraska. He

11

said he hoped Mr. McFadden would be put away. His mom asked why. He said because Mr. McFadden had sex with J.W. K.W. was taken to counselor Emily Bowman at the Montrose Center for Mental Health and then he eventually disclosed.

### 5. SJW's Proffered Evidence is Unreliable

SJW's statement was made late in time, after Mr. McFadden had publicly been castigated. Her recitation does not fit into the overall narrative that Mr. McFadden preferred to do things with boys. Unfortunately SJW was familiar with the topic of sexual abuse and she had alleged that others in her family had abused her.

### 6. D.R.'s Proffered Evidence is Unreliable

D.R. changed his story in March 2013. He previously told his mother that Mr. McFadden had not done anything improper to him.

A hearing should be conducted to determine the reliability or unreliability of all of the proffered FRE 414 material.

### 7. L.W.'s proffered Evidence is Unreliable

On January 21, 2009, L.W. denied any abuse. Almost four years later, in another interview with Detective Prescott, on December 19, 2012, L.W. denied any abuse. L.W. denied any abuse on January 16, 2013. L.W. continued to deny the abuse as recently as May 22, 2018. He finally alleged abuse on August 8, 2018.

### 8. Evidence Regarding MS

The conduct was alleged in 1989 and Mr. McFadden pled guilty in the case. It is this case and the subsequent registration by Mr. McFadden which led to him being treated unfairly by his community and law enforcement.

### A. LEGAL STANDARDS

12

The Government wants to use the proffered evidence to prove the Mr. McFadden violated 18 U.S.C. § 2241(c) which is alleged in Counts One and Three and prove Counts Two, Four, and Five which charges a violation of 18 U.S.C. §2423(e). The Government wants to use this evidence to show that Mr. McFadden crossed a state line with the intent to engage in a sex act with a victim, Counts One and Three, and that Mr. McFadden transported a victim with the intent that the victim engage in sexual activity for which any person could be charged with a criminal offense; Counts Two, Four, and Five.

The unreliability of the proffered evidence renders its admission unfairly prejudicial and therefore inadmissible under FRE 403 and the cases that interpret FRE 414.

### B-C. Fed R. EVID 414 and FED R. EVID. 404(b)

The unreliable nature of the proffered evidence and outcries renders the proffered evidence inadmissible. The Court should conduct a pre-trial evidentiary hearing to determine admissibility.

There are three "threshold requirements" for admitting evidence pursuant to Rule 414: "(1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant." United States v. Benally, 500 F.3d 1085, 1090 (10th Cir. 2007). But that is not the end of the road. (Courts) subject Rule 414 evidence to a particular breed of **Rule 403** balancing and insist that "**the district court has an obligation 'to fully evaluate the proffered . . . evidence and make a clear record of the reasoning behind its findings.'**" Id. at 1091 (omission in original) (quoting United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998)). United States v. Piette, No. 20-7008, 2022 U.S. App. LEXIS 23004, at *29-30 (10th Cir. Aug. 18, 2022).

13

This specialized Rule 403 inquiry has two stages. First, the district court must consider the four *Enjady* factors: "(1) how clearly the prior act has been proved; (2) how probative the evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself of any less prejudicial evidence." *United States v. Perrault*, 995 F.3d 748, 765-66 (10th Cir. 2021) (footnotes omitted); *see also United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998). The district court must next weigh the *Enjady* factors against three additional factors: "(1) how likely [it is that] such evidence will contribute to an improperly-based jury verdict; (2) the extent to which such evidence will distract the jury from the central issues of the trial; and (3) how time consuming it will be to prove the prior conduct." *Perrault*, 995 F.3d at 766. *United States v. Piette*, No. 20-7008, 2022 U.S. App. LEXIS 23004, at *30 n.4 (10th Cir. Aug. 18, 2022)

In this case the four *Enjady* factors weigh in favor of the Rule 414 evidence being excluded. The sheer volume of uncharged conduct dwarfs the unreliability of the uncharged conduct. The uncharged conduct is vehemently disputed. The Court should conduct an evidentiary hearing to determine the reliability of the allegations and whether the reliability or lack of reliability balanced with inflammatory nature of the allegations passes muster under **Rule 414 and 403.**

### D. FED. R. EVID 807

K.W.'s recorded and delayed statement, which was made after Mr. McFadden's community had turned on him should not be admitted.

> Federal Rule of Evidence 807 provides:
>
> (a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> (1) the statement is supported by sufficient guarantees

14

> of trustworthiness—after considering the totality of
> circumstances under which it was made and evidence, if any,
> corroborating the statement; and it is more probative on the
> point for which it is offered than any other evidence that the
> proponent can obtain through reasonable efforts.

Rule 807 "should be used only in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice . . . courts regularly employ the residual exception in child abuse litigation." *United States v. Harrison*, 296 F.3d 994, 1003 (10th Cir. 2002). In determining whether hearsay statements made by a child in a sexual assault case are reliable for purposes of Rule 807, the court should consider "the spontaneity of the child's statement, the consistent repetition of the child's allegation, the mental state of the child, the use of terminology unexpected of a child of a similar age, and the lack of a motive to fabricate" as well as the length of time that had passed between the abuse and the statement. *United States v. Tome*, 61 F.3d 1446, 1452-53 (10th Cir.1995) (discussing admissibility under prior residual hearsay exception Rule 803(24)). In order to admit a child's hearsay statement regarding sexual abuse, the court must consider whether the child "was particularly likely to be telling the truth when the statement was made." *Id.* at 1452.

K.W. and his family had a long history of interaction with Mr. McFadden. K.W. never mentioned any abuse until after Mr. McFadden was arrested on January 3, 2013, and K.W. was travelling back to Colorado with his parents. There was a long delay in the reporting. KW allegedly had a conversation with his mother on the way back from Nebraska where he discussed Mr. McFadden harming JW, not himself. He said he hoped Mr. McFadden would be put away. His mom asked why. He said because Mr. McFadden had sex with J.W. After returning to Colorado, K.W. was taken to counselor Emily Bowman at the Montrose Center for Mental Health and then

15

he eventually disclosed. It is the defenses understanding that the disclosure came after multiple sessions.

## CONCLUSION

The Court must be confident that the proffered evidence is reliable enough that it will unfairly prejudice the fact finder. The Court cannot permit the jury to unfairly have its passion inflamed. The Court should conduct a pre-trial hearing to determine whether the proffered evidence is admissible under Rule 404(b), Rule 403, Rule 414, and Rule 807.

WHEREFORE, Mr. McFadden respectfully requests that this Court have an evidentiary hearing, and at a minimum deny the admission of FRE 414 and FRE 807 evidence.

Respectfully submitted,

<u>s/Sean M. McDermott</u>
   Sean M. McDermott
   McDermott Stuart & Ward LLP
   140 E. 19th Avenue, Suite 300
   Denver, CO 80203
   (303) 832-8888
   (303) 863-8888 (fax)
   Email: smcdermott@mswdenver.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of September 2022, I filed the foregoing **pleading** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

s/ Sean McDermott
   Sean McDermott