IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00243-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL TRACY McFADDEN,

    Defendant.

**GOVERNMENT'S REPLY TO DEFENDANT'S OBJECTION TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 414, 404(b), AND 807**

The United States of America, by and through Jeremy Chaffin and Andrea Surratt, Assistant United States Attorneys, hereby responds to Mr. McFadden's motion seeking to exclude evidence the government intends to introduce pursuant to Rules 414, 404(b), and 807 of the Rules of Evidence.[1]  ECF # 79.  Mr. McFadden's challenge should be denied.

**OTHER ACT EVIDENCE**

Mr. McFadden alleges that the evidence the government intends to introduce under Rule 414 is unfairly prejudicial and unreliable.  He is mistaken.

A defendant's prior acts of child molestation may be admitted under Rule 414 of the Federal Rules of Evidence, if certain criteria are met: 1) the defendant must be accused of an offense of child molestation in the case; 2) the evidence proffered must

---

[1] Although the Mr. McFadden characterizes his motion as an objection or a response to the government's prior notice, it is more appropriately considered a motion to exclude the noticed evidence.

be evidence of the commission of another offense of child molestation; and 3) the evidence must be relevant.  *United States v. Sturm*, 673 F.3d 1274, 1282 (10th Cir. 2012).  Mr. McFadden does not appear to dispute these matters.

Because it is undisputed that the proffered evidence meets the criteria for admission under Rule 414, the Court must then look to Rule 403's balancing test to determine whether the evidence must nevertheless be excluded.  Under this rule, the Court must determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice."  F.R.E. 403; *United States v. Perrault*, 995 F.3d 748, 765 (10th Cir. 2021).  Importantly, Rule 414 evidence is not "unfairly prejudicial" simply because it shows a propensity to commit sexual assault, such prejudice is not unfair since the rule explicitly permits admission of the evidence for that purpose.  *Id.* (quoting Charles Alan Wright & Arthur R. Miller 23 Fed. Prac. & Proc. Evid. § 53787 (2d ed.)).  And, "the exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that [Rule 414] evidence 'normally' should be admitted."  *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998).

In evaluating the relative probative value and danger of unfair prejudice attributable to Rule 414 evidence, courts must consider generally proceed in two phases.  First, courts consider the four "*Enjady*" factors:

> 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence.

*Id.* at 1433 (citation omitted).  Next, courts analyze the probative dangers, considering three additional factors.

2

> 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

*Id.* It is here that Mr. McFadden claims the evidence fails to pass muster. However, Mr. McFadden misapplies the law and misapprehends the facts.

### 1. The 414 evidence has been clearly established.

Mr. McFadden primarily devotes his challenge to the alleged unreliability of the proffered evidence. In other words, Mr. McFadden believes that the prior acts have not been sufficiently established to be admitted. Yet Mr. McFadden seemingly ignores the applicable standard and the history of this case.

For the proffered evidence to be admissible, the Court need only "make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred." *Id.* (citation omitted). And here, most of the proffered 414 evidence was found to have occurred beyond a reasonable doubt by a jury in Mr. McFadden's underlying state trial or was admitted by Mr. McFadden. Indeed, only L.W.'s more recent disclosures have not yet been established beyond a reasonable doubt. Given the jury's certainty that Mr. McFadden committed acts of child molestation on J.W., K.W., I.S., E.S., S.J.W., and D.R.; and Mr. McFadden's plea of guilty to a similar act of child molestation committed on M.S., this Court can easily conclude that a jury could reasonably find that the acts alleged to have been committed on L.W. also occurred.

### 2. The 414 evidence is highly probative.

Mr. McFadden also seems to suggest that the proffered evidence lacks probative value. The Tenth Circuit has set forth several factors to guide such an analysis:

3

> (1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony.

*United States v. Benally*, 500 F.3d 1085, 1090–91 (10th Cir. 2007).  Each of these factors favor admission.

First, the proffered 414 evidence is highly similar.  Indeed, the bulk of the proffered 414 evidence, in terms of duration of testimony, will likely be other acts of child molestation committed by Mr. McFadden on J.W. and K.W., the charged victims in this case.[2]  *See* ECF # 39, pp. 4-8.  The acts of child molestation committed on the other victims are also highly similar.  All of the victims describe a similar pattern of grooming behavior in which Mr. McFadden frequently showered the children with gifts, catered to their wishes, allowed them to sleep in his bed, and ultimately exposed them to increasingly sexualized behavior.[3]  Generally Mr. McFadden molested the children while they were sleeping, and in several instances after they were given something that caused them to become sleepy.  The children all described similar acts of child molestation, committed in a similar manner in the same locations.  Even the acts committed by Mr. McFadden on S.J.W., which he alleges are dissimilar based on her gender, bear striking similarity to the testimony of the other victims.

---

[2] As the government has previously noted, the charged acts in this case occurred as part of long-standing pattern of abuse committed by Mr. McFadden on these victims.  Because the charged acts occurred during and amid various other acts of child molestation committed by Mr. McFadden, the government asserts such evidence is intrinsic evidence and admissible independent of Rule 414.  ECF # 39, pp. 16-17.  Of course, such evidence also falls within the ambit of Rule 414.

[3] Although the government provided notice of grooming behavior and use of sleep aides under Rule 404(b), the government primarily believes that this evidence is part and parcel of Mr. McFadden's prior acts of child molestation.  *See United States v. Perrault*, 995 F.3d 748, 770 (10th Cir. 2021) (concluding evidence showing a defendant's pattern of gift-giving and grooming methods was admissible under Rule 414).

Second, besides M.S., Mr. McFadden committed acts of child molestation on all of the children identified in the government's notice during the same time period. Indeed, the proffered 414 evidence was identified during a single ongoing investigation and came to light all at the same time. In addition to making this evidence highly relevant to the matters the government must establish, the closeness in time of all of the assaults also seems to be the crux of Mr. McFadden's defense, that all of these children are simply parroting each other's allegations.

Next, Mr. McFadden engaged in the alleged acts of child molestation on a frequent and regular basis. J.W. explained he was molested by Mr. McFadden hundreds of times. K.W. likewise explained that he was molested by Mr. McFadden "a lot." I.S., E.S., and L.W. similarly stated that they had molested on multiple occasions. The frequency and regularity of these acts make the 414 evidence all the more probative. After all, without such evidence it will be impossible for the jury to understand how acts of child molestation could ever be "normal" as J.W. describes them or why he has such difficulty narrowing the timeframe within which particular acts occurred.

Finally, there are no intervening events that would render this evidence inadmissible, and the evidence reduces the likelihood that the trial will devolve into a "swearing match" between the charged victims and Mr. McFadden. *See Enjady*, 134 F.2d at 1431.

Simply put, the Rule 414 evidence is highly probative of Mr. McFadden's intent to engage in sexual activity with J.W. and K.W. when he took them across state lines, his motive for doing so, his preparation and planning in grooming these children, absence of any mistake or accident, and his propensity to molest young children.

**3. The material facts are highly disputed.**

Mr. McFadden does not clearly discuss this factor. Instead, he simply asserts that the "uncharged conduct is vehemently disputed." ECF # 79, p. 14. Implicit in that assertion is that the material facts that the uncharged conduct is offered to prove are also "vehemently disputed." Yet, contrary to Mr. McFadden's implication, this supports admission. After all, "the more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *Sturm*, 673 F.3d at 1286.

**4. No other factor weighs against admissibility.**

Beyond the challenges discussed above, Mr. McFadden does not assert any further grounds for excluding the proffered 414 evidence. Nevertheless, the government briefly address the remaining factors.

First, there is no less prejudicial evidence available in this matter to establish the material facts that the government must establish. If that were the case, the government would pursue that evidence.

Next, the evidence is unlikely to result in an improperly-based verdict. To be sure, the proffered evidence may have an emotional impact on the jury. *See Perrault*, 995 F.3d at 770. But that is true of all Rule 414 evidence and is not a basis to exclude it. If it were, Rule 414 evidence could rarely, if ever, be admitted. *Id.* Moreover, any potential for an improperly-based verdict can be adequately addressed with a cautionary instruction. *Id.*

Finally, the evidence will neither distract the jury from the central issues of the trial—the evidence is directly related to the central issues—nor will it be time-consuming to introduce. The government simply intends to present the testimony of the Rule 414 witnesses describing the acts Mr. McFadden committed on them

After considering all of the factors, it is clear that the Rule 414 evidence proffered in the government's notice is highly probative. Although there may be some risk of unfair prejudice, that risk does not substantially outweigh the probative value of the evidence. Accordingly, this Court must reject Mr. McFadden's challenge to the evidence.

For similar reasons, the government also asserts that Mr. McFadden's cursory challenge to the admissibility of evidence under Rule 404(b) is without merit. The government otherwise relies on its prior arguments in favor of admissibility under Rule 404(b). ECF # 39, pp. 20-22.

## **RULE 807 EVIDENCE**

Mr. McFadden also contends that a 33-minute audio- and video-recorded interview of K.W. in which K.W. describes Mr. McFadden's assault of him during an interstate truck trip to Nebraska is not admissible pursuant to Federal Rule of Evidence 807. Mr. McFadden is incorrect.

The January 16, 2013, interview of K.W. is described in detail in the government's filing from December 2, 2020, giving notice of the government's intent to introduce the video as evidence pursuant to Rule 807 (the "Notice"). ECF #39. A transcript of the interview was filed as Exhibit 1 to the Notice. ECF #39-1. A copy of the recording will be provided as Exhibit A for the Court's review.

Federal Rule of Evidence 807 provides:

> (a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

7

>> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. . . .[4]

Courts have held that "[t]he residual hearsay exception is to be used rarely, and only in exceptional circumstances that generally exist when a child sexual abuse victim relates the details of the abusive events to an adult." *United States v. Gallardo*, 970 F.3d 1042, 1046 (8th Cir. 2020); *see also United States v. W.B.*, 452 F.3d 1002, 1005 (8th Cir. 2006) ("[E]xceptional circumstances generally exist when a child victim of sexual abuse is unable or unwilling to testify to a material issue regarding the abuse."). Indeed, the Tenth Circuit has noted that though Rule 807 "should be used only in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice[,] . . . courts regularly employ the residual exception in child abuse litigation." *United States v. Harrison*, 296 F.3d 994, 1003 (10th Cir. 2002) (internal citations omitted).

In determining whether hearsay statements made by a child in a sexual assault case are reliable for purposes of Rule 807, the court should consider "the spontaneity of the child's statement, the consistent repetition of the child's allegation, the mental state of the child, the use of terminology unexpected of a child of a similar age, and the lack of a motive to fabricate" as well as the length of time that had passed between the abuse and the statement. *United States v. Tome*, 61 F.3d 1446, 1452-53 (10th Cir. 1995) (discussing admissibility under prior residual hearsay exception in Rule 803(24)). To admit a child's hearsay statement regarding sexual abuse, the court must consider

---

[4] Rule 807 was amended in December 2019. The Committee Notes, however, explain that Rule 807 was "amended to fix a number of problems that the courts have encountered in applying it." The amendment, therefore, does not appear to invalidate the body of pre-2019 case law interpreting the Rule.

whether the child "was particularly likely to be telling the truth when the statement was made." *Id.* at 1452.

In *Harrison*, a child victim of sexual assault repeated the details of assaults at the hands of her mother's partner to law enforcement officers and others. Before trial, however, the victim recanted her story entirely and ultimately testified for the defendant. *Harrison*, 296 F.3d at 998-99, 1001. At trial, the district court admitted the victim's out of court statement to law enforcement pursuant to Rule 807. In affirming the district court's decision, the Tenth Circuit found persuasive the consistency of the victim's statements, the "professionalism of the law enforcement interrogator who elicited the statement," and the level of detail of the statements. *Harrison*, 296 F.3d at 995. When balanced against the countervailing considerations, such as the declarant's "possible motive to lie" and the length of time that had elapsed between the abuse and the disclosure (more than four years), the Court determined that the child victim's statements had "adequate indicia of reliability" to be admissible pursuant to Rule 807. *Id*.

1. **K.W.'s statement is supported by sufficient guarantees of trustworthiness.**

In connection with Mr. McFadden's underlying state trial, the prosecutor gave notice of his intent to introduce prior, out-of-courts statements of J.W., K.W., I.S., E.S., S.J.W., and D.R. pursuant to C.R.S. § 13-25-129, which provides "[a]n out-of-court statement made by a child . . . describing any act or attempted act of sexual contact, intrusion, or penetration . . . performed or attempted to be performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal . . . proceedings in which a child is a victim of an unlawful sexual offense."

9

Co. Rev. Stat. § 13-25-129.  The statute requires the court to find "in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability" and also requires that the child victim testify at trial or be unavailable as a witness, coupled with corroboration of the act that is the subject of the statement.  *Id*.

In support of the state prosecutor's motion, now-retired Grand Junction Police Department Detective Ed Prescott testified at various pretrial hearings about his investigation of the defendant, including the interviews he conducted with the victim children.  Transcripts of portions of Detective Prescott's state court testimony are attached as Exhibits B and C.  Detective Prescott testified about his 20 years of experience with the Grand Junction Police department, and explained his duties include the investigation of sexual assaults on children.  INV_TRAN_788, Ex. B at 4.  Detective Prescott has been trained in forensic interview techniques since 2010 and has undergone additional training since then.  INV_TRAN_823-24, Ex. B. at 39-40.  He is familiar with the protocols involved in forensic interviewing.  INV_TRAN_825, Ex. B. at 41.  He explained that, in Mr. McFadden's case, he conducted forensic interviews of all the victim children known to him. INV_TRAN_789, Ex. B at 5.

Detective Prescott testified at length about how he conducts forensic interviews.  He explained that, at the outset, he attempts to determine whether the children can tell the difference between "the truth and a lie."  INV_TRAN_831, Ex. B at 47.  Detective Prescott explained that he is trained to "interview and not lead or mislead a child and draw information out from them and not introduce information to them."
INV_TRAN_823, Ex. B at 39.  Typically, Detective Prescott hopes to get children to discuss the events in question "in a narrative if at all possible," but if the children will not

speak in a narrative form, he may "have to prompt them with questions." INV_TRAN_823, Ex. B at 42. Two major principles of forensic interviewing are to refrain from leading the children—that is, "not give them the answers in the questions"—and to not be suggestive. INV_TRAN_828, Ex. B at 44. Though, Detective Prescott explained, sometimes it is necessary to ask multiple choice questions of children who are struggling to provide a narrative. INV_TRAN_828-29, Ex. B at 44-45. Part of the process includes attempting to "determine whether [the children] have been coached." INV_TRAN_830, Ex. B at 46. While the circumstances of Detective Prescott's interviews differed from child to child, in each Detective Prescott endeavored to follow the protocols on which he had been trained in order to get "a reliable statement" from the victims by encouraging the "child to speak freely on their own." INV_TRAN_1138, 1140; Ex. C at 7, 9. With respect to K.W. ("K.WE." in the transcript), Detective Prescott explained that the interview was at the Dolphin House in Montrose, and occurred with only K.W. in the room. INV_TRAN_803, Ex. B at 19. He testified that K.W. was "age appropriate in his communication and the ability he had to communicate . . . and talk . . . freely." INV_TRAN_837, Ex. B at 53.

Ultimately, the court ruled that the out-of-court statements made by each of the children were admissible—with the exception of D.R.'s, which the court found did not "internally include a statement of sexual contact," as required by the Colorado statute. An excerpt from this transcript is attached as Exhibit D. As it pertains to K.W.'s statements ("K." in the transcript), the court found that while K.W.'s statement was "not spontaneous," K.W. spoke in "age appropriate language," determined that Detective Prescott did not prompt K.W. with leading questions, and concluded that there was no evidence of "bias against the Defendant" or "motive for lying." INV_TRAN_1436; Ex. D

11

at 11.  The court noted it was unaware of "any type of intervening event from the alleged abuse to disclosure."  INV_TRAN_1436; Ex. D at 11.  Moreover, the court found that K.W. "told a fairly elaborate story with substantial detail [which] provide[d] sufficient indicia of reliability for admission under 13-25-129."  INV_TRAN_1437; Ex. D at 12.  The out-of-court statements made by J.W., K.W., I.S., E.S., and S.J.W. were subsequently admitted at the underlying state trial and played for the jury.[5]

Here, of course, the government does not seek to admit pursuant to Rule 807 all of the victims' out-of-court statements regarding the abuse they suffered.  Rather, the government seeks to admit only K.W.'s January 16, 2013, recorded interview.  To the extent the Court determines additional testimony is necessary on this matter, the government will be prepared to call Detective Prescott.  The government anticipates that, if necessary, Detective Prescott would testify consistent with his testimony in the state court proceeding and explain the methods that he uses in interviews to elicit reliable information from victims such as K.W.  As described above, Detective Prescott's interview techniques are one way in which K.W.'s recorded statement is supported by a sufficient guarantee of trustworthiness. *Tome*, 61 F.3d at 1453 (in determining trustworthiness of out-of-court statement of child victim, noting interviewer's training and

---

[5] Accordingly, Mr. McFadden has already fully litigated the issue of reliability of K.W.'s prior statement in connection with his state court case.  Under similar circumstances, other courts in this circuit have found that the doctrine of collateral estoppel would prevent a defendant from reasserting identical arguments in support of a motion to suppress.  See *United States v. Yung*, 786 F.Supp 1561, 1564-65 (D. Kan. 1992); *United States v. Campbell*, 2009 WL 361155 at *3 (D. Kan. 2009).  However, the government acknowledges that the Supreme Court has expressed doubt that collateral estoppel can be applied in a criminal case.  See *Currier v. Virginia*, ___ U.S. ___, ___, 138 S.Ct. 2144, 2154-55 (2018).  Nevertheless, in prior cases courts have, in an abundance of caution, incorporated prior orders by reference in subsequent rulings. See *Campbell*, at *3.  The Court can simply recognize that Mr. McFadden has had a full and fair opportunity to litigate this matter, adopt the transcript of those proceedings into the record, and—after concluding that the second prong of Rule 807 is satisfied, as described below—deny his motion.

experience in interviewing children who were victims of abuse).

K.W.'s statements are also supported by sufficient guarantees of trustworthiness in other ways. Until recently, when, as described below, K.W. professed a lack of memory about the assaults, K.W.'s statements about the assaults have been consistent. Indeed, in the state prosecution in this matter, K.W. testified to the assault in the semi-truck and the local instances of molestation; K.W.'s testimony is attached as Exhibit E. INV_TRAN_2733-82; Ex. E at 1-50 (K.W. is identified as "K.H.W." in this portion of the state trial transcript). The interview the government seeks to introduce was conducted close in time to the assaults, which ended approximately two weeks prior to the interview. *Harrison*, 296 F.3d at 1005 (affirming district court's decision, pursuant to Rule 807, to admit out-of-court statements made years after sexual assault on a child). In the interview, K.W. uses terminology consistent with his age, such as "no-no" to describe both his penis and anus. K.W. also described the abuse in detail and distinguished between the assault that occurred in the semi-truck with the pattern of abuse that occurred at Mr. McFadden's home. *See Harrison*, 296 F.3d at 1005 (noting that "specificity and peculiarity" of the child's statement is relevant because "those features in themselves can suggest trustworthiness"). K.W. had no reason to fabricate statements during his forensic interview; to the contrary, he explained that he did not want to have to stop visiting Mr. McFadden's home. ECF #39-1 p.28. And, unlike many of the cases in which courts have introduced hearsay evidence of sexual assault on a child, K.W.'s statements were recorded, so the jury will have an opportunity to observe and evaluate K.W.'s demeanor.

While no one else witnessed the assaults themselves—an almost universal feature of sexual assaults—K.W.'s statements are corroborated in other ways. For

instance, K.W. described the sleeping arrangements in the semi-truck during the final assault in Nebraska. K.W.'s older brother, S.W., who was on the final trip to Nebraska, corroborated K.W.'s account of the sleeping arrangements and that he did not wake up during the night—as K.W. had described—explaining that he is a heavy sleeper. INV_GJPD_206-07; INV_FBI_181 (recording). K.W. also described the home where Mr. McFadden assaulted him repeatedly before the final semi-truck trip. Though K.W. could not recall the address, he described the area and the home in detail consistent with other witnesses.

In his objection to the government's Notice, Mr. McFadden claims that the circumstances surrounding K.W.'s disclosure makes it—and the statements in the video—unreliable. Mr. McFadden relies heavily on the lack of a disclosure prior to his arrest, and that K.W. first disclosed that Mr. McFadden had sex with J.W. In Mr. McFadden's view, K.W.'s "delayed" disclosure of the abuse Mr. McFadden inflicted upon him until he was safely home and meeting with a counselor somehow renders the disclosure unreliable. ECF #59 p.10, 15-16.

Of course, none of these facts render K.W.'s recorded statements unreliable. That K.W. first—and, as it happens, truthfully—told his mother about his suspicions about J.W.'s abuse before disclosing his own abuse has no bearing whatsoever on whether K.W.'s disclosure in the January 16, 2013, interview was reliable. What Mr. McFadden characterizes as K.W.'s "delayed statement" following the arrest was, in fact, only approximately two weeks after Mr. McFadden's abuse of K.W. had concluded. Pointing to the "long history of interaction" that K.W. and his family have had with him, Mr. McFadden seems to fault K.W. for not disclosing the abuse as it was ongoing and instead waiting until after Mr. McFadden's arrest. ECF #59 p.15.

But, this suggestion is entirely contrary to typical disclosure patterns, especially in child victims of sexual assault.  Cheryl Young, a marriage and family therapist at Behavior Health and Wellness in Grand Junction, testified at Mr. McFadden's underlying state trial as a blind expert and addressed issues associated with disclosure of sexual assault; a transcript of her testimony is attached as Exhibit F.[6]  She explained to the jury various factors that influence when and how a child might disclose sexual abuse.  In particular, male children are less likely to "outcry" than female children, especially if the offender is of the same sex as the victim.  INV_TRAN_3116; Ex. F at 11.  Ms. Young noted that "[a] really significant factor" in disclosure is the "closeness that the child has to the Offender" explaining that "the closer and more dependent the child is . . . [to] an Offender, the less likely [it will be] to get a very quick outcry."  INV_TRAN_3116-17; Ex. F at 11-12.  In fact, delayed outcry is most common if "the Offender is close to the family, a member of the family and trusted by the family."  INV_TRAN_3132; Ex. F. at 27.  Moreover, delayed outcry is not at all unusual.  Ms. Young testified that only 32-42% of victims will outcry within a year of the "last offense" and up to 70% of victims do not outcry in childhood at all.  INV_TRAN_3119; Ex. F at 14.  In young victims, a failure to immediately recognize that what happened was, in fact, sexual abuse may also delay outcry.  INV_TRAN_3119-20; Ex. F at 14-15.  Thus, that K.W. did not disclose Mr. McFadden's abuse for a mere two weeks after the abuse stopped, and after Mr. McFadden had been arrested and could no longer pose a danger to K.W. or other children, is not surprising.  Rather, based on Ms. Young's testimony, K.W.'s outcry was relatively quick when compared to most child victims of sexual abuse.  In short, the timing of K.W.'s disclosure does not in any way undermine its reliability.

---

[6] On September 26, 2022, the government provided notice pursuant to Rule 16(a)(1)(G) to Mr. McFadden's counsel of its intent to call Ms. Young at the upcoming federal trial.

Given the totality of the circumstances of K.W.'s January 16, 2013, interview, the Court should conclude—as did the state court judge considering the same issue—that K.W.'s audio- and video-recorded statement is "supported by sufficient guarantees of trustworthiness" to satisfy the first prong of Rule 807.

2. **K.W.'s recorded interview is the most probative on the point for which it is offered**

K.W.'s statements in the recorded interview pertain to Counts One and Two of the Indictment, which charge conduct occurring sometime between Christmas 2012 and January 3, 2013, in which Mr. McFadden took K.W. and two of his siblings on a commercial truck trip. During this trip, K.W. reported that Mr. McFadden and he slept in the sleeper compartment of the truck. During the night, K.W. woke up when he felt Mr. McFadden's penis touching his butt. K.W. said that Mr. McFadden put his penis inside K.W.'s butt and that it hurt. K.W. recounted these events in detail in the January 16, 2013, interview.

Subsequently, however, in 2018 and 2019, law enforcement interviewed K.W. about Mr. McFadden's abuse of K.W. Each time, K.W. professed to not remember much about the abuse or declared that he did not want to talk about it.[7]

Specifically, in 2018, when K.W. was 17 years old, he told FBI special agents that he does not "remember a lot, to be honest" since "[i]t's been forever ago." He acknowledged that the abuse that he suffered is both a topic he does not remember and that he does not like to talk about anymore. K.W. told the agents that Mr. McFadden would give him melatonin to help him sleep and K.W. recalls having awoken in Mr.

---

[7] Recordings and transcripts of these interviews have been provided in discovery. The government has not submitted the transcripts as Exhibits to this motion because they would require extensive redactions to protect K.W.'s privacy. Instead, the government has provided pertinent statements from these interviews. The government can provide the recordings and the transcripts to the Court if necessary.

16

McFadden's bed, which is not where he fell asleep.  K.W explained that he figured out why Mr. McFadden was giving him melatonin when he "woke up one night and he was doing what he was doing."  When pressed for details, however, K.W. said that he did not "remember anything" because he "pretty much shut that thought out of my head and just locked it away."  K.W. stated that he "didn't know what was going on at first until he did something really bad."  K.W. elaborated and stated that Mr. McFadden was pulling down K.W.'s pants and then "started to do what he was doing."

    K.W. was asked about the truck trips and stated that he does not "remember a lot."  He explained that "[s]ometimes" things would happen in the truck, but he does not "remember exactly where and stuff like that, because it was during the night" and he was often on melatonin.  K.W. told agents the "last time something happened" was during a trip around Christmas, but that he does not "remember it all."  When asked again if anything happened on that trip, K.W. stated that he did not remember.  He added that that "[s]omething probably did," but "a lot of memories has been . . . forgotten."  K.W. explained that "if something did happen, I pushed it aside, expecting something good in the morning."  Later in the interview, he said that he did not want to talk about the truck trip and he did not remember the details.  When asked to tell agents about a time that K.W. did remember, K.W. said that he did not "want to talk about it, to be honest" because it "bothers" him, and it is "one of the main reasons [he] started getting in trouble with the law."  K.W. later described what Mr. McFadden did to him as rape and "touching inappropriately," but would not give details, explaining that he does not "really feel comfortable about anything."

    In 2019, K.W. was interviewed again by an AUSA and an FBI special agent.  K.W. remembered a truck trip near Christmastime with Mr. McFadden and his older and

younger brother.  K.W. explained that he has tried to push old memories out of his mind, and when he was interviewed by Detective Prescott, it was "way fresher."  K.W. confirmed that he told Detective Prescott the truth, did not make anything up, but may have "gotten the times wrong."

The government suspects that K.W. may persist in professing a lack of memory in his testimony at trial.  For this reason, the recorded January 16, 2013, interview is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Moreover, even aside from K.W.'s recently professed lack of memory, his recorded statement was much closer in time to the abuse than any other statements he has made—or could make—and is also more probative for that reason.

## CONCLUSION

The government respectfully requests that the Court deny the defendant's motion to preclude the government's proffered evidence as described herein.


Respectfully submitted,


COLE FINEGAN
United States Attorney


*s/ Jeremy Chaffin*  
JEREMY CHAFFIN  
Assistant U.S. Attorney  
U.S. Attorney's Office  
205 North 4th Street, Suite 400  
Grand Junction, CO 81501  
Tel: (970) 257-7113  
Fax: (970) 248-3630  
E-mail: jeremy.chaffin@usdoj.gov  

*s/ Andrea Surratt*  
ANDREA SURRATT  
Assistant U.S. Attorney  
U.S. Attorney's Office  
1801 California Street, #1800  
Denver, Colorado 80101  
Tel: (303) 454-0100  
Fax: (303) 454-0400  
E-mail: andrea.surratt@usdoj.gov  

Attorneys for the Government

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of October, 2022, I electronically filed the foregoing **REPLY TO DEFENDANT'S OBJECTION TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 414, 404(b), AND 807** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

**Defense Attorney:**
Sean McDermott

**Email Address:**
smcdermott@mswdenver.com