1

DISTRICT COURT, COUNTY OF MESA, STATE OF COLORADO

CASE NOS. 2013 CR 000027, 2013 CR 000339, and
2013 CR 000342, DIV. 5

---

REPORTER'S TRANSCRIPT (Motions Hearing)

---

IN THE MATTER OF

THE PEOPLE OF THE STATE OF COLORADO,

    Plaintiff,

v.

MICHAEL TRACY MCFADDEN,

    Defendant.

---

    The above-entitled matter came on for hearing

on Tuesday, October 14, 2014 at 2:48 p.m. before the

HONORABLE THOMAS DEISTER, District Judge.

APPEARANCES:

FOR THE PLAINTIFF:          DAVID WAITE

FOR THE DEFENDANT:        KARA SMITH

ALSO PRESENT:            MICHAEL MCFADDEN
                           CHERYL ROY

INV_TRAN_00001370

58

1    at their charts it didn't appear that the children actually

2    made any statements.

3              THE COURT:  Then the same rulings I made today are

4    also made in -- was the motion only filed in 27 and --

5              MS. SMITH:  Yeah.

6              THE COURT:  -- 339?

7              MR. WAITE:  Yes, just 27.

8              THE COURT:  So my findings I guess are applicable

9    to 13CR27 and the motion -- a similar motion but with

10   different evaluators, examiners, was withdrawn.

11             So that then leaves I think the 13-25-129 rulings,

12   and so if it's acceptable to the parties I thought I would

13   move there and then we can handle the individual questions

14   that each of you might have had for clarification on some of

15   the other issues that might have been mentioned.  Is that

16   acceptable?

17             MR. WAITE:  That's fine, Judge.

18             THE COURT:  Let's start with -- I guess in 13CR27

19   there are statements that are attributed to I., E., and J.

20             The first statement made by I.S. was in December

21   of 2012.  The statement was not spontaneous, however I did

22   not find him to be upset or in pain when he was being

23   interviewed.  He did speak in age appropriate language.

24             I find that the forensic interview that was done

25   did not involve leading questions.  There's no evidence

INV_TRAN_00001427

1    there was any bias or prejudice against the Defendant by I.

2    There was nothing disclosed concerning a motive for lying.

3    No information has been provided to me concerning any other

4    intervening events that might have caused or been the basis

5    for the statements that were made.

6          The statement was heard by more than one person,

7    not only the law enforcement examiner, but there was another

8    person who was listening.  Also it was video taped, and so

9    all of us can see what actually was said.  The interview has

10   been digitally recorded and therefore all of us can see what

11   actually was said.

12         There was no evidence that I can recall that was

13   introduced concerning I.'s character.  In his statement I.

14   clearly knew what was real from the unreal.  He knew what a

15   lie was.  He could -- he did in fact agree to tell the truth

16   and only talk about what's real.  He had a clear ability to

17   receive just impressions and then a clear ability to relate

18   those facts.  His statement was not a pre-narrative.  He did

19   indicate he had discussed this with his cousin.

20         I find based on all of those circumstances that

21   this statement -- I believe I. is going to testify.  I think

22   the D.A. indicated that.  So therefore the statement would

23   be admissible as either a prior inconsistent or a prior

24   consistent statement.  However it also can be admitted under

25   13-25-129.  I find that there's sufficient indicia of

INV_TRAN_00001428

60

```
 1   reliability to allow its admission into evidence.

 2            I. made a second statement in March of 2013.

 3   Again, this statement was not spontaneous.  He was not upset

 4   or in pain.

 5            He did speak in an age appropriate fashion.  There

 6   was one statement made by Ed Prescott that -- in an effort

 7   to see if there was more information, I think Ed Prescott

 8   said something to the effect that sometimes there is more

 9   information that might be available if they talk to someone

10   again.  I don't find that that's necessarily leading but it

11   certainly is suggestive to allow a young man to think that

12   maybe he needs to tell more.

13            Again, there was no bias against the Defendant

14   displayed.  There was nothing brought up or anything that

15   has been presented by the parties that shows a motive for

16   lying.  No information concerning intervening events.

17            I don't know if it was heard by another person but

18   it was also video taped.  Again, no information was provided

19   about I.'s character.

20            Interestingly enough, in this statement I. did not

21   recall what he had said before.  He did indicate that he

22   doesn't like to talk about it and gets angry about what

23   happened to him.  He did use the term in this instance that

24   he had not used before, and that is that Mr. McFadden had

25   raped him, and provided no details concerning what he meant
```

INV_TRAN_00001429

61

```
1   by rape.  In this statement he can't recall when it
2   occurred.  Then he said something to the effect of, "I guess
3   I'll go with you," regarding a statement that Ed had made,
4   which is a very curious statement.
5           Under the circumstances here I find that these
6   statements are not admissible under 13-25-129, especially
7   when the child is indicating things like, "I'll just go with
8   what you say," and that -- however this statement would be
9   admissible as a prior consistent or a prior inconsistent
10  statement should I. testify differently.
11          There was a statement made by E. on December 21st
12  of 2012 in which he said nothing happened.  And therefore
13  this statement does not qualify under 13-25-129 because that
14  statute requires there be a statement that is descriptive of
15  sexual contact, and there was nothing here from E. to that
16  effect.
17          E. made a second statement on -- I should say E.'s
18  first statement was December 21st of 2012.  That's out, it's
19  not admissible under 13-25-129.  Of course, statements like
20  nothing happened would be admissible for prior inconsistent
21  statements.
22          E. made a more detailed statement on January 2nd
23  of 2013.  Now this statement again was not spontaneous,
24  however in this instance E. made lengthy narratives about
25  what had happened in response to open ended questions.
```

INV_TRAN_00001430

1   There was not -- he did not appear to be upset or in pain.

2   He used age appropriate language.  He indicated that he had

3   forgot to tell the investigator something before, which is

4   curious because before he had said nothing had happened, but

5   he's saying now I do have something to tell you.

6          There isn't any information that was provided

7   concerning any bias or prejudice against Mr. McFadden, and

8   no information concerning a motive for lying.  I don't know

9   if there was anything that occurred that might have

10  intervened between the first and second statements, or any

11  statements that might have been made around him that could

12  have precipitated and caused what he divulged on January 2nd

13  of 2013.  However, no evidence was introduced about an

14  intervening event.

15         I don't know if the statement was heard by more

16  than one person, but again, it was video taped.  Nothing was

17  introduced about E.'s character generally.

18         Again, I indicate that there was a lengthy

19  narrative on E.'s part while he provided a great deal of

20  detail.  He indicated that this was a result of something he

21  remembered and had not mentioned, and his words were "forgot

22  to tell" the investigator on a prior occasion.

23         He did indicate in a subsequent statement that he

24  had lied before so he came to the Grand Junction Police

25  Department to tell them.  His statements may have been

INV_TRAN_00001431

1    internally inconsistent.  Nonetheless, I find that given the

2    lengthy narrative he speaks, that he acknowledges that he

3    had lied and needed to tell something to the investigator is

4    indicative of reliability.  I find that this statement is

5    in, but of course it could have been used anyway as a prior

6    inconsistent or prior consistent statement, depending on

7    what E. testifies to at trial.

8         E. made another statement in January of 2013.

9    This was just prior to the SANE examination.  But in this

10   statement there was a discussion about dogs, when they had

11   certain dogs, but there was no 13-25-129 statements, so this

12   statement is not admissible under 13-25-129 because it lacks

13   the necessary element of a statement concerning sexual

14   contact.  Therefore it's not admissible under 13-25-129, but

15   can be used in the event that E. testifies either

16   inconsistently or can be used as a prior consistent

17   statement if his credibility is challenged, or if there's

18   some allegations of recent fabrication, those type of things

19   if the necessary foundation has been laid.

20        Next there is a first statement that's made by J.

21   This statement was not spontaneous.  It was not when he was

22   upset or in pain.  It was in age appropriate language.  I

23   find that leading questions were not used.  There was no

24   divulging of any type of bias against Mr. McFadden.  There

25   was no indication, no evidence has been provided about a

INV_TRAN_00001432

1    motive for lying.  I can not know whether or not there was

2    anything -- there was no evidence of any type of intervening

3    events that might have caused the statements that were made.

4    Nothing was presented in that regard.

5        I don't know if it was heard initially by more

6    than one person, but it was video taped.  No information was

7    provided concerning J.'s character.  J. did not provide a

8    lot of detail, though there was some corroboration that was

9    provided, and he did speak at times in a narrative, which

10   means it wasn't just question/answer, question/answer.  He

11   was asked a question and then he would speak at some length

12   concerning response to that, providing a fair amount of

13   detail, but not a lot of detail.

14       I find that this statement certainly would be

15   admissible as a prior inconsistent or a prior consistent

16   statement if the necessary foundation is laid.  I find

17   though that this statement is admissible under 13-25-129

18   because I find that there was sufficient indicia of

19   reliability in how the interview was conducted to warrant

20   its admissibility.

21       J. provided another statement that was not video

22   recorded.  It was at his grandmother's house.  More than one

23   detective was involved.  I believe it was in age appropriate

24   language.

25       This was not a truly forensic interview because it

INV_TRAN_00001433

1    was not video recorded.  It was not in what might be termed

2    a neutral locale.  It was at J.'s grandma's house and there

3    were a lot of family members who were outside and during the

4    audio tape you can actually hear the noise levels there.

5            More than one detective was involved in

6    questioning.  The standard forensic protocol was not

7    followed, and therefore it can't be fully evaluated under

8    the standard things of a forensic interview.  Nonetheless,

9    he had apparently divulged something to his mom and

10   grandmother, and based on the statements that were made the

11   family then made arrangements for detectives to speak to J.

12   again.

13           The statement does not have to be conducted in a

14   forensic manner in order to be admissible.  Hearsay

15   statements might be admissible under 13-25-129 even though

16   the standard protocol was not utilized.

17           In this instance I find the detectives were

18   careful in terms of what they did.  Of course though they

19   didn't follow completely the forensic protocol, they did not

20   utilize leading questions that I heard.  The child did speak

21   in age appropriate language.  The child did not appear to be

22   upset or in pain when he was speaking.  It was not

23   spontaneous.  This was something where J. had spoken to

24   family members and then they had notified law enforcement

25   that he had more to say and so law enforcement, after some

INV_TRAN_00001434

1    difficulty in arranging it, they end up going to the

2    grandmother's house where J. was and then interviewed him in

3    a bedroom away from everyone.

4            I find that this statement does sufficiently

5    satisfy and provides sufficient indicia of reliability for

6    its admission at trial under 13-25-129, and of course it can

7    be used as a prior consistent or a prior inconsistent

8    statement.

9            Turning now to the statements made in 13CR329 by

10   S.J. and K., first concerning S.J.  I found that her

11   statements were not made spontaneously.  She was not upset

12   or in pain.  The statements made were indeed in age

13   appropriate language.  Leading questions were not utilized.

14   There was no information about bias against Mr. McFadden.

15   There was no information provided to me about any motive for

16   lying that S. might have.

17           There was no evidence -- nothing has been

18   presented to me about any type of intervening event that

19   could cause the substance -- or could have caused the

20   statements that were made by S.J. on this occasion from the

21   time of abuse until -- or the alleged abuse until the time

22   the statement was made.

23           I don't know if this statement was heard by more

24   than one person.  There was no information concerning her

25   character.  She provided numerous details.  She had

INV_TRAN_00001435

67

1    previously told three people.  She was really descriptive

2    about what was said in providing her narrative responses to

3    some questions, and so I find in this instance that this

4    statement provides sufficient indicia of reliability for

5    admission under 13-25-129, and therefore is admissible not

6    only there but also would be usable concerning prior

7    inconsistent or prior consistent statement.

8         Next is the statement made by her brother, K.

9    That statement was not spontaneous.  In this instance K. was

10   not in any physical pain but he did indicate that

11   remembering it was upsetting to him.  He did speak in age

12   appropriate language.  Leading questions were not used.

13   There was no information about bias against the Defendant

14   was provided to me.  No information about a motive for lying

15   was provided in any evidence.

16        Again, I can't say if there was any type of

17   intervening event from the alleged abuse to disclosure.

18   Certainly no evidence was provided.  I don't know if it was

19   originally heard by more than one person, though it was

20   video taped and we can watch him say the things that he did.

21   A complete version of that was recorded.

22        No information was provided about K.'s character.

23   He did make one curious statement about something happened

24   while he was asleep and one would wonder how he knows that

25   it happened when he was asleep, but interestingly here he

INV_TRAN_00001436

68

1  did indicate that he provided corroboration to the fact that

2  he said he personally saw Mr. McFadden touch J. in a

3  situation where they were all in the same bed.

4  He also told a fairly elaborate story with

5  substantial detail, and so I find that this statement

6  provides sufficient indicia of reliability for admission

7  under 13-25-129, and therefore is also available as a prior

8  inconsistent or prior consistent statement under the Rules

9  of Evidence.

10  Finally, there is the out of court statement made

11  by D. in 13CR342.  I find -- oh, one other thing that I want

12  to talk about K. is that this was an instance where the

13  investigator talked about a puzzle metaphor and maybe

14  suggested that more pieces might be needed, but I find that

15  though that was discussed it was not sufficiently suggestive

16  to warrant exclusion of the statement made by K.

17  Concerning D. now, it was not spontaneous.  He was

18  not in any type of pain.  He spoke in age appropriate

19  language.  There was some suggestions used in questioning of

20  him, what others had indicated I think was some of the

21  language that was used.  There was no information about bias

22  against Mr. McFadden.  No information provided to me about

23  any motive for lying.

24  No information concerning any intervening event

25  that could have led to the statements that were made.  It

INV_TRAN_00001437

1  was heard by more than one person.  No information that was

2  provided about D.'s character.

3        Now in this instance however the description that

4  he provided indicated that the touch was like a dead fish.

5  Apparently there was no movement of the hand that -- I

6  believe that the statement was that Mr. McFadden was

7  sleeping and his hand was resting in some way on -- or above

8  or on J.'s -- or I mean D.'s privates.

9        Clearly there was a touching of an intimate area

10 but really there was no information that was provided as to

11 whether or not this touching could be construed as for

12 sexual arousal, gratification, or abuse.

13        Because the 13-25-129 clearly indicates it has to

14 be a statement of sexual contact, which as I understand it

15 has a very specific legal definition which involves the

16 touching of a person's intimate parts, either above or

17 beneath clothing, for the purpose of sexual arousal,

18 gratification, or abuse, given the fact that D., I believe,

19 indicated that Mr. McFadden appeared to be asleep to him

20 when this occurred -- my memory of the statement is that he

21 moved the hands and Mr. McFadden did not awaken and that it

22 was just moved.

23        I find that this statement at least does not

24 internally include a statement of sexual contact given the

25 definition of sexual contact which requires a touch for

INV_TRAN_00001438

 1   sexual arousal, gratification, or abuse.  Therefore I find

 2   that this statement is not admissible under 13-25-129,

 3   though it could be admissible for purposes of sexual arousal

 4   -- I mean for purposes of prior consistent or prior

 5   inconsistent statement.

 6            The Defense in this instance made an argument that

 7   -- something about age limit to 13-25-129.  I find that that

 8   is not persuasive at all.  So anyway, that statement is not

 9   admissible under 13-25-129.

10            I think that covers all of those statements on all

11   three cases.  So that then, in the limited time we have

12   left, we need to chat about the other things that might need

13   either clarification or ruling upon.

14            So Mr. Waite, why don't you go through

15   individually the matters that you wanted clarification

16   concerning.

17            MR. WAITE:  Well Judge, I think at this point what

18   I would ask the Court to clarify for me is with respect to

19   Mr. McFadden's prior conviction from 1990, I think the Court

20   had granted the Defense motion to exclude that in part and

21   denied it in part.  If I understood the Court's previous

22   ruling, I think the Court had indicated that the conviction

23   -- the fact of the conviction itself couldn't come in but

24   that the underlying circumstances could.

25            THE COURT:  And statements of -- statements by the

INV_TRAN_00001439

1    Defendant admitting the act would be admissible.

2            MR. WAITE:  Yes.  So I think I'm pretty clear

3    about that.

4            THE COURT:  Which would include a guilty plea,

5    though you can't use guilty plea.

6            MR. WAITE:  Right.

7            THE COURT:  Essentially what would happen is on

8    the date that plea was entered you could just characterize

9    that as that on such and such a date he admitted to the

10   sexual contact that had been described.  So I think that

11   under -- so does that clarify it --

12           MR. WAITE:  Yes, it does.

13           THE COURT:  -- without any further --

14           MR. WAITE:  Yes, I'm good, Judge, on that.  Then I

15   think the Court has really clarified everything else I

16   needed to have clarified.

17           THE COURT:  You had something about K.'s assault

18   in the truck.  You talked about clarification about K.'s

19   assault --

20           MR. WAITE:  Well --

21           THE COURT:  -- his statement about assault in a

22   truck.

23           MR. WAITE:  That's true.  One of the things that I

24   had filed in my 404B/16-10-301 motion was a request to get

25   into evidence -- and quite frankly, I'm not sure it's either

INV_TRAN_00001440

72

1   one of those things.  I think it's really res gestae in

2   large part as well, but my request was to get into evidence

3   regarding K.'s assault by the Defendant as part of a pattern

4   here while he was being transported in a truck and they end

5   up -- Mr. McFadden ends up getting arrested shortly

6   thereafter.

7          The reason I asked about that is because the Court

8   had then -- with respect to the Defendant's motion for -- to

9   exclude bad acts or character evidence regarding the

10  Defendant had done that fairly general --

11         THE COURT:  I don't know if this will satisfy that

12  but that statement would be -- if that is not the basis for

13  a charge in K.'s case it would be clearly admissible as

14  pattern evidence, which is one of the reasons that would be

15  admissible under 404B.  And independently under the statutes

16  relating to pattern.

17         MR. WAITE:  And that's what I thought.  That's

18  kind of where I thought that went with the Court as well, so

19  I'm good with that as well, Judge.

20         Then the last thing I would want to raise and then

21  I'll turn things over to Counsel is I just received from

22  Counsel s curriculum vitae from a person named (inaudible),

23  a licensed psychologist in Lafayette, Colorado.  He's not

24  been endorsed at this point but I got the impression that

25  the Defense wanted to endorse him as an expert in this case.

INV_TRAN_00001441

1    I just have received the resume, I have not seen any kind of

2    endorsement and I've not seen any kind of a summary at this

3    point but it's my impression from speaking with Ms. Smith

4    earlier that the Defense intends to use him as an expert in

5    this case.

6          THE COURT:  Well, if they haven't endorsed him I

7    don't know what to tell you.  I do have an endorsement of

8    Suzanne Pinto.

9          MR. WAITE:  I don't know that I've seen --

10         THE COURT:  From Longmont, Colorado.

11         MR. WAITE:  I'm not sure I've seen that one.

12         THE COURT:  It was filed on September 12th.  Is

13   there a substitution, or two experts, or --

14         MS. SMITH:  What we would anticipate doing is

15   withdrawing our endorsement of Dr. Pinto.  So all of this is

16   very late breaking last week.  Dr. Pinto fell through.  We

17   are very much past the expert disclosure and endorsement

18   deadline that the Court set, so I --

19         THE COURT:  As you recall, my pre-trial order

20   always says that late endorsements are possible, late

21   motions are possible as long as you file a separate motion

22   which is indicative as to why you need to file it late or

23   endorse someone late.  Then I'll hear from the opposing

24   party and make a ruling as to whether it can occur or not.

25         MR. WAITE:  And Judge --

INV_TRAN_00001442

74

```
1          THE COURT:  And I'm assuming that you would then
2    be telling us -- I'm assuming that you would be describing
3    in that motion what happened with Dr. Pinto, who was clearly
4    endorsed at an appropriate time, and what happened that
5    caused her to fall through and why you are then seeking
6    other experts.  So that's what I'm talking about a motion
7    for late endorsement or motion for late motion, that's what
8    I'm expecting from the parties when they seek to pursue one
9    of those things.
10          MS. SMITH:  Sure.
11          MR. WAITE:  So the reason I raise that, Judge, is
12   at this point I don't have enough information to really
13   determine whether or not I'm going to have enough time to be
14   able to prepare for this new expert.  I never did actually
15   get the summary information I don't think from Dr. Pinto or
16   whatever she is.
17          THE COURT:  She's a Ph.D.
18          MR. WAITE:  So Dr. Pinto.  I don't have a summary
19   information from that but I was told by Counsel that there's
20   a possibility that I would see a summary or a report or
21   something by the end of the week.  So at this point I'm just
22   mentioning this to the Court.  I don't know yet whether or
23   not I can deal with the constraints that are placed on me by
24   the late endorsement, but I'm certainly going to make an
25   effort at trying to --
```

INV_TRAN_00001443

75

```
 1              THE COURT:  Yeah, keep in mind that you're also
 2    free to file late motions as long as you file a separate
 3    motion justifying why the motion is late.
 4              MR. WAITE:  Thank you, Judge.
 5              THE COURT:  Ms. Smith, was there anything that you
 6    needed to discuss concerning rulings or something that I
 7    might have forgotten or left out in any of the -- for
 8    example the summary from July as to motions that were left
 9    for resolution?
10              MS. SMITH:  Yes, I think I have a couple.  One is
11    just actually from today in terms of J.  I think that the
12    Court reviewed two different statements that J. made.
13              THE COURT:  Yes.
14              MS. SMITH:  One at Glade Park and then one prior
15    to that.
16              THE COURT:  Yes.  I don't have the dates.  I
17    neglected to write down the dates as I did on some of the
18    others.  I'm sorry.
19              MS. SMITH:  That's fine.  The first statement of
20    J. was ruled admissible?
21              THE COURT:  Yes.
22              MS. SMITH:  Was that the one that was to Mr. Rod?
23    I think I'm confused.  What were the circumstances of that
24    statement?
25              THE COURT:  You know, I'd have to go back and
```

INV_TRAN_00001444

76

1    look.  Hang on a second.

2            MS. SMITH:  Because I thought J. only made one

3    statement that actually disclosed something, and that that

4    was the one in Glade Park that the Court did rule was

5    admissible.

6            THE COURT:  I'm looking for my notes concerning

7    all of these statements.  I found them.  There was a

8    statement -- there was no video.  It's MH-6.  Is that the

9    audio from the Glade Park interview?  I have two statements

10   by J. that I specifically wrote down and went through.

11           MS. SMITH:  And both deemed to be admissible.

12           THE COURT:  Well, hang on a second.  I'm trying to

13   find the --

14           MS. SMITH:  MH-6 I believe is the Glade Park

15   interview.  I think that's where my confusion is.  I think

16   the Court deemed two different interviews of J. admissible,

17   but I think --

18           THE COURT:  Well, but you only have one statement?

19           MS. SMITH:  Yeah, I think J. --

20           MR. WAITE:  I agree with that, Judge.

21           THE COURT:  Well, I don't know where I got this

22   then.

23           MR. WAITE:  I think that --

24           THE COURT:  Was there an earlier statement to him?

25           MR. WAITE:  There had been an earlier statement by

INV_TRAN_00001445

77

1    J.W. down in Arizona, Judge, to some stuff that the Court
2    had ruled inadmissible earlier.  And so there was --
3            THE COURT:  What I will say then just for
4    clarification is clearly the statement that was made at
5    Glade Park is admissible if that's MH-6.  The other
6    statement I don't find any notes on, and I don't know where
7    I listed it -- I don't know why I listed it separately and
8    went through it and even found things that I thought were
9    appropriate.  Was there another statement made by him?
10           MR. WAITE:  He made -- well, he also made another
11   statement in this case but it wasn't recorded.  We don't
12   have enough information to really put that forth and at this
13   point I don't think I've requested that be admitted.
14           THE COURT:  Then the first one I talked about is
15   out.  The one at Glade Park where there were two detectives,
16   that is clearly admissible under 13-25-129.
17           MS. SMITH:  The other clarification I had was that
18   I had filed a motion to exclude -- we completed the motion
19   that I had filed to exclude the statements the children made
20   to the SANEs.  I had also filed a motion to exclude the
21   SANEs under Shrek.  And I already --
22           THE COURT:  I thought I had ruled on that one.
23           MS. SMITH:  Did you?  Okay.
24           THE COURT:  What I found is that it's a medical
25   examination.  Shrek is -- it's something of long standing,

INV_TRAN_00001446

1   it's clearly a medical procedure.  It's utilized not only

2   for decades but maybe centuries, and millennia in terms of

3   talking to -- getting histories and doing examinations.

4           A Shrek examination is -- it's not novel

5   scientific evidence.  The examiners record and report what

6   they see and hear, and that -- the evidence clearly showed

7   that all of the three SANEs were well trained and had long

8   experience at doing precisely what they were doing when they

9   were conducting the SANEs.

10          So not only are the statements admissible but the

11  observations and everything that was about the SANE is

12  admissible.  So I think I denied that motion.

13          MS. SMITH:  I don't have any further

14  clarification.

15          MR. WAITE:  I think we're good at this point,

16  Judge.

17          THE COURT:  All right, I will see you on some

18  future occasion.  I don't want to look and see when it is.

19              (Hearing adjourned at 4:53 p.m.)

20

21

22

23

24

25

INV_TRAN_00001447

Exhibit D

79

```
 1
 2                      C E R T I F I C A T E
 3
 4           I, Christopher Boone, certify that the
 5   foregoing matter is a complete and accurate transcript
 6   of the proceedings based upon the recording, and that
 7   this is as accurate a transcript of what happened at
 8   that time and place as is possible, due to the
 9   conditions of the recording and/or duplicating.
10   Indiscernible, indecipherable or inaudible statements
11   are due to microphones not working properly, excessive
12   noises, muffled voices or the parties not staying
13   within close proximity of their microphones.
14
15
16           In witness whereof, I have affixed my
17   signature this 12th day of February, 2016.
18
19
20
21   My commission expires August 16, 2018.
22
23
24   _____
25   /s/Christopher Boone
```

23

INV_TRAN_00001448