IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-00243-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL TRACY McFADDEN,

    Defendant.

### RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR

    The United States of America, by and through Andrea Surratt, Assistant United States Attorney, respectfully submits this response to the defendant's objections to the Presentence Investigation Report ("PSR") [ECF # 160].

    <u>Paragraphs 45-59</u>.  The defendant objects to the court considering as relevant conduct the defendant's molestation of I.S., E.S., S.J.W., L.W., and M.S.

    As this court is aware, "a sentencing court ha[s] broad discretion to consider information concerning the defendant's life and characteristics, including conduct on which he had not been convicted."  *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005).  Courts may find facts relevant to sentencing "by a preponderance of the evidence."  *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007).

    As described in the PSR, I.S., E.S., and S.J.W. all testified at the defendant's state trial.  As to each of these victims, the jury found their testimony credible and the defendant was convicted of molesting each of them.  L.W. disclosed the defendant's abuse of him after the state trial, but as the court is aware from pretrial litigation in this

1

matter, L.W.—who was very young at the time the defendant abused him—describes abuse that was similar to the abuse suffered by his siblings K.W. and S.J.W., and was prepared to testify at the instant federal trial pursuant to Federal Rule of Evidence 414. The court should easily find that the defendant molested each of I.S., E.S., S.J.W., and L.W. by a preponderance of the evidence and consider that conduct at sentencing.

The defendant also argues that the Government "stated on the record" that it did not intend to elicit evidence concerning the defendant's molestation of M.S. As the court no doubt recalls, in 1990, the defendant molested M.S., a-then eight-year-old boy, by putting his penis in M.S.'s butt. This conduct, to which the defendant pled guilty, forms the basis of his 1990 conviction for sex assault on a child. PSR ¶ 93. The court was prepared to allow the Government to introduce evidence of the defendant's molestation of M.S. at trial pursuant to Rule 414, but the Government acknowledged that, despite its best efforts, it would be unable to produce a witness at trial to testify as to this instance of molestation. The Government, of course, never conceded that it would not be relevant at sentencing, should the defendant be convicted. Given the defendant's admission to this conduct, and the similarity of the 1990 conduct to the conduct that formed the basis of the defendant's instant federal conviction, the court should find that the defendant molested M.S. by a preponderance of the evidence and consider this as relevant conduct when fashioning a sentence.

Paragraphs 69 and 78. The defendant objects to the application of U.S.S.G. § 2G1.3(b)(2)(B), which provides for a two-level enhancement when the defendant "unduly influenced a minor to engage in a prohibited sexual conduct."

The Government agrees with the PSR's application of the enhancement. As the PSR notes, Application Note 3 explains:

2

> In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior. The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring.
>
> * * *
>
> In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

U.S.S.G. § 2G1.3 n.3(B).  The Tenth Circuit has explained that while "undue influence" is not defined in the Guidelines, "the sentencing enhancement was added to the Guidelines in 2000 to capture those cases where coercion, enticement, or other forms of undue influence by the defendant . . . compromised the voluntariness of the victim's behavior and, accordingly, increased the defendant's culpability for the crime." *United States v. Castellon*, 213 F. App'x 732, 736 (10th Cir. 2007) (internal quotation marks omitted).  The ultimate burden to prove this enhancement, like all sentencing enhancements, is on the Government.  *Id*. at 737.

     As an initial matter, the rebuttable presumption applies as to both K.W. and J.W. since each of them was at least 10 years younger than the defendant at the time of the molestation.  Indeed, the defendant's sexual assault of J.W. began when J.W. was approximately eight years old, at the house near the Monument.  The defendant's assaults of K.W. began when K.W. around 10 years old and the defendant was living at the house on Glen Road.  The defendant is 29 years older than J.W. and K.W. and so was in his late 30s when the assaults began.  He was easily old enough to be either of their father.  *See id.* at 737 (noting the defendant was 26 years older than his victim, an age gap that made the defendant old enough to be the victim's father).

3

Next, there should be no question that the defendant's influence over J.W. compromised the voluntariness of J.W.'s behavior.  J.W. testified at trial that, for the many years he was sexually abused by the defendant, he made the choice to stay with the defendant because his life at home was so awful.  His mother's abusive boyfriend was rough with all members of the family, including J.W. and his younger sister.  J.W.'s mother was a methamphetamine and alcohol addict and was frequently high and drunk.  She testified at trial that she was often unaware of what her children were doing, and to this day cannot recall what truck trips J.W. went on with the defendant.  J.W. did not have enough food at his mother's house—but there was always enough to eat at the defendant's.  The defendant also cared for J.W. in other ways, such as by taking him to school and to the doctor.  J.W. loved the defendant and called him "dad."

As a young child, therefore, J.W. had to make the heartbreaking choice every single day to stay with the defendant and get raped or go back to his mother and suffer abuse, hunger, and neglect.  Given how close he was with J.W.'s family—he was "Uncle Mike" to many members of the family, literally as to some of them—the defendant clearly knew about J.W's awful home life.  By positioning himself as a father figure when J.W. had none, the defendant's "influence over [J.W.] compromised the voluntariness of [J.W.'s] behavior" and the U.S.S.G. § 2G1.3(b)(2)(B) enhancement is applicable to Counts Four and Five.

The defendant also exercised undue influence over K.W. that compromised the voluntariness of K.W.'s behavior.  As a close family friend for many years, K.W. and his family trusted the defendant.  When the defendant re-entered their lives, K.W.'s mom was separated from his dad, so when the defendant offered to bring K.W. to school, K.W.'s mom gratefully accepted the help.  So, as with J.W., the defendant positioned

4

himself in K.W.'s life as a trusted parent-like figure.  As with other kids, the defendant invited K.W. into his house and provided K.W. with food, toys, and trips—things that K.W.'s family could not easily afford.  He also plied K.W. with doses of melatonin before some of the instances of abuse, making him more susceptible and less able to resist.  Accordingly, the U.S.S.G. § 2G1.3(b)(2)(B) is also applicable to Count Two.

The defendant argues that this enhancement is not appropriate because, in substance, the defendant did not engage in an explicit *quid pro quo* to get the boys to "consent" to engage in sex acts.  But, of course, the U.S.S.G. § 2G1.3(b)(2)(B) enhancement requires nothing of the sort.  Rather, it is sufficient that the defendant used his trusted role as an adult in the lives of both K.W. and J.W. to invite them into his home, provide for various of their basic needs, bring them into his bed at night, and shower them with gifts and trips during the day.  In short, the defendant made his home an attractive, safe space for his victims and used that as implicit leverage to influence K.W. and J.W. to submit to the defendant's molestation over and over again, without disclosing the abuse for years.  Although the defendant's influence over J.W. was arguably greater than it was over K.W., this is not a competition between victims.  As to K.W. and J.W., the rebuttable presumption cannot be overcome and the enhancement is applicable to both.[1]

The Government therefore agrees with the Guidelines calculation in the PSR.  The defendant's total offense level is 44 (which is treated as offense level 43 pursuant to Chapter 5, Part A, note 2).  At criminal history category II, his Guidelines range is

---

[1] The Government also agrees with the PSR's application of U.S.S.G. § 4B1.5 which, in this case, does not change the offense level.

5

life.[2]

                                                  Respectfully submitted,

                                                  COLE FINEGAN
                                                  United States Attorney

                                                  */s Andrea Surratt*
                                                  Andrea Surratt
                                                  Assistant U.S. Attorney
                                                  U.S. Attorney's Office
                                                  1801 California Street, Suite 1600
                                                  Denver, CO 80202
                                                  Tel: (303) 454-0124
                                                  E-mail: andrea.surratt@usdoj.gov
                                                  Attorney for the Government

---

[2] In its sentencing statement [ECF #156], the Government correctly computed the total offense level as 44, but erroneously stated that this translates to a Guidelines range of 360-life when, in fact, the Guidelines range is life.  The Government will argue at the sentencing hearing that a downward variance from this Guidelines range is entirely inappropriate and that the only appropriate sentence here is life imprisonment.