IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 19-cr-00243-CMA-GPG

UNITED STATES OF AMERICA,

   Plaintiff,

v.

MICHAEL TRACY McFADDEN,

   Defendant.

## MOTION FOR NON-GUIDELINE SENTENCE

Pursuant to D.C.COLO.LCrR 32.1(c) , Mr. McFadden by and through his attorneys, Sean M. McDermott and Benjamin LaBranche, submits his Motion For Non-Guideline Sentence. The basis of this Motion is that Mr. McFadden's character and circumstances must be included pursuant to 18 U.S.C. 3553(a). Mr. McFadden states the following:

   I.   **Introduction**

   A. **Procedural History of the Case**

On or about May 17, 2019, a grand jury in the District of Colorado returned an indictment charging the defendant in five counts. ( Doc. No. 1) The People filed a Motion to Introduce Other Acts Evidence in the Government's Notice Of Intent To Introduce Evidence Pursuant To Federal Rules Of Evidence 414, 404(b), and 807. (Doc. No. 32). Mr. McFadden filed his Objection to the Government's Notice Of Intent To Introduce Evidence Pursuant To Federal Rules Of Evidence 414, 404(b), and 807  (Doc. No. 59). As the trial date approached Mr. McFadden filed Motions to Continue to the Jury Trial

with supporting Documents. These are found at (Doc. Nos. 94, 104-1, and 105). These Motions were denied. (Doc. Nos. 99 and 108).

The Court held a hearing on October 17, 2022. The Court deferred ruling with respect to the proposed FRE 414 and FRE 807 material the United States Proposed. The FRE 404(b) evidence as it related to J.W. and K.W. was deemed admissible at trial

At the October 17, 2022 hearing, the Court affirmed that the trial would be held in Grand Junction rather than Denver. Following this hearing the defense filed another Motion to Continue the Trial (Doc. No.104). This Motion was denied. (Doc. No. 108). On November 3, 2022, the Defense filed another Motion to Continue (Doc. No. 135) which was also denied. (Doc. No. 140).

Trial commenced on November 7, 2022 (Doc. No. 143). The Jury began deliberations on the early afternoon of November 10 (Doc. No. 146). The jury resumed deliberations on November 11, 2022. One question was asked (Doc. No. 150) and then the jury came back with a verdict of guilty on all counts. (Doc. No. 152) Parenthetically the day before the trial commenced, the Grand Junction Sentinel ran an article regarding the trial. The article reported that Mr. McFadden was previously convicted but the conviction was overturned because of a speedy trial violation. (Exhibit 1). The fact that Mr. McFadden had previously been convicted in state court has been a consistent prosecution theme throughout pretrial litigation in this case.

## II. **<u>Legal Standard</u>**

### A. **Sentencing Under 18 U.S.C. § 3553(a)**

The Court's sentencing decision in Mr. McFaden's case is guided and governed by 18 U.S.C. § 3553(a), which directs that the Court should impose a sentence

that is sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of that subsection. In making its determination, the court is specifically directed to consider both the nature and circumstances of the offense and the history and characteristics of the defendant, among other factors.

The sentencing guidelines promulgated by the United States Sentencing Commission are advisory. Rather than focusing solely on the calculated guideline range, courts must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 128 S.Ct. 586, 596 (2007). The sentencing court should consider arguments that the guidelines should not apply on general policy grounds, case specific grounds, or any other factor that might render a particular sentence "reasonable". *Gall*, 128 S.Ct. at 596-97. In short, the court must "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall*, 128 S.Ct. at 598.

**III.   The Facts as Applied to the Law Favor a Non-Guideline Sentence**

A. <u>Nature and Circumstances of the Offense</u>

At the October 17, 2022 hearing, and in his Objection to the proffered evidence (Doc. No. 59), the defendant laid out his theory of defense, which was based on the facts as known to the defense and based on the way that the Federal Rules of Evidence would likely be interpreted. The theory did not take into account that the prosecution witnesses who gave the initiating story to law enforcement would be unavailable to testify. It is uncontroverted, that I.S. and his guardian as a juvenile, D.S., dodged or avoided service

3

of process after D.S. was contacted by Mr. McFadden's legal team who requested a waiver of I.S.'s therapy history by way of a letter.

The theory of defense that was laid out, was that Mr. McFadden had become an easy target for troubled kids that he cared for. Mr. McFadden was a registered sex offender, for a crime that he pled guilty to when he was just over 18 years old. On December 15, 2012, almost 23 years after the allegation that got Mr. McFadden branded a sex offender. I.S. made a disclosure that set off the chain of what the defense planned to assert were false accusations that were likely the result of misattribution caused by repeated interviews by adults of children who previously had either not disclosed or specifically denied abuse by Mr. McFadden.

In December of 2012, I.S.'s guardian, who is referred to as D.S., for purposes of this motion called the police. She told Officer Eric Wood, that I.S. told her son R S., and his cousin E.M. (now E.S.) that Uncle Mike (McFadden) had touched him inappropriately.

When I.S. made the initial disclosure, his cousin E.S. f/k/a E.M stated that I.S. was lying and that I.S. was simply attempting to get Mr. McFadden in trouble. I.S. had previously made two allegations against two different people. These allegations were never substantiated.

After I.S. made his December 15, 2012, disclosure, law enforcement pulled Mr. McFadden's record and the reports from the 1990 case for which Mr. McFadden was convicted. This case is Mesa County Combined Court, 1990CR80. (Doc. No. 157, p. 15, ¶93).

On December 19, 2012, Detective Prescott looked up this 1990 prosecution. Detective Prescott contacted Theresa Ricks and talked to her about the previously closed

4

investigation. That investigation had been closed when J.W. and his brother L.W. stated that nothing happened. LW was interviewed again, and again said nothing happened.

By January 3, 2013, a mere 17 days after his investigation began, Detective Prescott asked for and obtained an arrest warrant for allegations made by I.S. and then E.S. This was done even though I.S. had made two allegations against two other people that were unsubstantiated; and even though 13 days earlier E.S. had said that Mr. McFadden had not inappropriately touched him or I.S., and that I.S. was simply saying this to get Mr. McFadden in trouble.

Up to this point, none of the disclosures, that the jury heard at this trial had ever been uttered. To the contrary J.W. had repeatedly said that nothing occurred. Once the warrant was obtained on January 3, 2013, the proverbial dominoes fell from there.

Prior to this, on January 21, 2009, J.W. denied that Mr. McFadden abused him. On December 21, 2012, in an interview with Nicole Surad from Family Services there was another denial of abuse by J.W. In this interview, J.W. said he was not allowed in a pod outside of the house because his mom and another woman who resided there C.M. "do drugs." Not being allowed in the pod, because of their drug use, he slept with his Uncle Mike. He said that Uncle Mike was like a father to him. He was asked about sexual behavior, and he reported none. He went on to say that the only adult he had seen naked was his mother.

After repeated interviews, on February 7, 2013, in an interview with Detective Prescott and Julie Stogsdill, there was **finally** an allegation of abuse. The allegations grew larger and more serious. Despite the seriousness and the horrific details provided in subsequent interviews and at trial, there is no physical evidence to support the

5

allegations. The defense's major concern that the horrific recitation of the allegations would overshadow any objective review of the evidence, became true. Mr. McFadden was convicted of the Counts that pertain to J.W.

With respect to K.W., K.W. and his family had a long history of interaction with Mr. McFadden. K.W. never mentioned any abuse until after Mr. McFadden was arrested on January 3, 2013. When speaking with his mother, K.W. initially attributed sexual conduct by Mr. McFadden against J.W. and not himself.

Prior to this arrest, Detective Prescott contacted K.W.'s family and informed them that an arrest warrant for Mr. McFadden had been signed. Following this arrest, K.W.'s mom took it upon herself to think that K.W. was talking about himself and not J.W. According to police reports K.W.'s mom took him to counselor Emily Bowman at the Montrose Center for Mental Health and then he disclosed. At trial, K.W. did not recall seeing a therapist.

No disclosure by K.W. occurred until the shame of an arrest warrant followed Mr. McFadden. K.W. also was surrounded by family that discussed what Detective Prescott shared with the family. Prior to this, Mr. McFadden had been in K.W.'s life for several years, but no disclosure occurred until now.  The family of K.W. was not a stranger to accusations of sexual abuse. These include allegations of someone perpetrating on S.J.W. and K.W. There were February 2007 allegations of sexual misconduct within the family. These did not include Mr. McFadden.

The purpose of the above recitation is not to attack the witnesses who were prepared to testify in this case or the ones who testified in this case. By the time, the witnesses testified, they likely believe what they said. However, source misattribution is

real. (Exhibit 2, Report of Dr. David Thompson, p. 4 - 13). At trial, the Defense cross-examined the witnesses including the prosecution's expert witness, with this source misattribution in mind. The Jury deliberated and returned its verdict. However, this Court is not bound to believe every detail that it heard at trial, when it considers the verdict to impose.

The Court can have a lingering or residual doubt that Mr. McFadden violently committed rapes in the presence of other people. The fact that no independent witness in Mr. McFadden's crowded D ½ Road house ever witnessed anything; the fact that the Counts pertaining to K.W. allegedly occurred in a small truck cabin with two other people present including a young adult with nobody seeing or witnessing the conduct; and the fact that no physical evidence was ever seen by anyone--**should not be lost on the Court when the Court takes into account the nature and circumstances of the offense**. The Jury could have reached its verdict, without believing that the conduct was as horrific as the testimony that it heard from J.W. and K.W.

    B.  <u>History and Characteristics of the Defendant</u>

Mr. McFadden is a 51-year-old man who stands before the Court. He will turn 52 in August. (Doc. No. 157 p. 3). He has a Criminal History of II. He has the Criminal History of II based on the plea of guilty that Mr. McFadden entered in 1990. (Doc. No. 157 p. 15-16). At the time of that plea, Mr. McFadden was a mere 18 years old. He received a probationary sentence for that case. When Mr. McFadden was in therapy following his state case, he reported flashbacks of physical and sexual abuse at the hands of someone who was in a position of trust.  This is touched on in the presentence report (Doc. No. 157 p. 18, ¶ 107).

7

Mr. McFadden was released in the state prosecution of this case on February 27, 2018. He was rearrested on May 21, 2019 (Doc. No. 157 p. 2) for the federal charges in this case for which he had been freed from by the state of Colorado. In that year-and-a half, Mr. McFadden worked and did not have any criminal offenses, which shows he is not a danger to the community. When not in custody, Mr. McFadden has always maintained steady employment. (Doc. No. 157 p. 21, §§ 128-132).

At the age of 51, Mr. McFadden has high cholesterol and high blood pressure. (Doc. No. 157 p. 20, ¶ 117).

Testimony at trial demonstrated that Mr. McFadden has a side to him that shows that he cares for other people. He brought JW and other kids to medical appointments. He provided food and clothing. Other adults were at his home. These adults were often troubled. This conduct was not just a veiled plot to gain access to children and prey upon them. John Hockenberry lived with Mr. McFadden and so did his minor son. They are complimentary of Mr. McFadden and the defense anticipates that will communicate this to the Court.

C. Reflect the Seriousness of the Offense and Provide Just Punishment

1. Statutory Penalties

Counts One and Three of the indictment, each charged a violation of 18 U.S.C. §2241(c) (crossing state lines with intent to engage in a sexual act with a minor under 12), carry potential sentences of not less than 30 years imprisonment and not more than life; not more than a $250,000 fine; a term of supervised release of not less than five years and not more than life; and a $100 special assessment.

Counts Two, Four, and Five of the indictment, each charging a violation of 18

U.S.C. § 2423(a) (transportation of a minor with intent to engage in sexual activity), carry a potential sentences of not less than 10 years imprisonment and not more than life; not more than a $250,000 fine; a term of supervised release of not less than five years and not more than life; and a $100 special assessment.

Mr. McFadden is 51 years old. He has already spent years incarcerated related to this case. Any legal sentence that this Court can give will reflect the seriousness of the conviction and provide punishment.

D. <u>Provide Adequate Deterrence and Protect the Public</u>

At Mr. McFadden's age any sentence will provide adequate deterrence and protect the public. A 30-year sentence is likely a life sentence.

## CONCLUSION

Mr. McFadden is a 51-year-old man who has worked when he has not been in custody. He suffered abuse as a minor. A governing sentence of 30 years on Counts One or Three with concurrent sentences 20 years on Counts Two, Four, and Five is sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553.

                                        Respectfully submitted,

Dated: February 23, 2023

                                        <u>s/Sean M. McDermott</u>
                                        Sean M. McDermott
                                        McDermott Stuart & Ward LLP
                                        140 E. 19th Avenue, Suite 300
                                        Denver, CO 80203
                                        (303) 832-8888
                                        (303) 863-8888 (fax)
                                        Email: smcdermott@mswdenver.com


                                        <u>s/Benjamin R. LaBranche</u>
                                        Benjamin R. LaBranche (54678)
                                        1544 Race Street
                                        Denver, CO 80206
                                        Phone: (225) 927-5495
                                        Fax:    (225) 927-5568
                                        Email:  ben@brllawyer.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of February 2023, I filed the foregoing **pleading** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

      s/ Sean McDermott
         Sean McDermott