1             IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3    Criminal Action No. 19-cr-243-CMA

4     UNITED STATES OF AMERICA,

5          Plaintiff,

6          vs.

7     MICHAEL TRACY McFADDEN,

8          Defendant.

9    ----------------------------------------------------------------

10                    REPORTER'S TRANSCRIPT

11                    Sentencing Hearing

12   ----------------------------------------------------------------

13        Proceedings before the HONORABLE CHRISTINE M. ARGUELLO,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 9th day of March, 2023, in Courtroom
     A602, United States Courthouse, Denver, Colorado.

15

16                       APPEARANCES
     For the Plaintiff:
17   ANDREA L. SURRATT, Assistant U.S. Attorney, UNITED STATES
     ATTORNEY'S OFFICE, 1801 California Street, Suite 1600, Denver,
18   CO 80202

19

20   For the Defendant:
     SEAN M. McDERMOTT, McDermott Stewart & Ward LLP, One Sherman
21   Place, 140 East 19th Avenue, Suite 300, Denver, CO 80203

22   BENJAMIN LaBRANCHE, Benjamin R. LaBranche PLLC, 1544 Race
     Street, Denver, CO 80206
23

24
     Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
25   A259, Denver, CO 80294, (303)335-2358

19-cr-243-CMA    Sentencing Hearing    03-09-2023

1             P R O C E E D I N G S

2        (Proceedings commenced at 9:04 a.m.)

3             THE COURT:  Good morning.  The Court calls criminal

4    case number 19-cr-243-CMA, encaptioned United States of America

5    versus Michael Tracy McFadden.  Counsel, would you please enter

6    your appearances.

7             MS. SURRATT:  Good morning, Your Honor.  Andrea

8    Surratt for the Government.  With me at counsel table is FBI

9    Special Agent Alex Zappe.

10            THE COURT:  Good morning.

11            MR. McDERMOTT:  Good morning, Your Honor.  Sean

12   McDermott appearing on behalf of Mr. McFadden.  Mr. McFadden is

13   seated to my right.  Also seated at counsel table is co-counsel,

14   Benjamin LaBranche.

15            THE COURT:  Good morning.  And I assume,

16   Mr. McDermott, that you will be taking the lead in the hearing

17   today?

18            MR. McDERMOTT:  Yes, Your Honor.

19            THE COURT:  All right.  For the record, the Court also

20   notes that Officer Ryan Kinsella representing the United States

21   probation office is also in attendance at this hearing.  Good

22   morning.

23            MR. KINSELLA:  Good morning, Your Honor.

24            THE COURT:  Mr. McDermott, would you and Mr. McFadden

25   please approach the podium.

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    MR. McDERMOTT:  Yes, Your Honor.

2    THE COURT:  The record shows that after a full jury

3  trial on February 14, 2019, Mr. McFadden -- actually, that's not

4  correct.  That's not the right -- after a full jury trial,

5  Mr. McFadden was found guilty.  That's the -- he was found

6  guilty and was convicted of two counts of crossing state lines

7  with the intent to engage in a sexual act with a minor under the

8  age of 12, in violation of 18 United States Code Section

9  2241(c), and three counts of transportation of a minor with

10  intent to engage in sexual activity, in violation of 18 United

11  States Code Section 2423(a).

12    We are here today for sentencing.  I have received and

13  reviewed the full presentence investigation report dated

14  January 25th, 2023, as revised on February 21st, 2023, including

15  all addenda thereto.  I have reviewed also document number 160,

16  the defendant's objections to the presentence report; 156, the

17  Government's sentencing statement; 161, the Government's

18  response to the defendant's objections; 162, the defendant's

19  motion for a non-guideline sentence of 30 years on counts one

20  and three and 20 years on counts two, four, and five, to run

21  concurrently; and document number 165, the Government's response

22  to that motion for a non-guideline sentence.

23    Are there any documents that I failed to identify that

24  I should have reviewed in preparation for this hearing?

25    MS. SURRATT:  No, Your Honor.

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1        MR. McDERMOTT:  No, Your Honor.  I will let the Court

2   know that I had submitted a document at document number 166.

3   The Court did not accept that, at docket number 169.  I was

4   instructed that if we wanted to resubmit, we could do that in

5   the same manner that we usually do change of plea documents.

6   After further consideration, I elected to not resubmit that

7   particular document.

8        THE COURT:  All right.  So, Mr. McDermott, have you

9   had enough time to review the presentence report with

10  Mr. McFadden?

11       MR. McDERMOTT:  I have, Your Honor.

12       THE COURT:  Did you explain the contents of that

13  report to him?

14       MR. McDERMOTT:  We have discussed it.  Yes, Your

15  Honor.

16       THE COURT:  Do you have any concerns about his ability

17  to understand the contents of that report?

18       MR. McDERMOTT:  I don't.

19       THE COURT:  All right.  Mr. McFadden, did you review

20  the presentence report?

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  And did you discuss it with Mr. McDermott

23  or Mr. LaBranche or both?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  And do you understand the contents of that

5

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1  report?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  All right.  Mr. McDermott, you did submit

4  document number 160, objecting to the presentence report.  I

5  have read those objections and the probation office's and

6  Government's responses thereto.  We will address the objections

7  in a few minutes, but are there any additional objections that

8  you would like to make at this time?

9          MR. McDERMOTT:  No, Your Honor.

10          THE COURT:  Ms. Surratt, does the Government wish to

11  make any objections at this time?

12          MS. SURRATT:  No objections, Your Honor.  As I was

13  rereading the documents yesterday, I noticed that DR's name was

14  mistakenly omitted from a list of the other victims in this

15  case.  It's mentioned in some places, and not -- I just wanted

16  to make clear that I did not forget about DR in terms of the

17  victims who aren't the charged victims in this case.

18          THE COURT:  All right.  All right.  Mr. McDermott, the

19  first three paragraphs of the defendant's objection appear to be

20  mere clarifications or corrections to the defendant's detention

21  status and personal characteristics.  Where appropriate, the

22  presentence report has been revised to include that clarifying

23  information, but they do not affect the sentence, either

24  calculation or my consideration, so I don't intend to address

25  them any further.

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    All right.  With respect to paragraph four, however,

2    Mr. McFadden objects to paragraphs 45 through 59, which involves

3    other relevant conduct.  He objects to my considering that

4    conduct as relevant conduct, and in particular, it's to the

5    defendant's molestation of IS, ES, SJW, LW, and MS.  Defendant

6    argues that no testimony regarding this conduct was elicited at

7    trial or at any pretrial hearing, and thus has not been clearly

8    established and does not meet the Tenth Circuit standard for

9    admission at trial.  You referred me to *United States versus*

10   *Perrault*, P-E-R-R-A-U-L-T, 995 F.3d 748, Tenth Circuit, 2021,

11   which applied the *Enjady* factors, E-N-J-A-D-Y, found at *United*

12   *States versus Enjady*, 134 F.3d 1427, on page 1433, Tenth

13   Circuit, 1998 case.

14   You also argued that the prosecution stated on the

15   record that it did not intend to elicit evidence regarding MS,

16   and under the circumstances therefore none of the alleged

17   conduct should be considered at sentencing.

18   The Court overrules the defendant's objection to the

19   information contained in paragraphs 45 through 59.  First, this

20   is a sentence hearing.  It is not a trial.  Thus, the cases

21   cited by the defendant are irrelevant.  This information

22   regarding relevant conduct has been included appropriately as

23   part of the presentence investigation report, and can be

24   considered by this Court pursuant to *United States versus*

25   *Magallanez*, M-A-G-A-L-L-A-N-E-Z, 408 F.3d 672, Tenth Circuit,

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   2005, and *United States versus Hall*, 473 F.3d 1295, Tenth

2   Circuit, 2007.

3          Although testimony by IS, ES, and SJW was not elicited

4   at trial in this case, IS, ES, and SJW all testified under oath

5   at the defendant's state trial, and were subject to cross

6   examination by the defendant's attorney.  The jury in that case

7   found their testimony credible and convicted Mr. McFadden of

8   molesting each of them.

9          The Court finds that the state court testimony of IS,

10  ES, and SJW demonstrates by a preponderance of the evidence that

11  defendant has molested each of IS, ES, and SJW in the same way

12  and same manner as he molested KW and JW, the victims in this

13  case.  Thus, the Court considers the molestation of IS, ES, and

14  SJW as relevant conduct.  It's not considering the molestation

15  of the others who were cited in paragraphs 45 through 59 for

16  purposes of this sentencing.

17          MS. SURRATT:  Your Honor, I apologize for

18  interrupting.  This is one of the places where DR's initials

19  were left out of some of the argument, but he is named as one of

20  the victims who did testify at the state trial.  He is listed in

21  paragraph 53 of the PSR.  He is also one of the victims as to

22  whom this Court ruled under Federal Rule of Evidence 414 would

23  be permitted to testify in trial at this matter, and so I would

24  ask that the Court also name DR as one of the victims who this

25  Court will consider when sentencing the defendant here today.

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1      THE COURT:  Okay.  And I will include DR, because he

2  testified at the trial, for the same reason I considered IS, ES,

3  and SJW.  Mr. McDermott, do you wish to make any further

4  statements for the record?

5      MR. McDERMOTT:  Your Honor, I think my record is

6  pretty complete in my written documents.  The only other thing I

7  will add is there has been somewhat of a reliance on the state

8  court record throughout the course of the trial.  And I think I

9  have an obligation to point out that while that case was

10  reversed on procedural grounds, it was reversed on procedural

11  grounds more likely than not because that was the strongest

12  issue that Mr. McFadden had.

13      And when I have delegated work to appellate attorneys,

14  there are things that they will take out that I thought was

15  important, because strategically, they believe that it clouds

16  the more important issues and is not going to advance the case.

17      So, I am just going to restate my position that it

18  should be our record in federal court that is considered and

19  relied upon, and I think I have made that clear in my pleadings.

20  But in the event that I haven't, I just do want to make that

21  record clear.

22      THE COURT:  All right.  That is noted, but as to

23  relevant conduct, the Court finds that that testimony under oath

24  subject to cross examination in the state court is relevant, and

25  that is relevant conduct for purposes of this case.

19-cr-243-CMA      Sentencing Hearing   03-09-2023

1    All right.  With respect to your objection in paragraph

2    five, defendant objects to paragraphs 69 and 78, which relate to

3    United States sentencing guidelines section 2G1.3(b)(2)(B),

4    which provides for a two-level enhancement.  And the defendant

5    argues that that should not apply because he did not unduly

6    influence JW or KW to engage in prohibited sexual activity.

7    The application note of that section explains, quote,

8    in determining whether subsection (b)(2)(B) applies, the Court

9    should closely consider the facts of the case to determine

10   whether a participant's influence over the minor compromised the

11   voluntariness of the minor's behavior.  The voluntariness of the

12   minor's behavior may be compromised without prohibited sexual

13   conduct occurring.

14   It goes on to say, in a case in which a participant is

15   at least ten years older than the minor, there shall be a

16   rebuttable presumption that subsection (b)(2)(B) applies.  In

17   such a case, some degree of undue influence can be presumed

18   because of the substantial difference in age between the

19   participant and the minor, end quote.

20   The Tenth Circuit has explained that while under the

21   influence is not defined in the guidelines, quote, the

22   sentencing enhancement was added to the guidelines in 2000 to

23   capture those cases where coercion, enticement, or other forms

24   of undue influence by the defendant compromised the

25   voluntariness of the victim's behavior and accordingly increased

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1    the defendant's culpability for the crime, end quote.  Taken

2    from *United States versus Castellon*, 213 Federal Appendix 732,

3    at page 736, Tenth Circuit, 2007.

4         As an initial matter, the defendant is 29 years older

5    than JW and KW.  Thus, there is a rebuttable presumption that

6    United States sentencing guideline section 2G1.3(b)(2)(B)

7    applies to both KW and JW, because the defendant was at least

8    ten years older than them at the time of the sexual molestation

9    of them.

10        In other words, unless rebutted, because of the

11   substantial difference in age between the defendant and JW and

12   KW, the Court can presume that some degree of undue influence

13   was exercised by defendant.  Defendant's sexual assault of JW

14   began when JW was approximately eight years old at the house

15   near Monument.  The defendant's assault of KW began when KW was

16   around ten years old and the defendant was living at the house

17   on Glen Road.

18        The defendant provided care for JW in ways that his

19   parents should have but did not.  Defendant took him to school

20   and to the doctor and always made sure video games -- he had

21   video games to play with.  In his own home environment, JW did

22   not have enough food.  He always had more than enough to eat at

23   the defendant's.  JW's mother was a methamphetamine addict and

24   alcohol abuser, and was frequently high and drunk.  She

25   testified at trial that she was often unaware of what her

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    children were doing, and to this day cannot recall what truck

2    trips JW went on with the defendant.

3           His mother also had an abusive boyfriend who was rough

4    with all members of the family, including JW and his younger

5    sister.  JW testified at trial that for the many years he was

6    sexually abused by the defendant, he made the choice to stay

7    with the defendant because his life at home was so awful.

8    Defendant groomed JW to the point that JW testified that he

9    loved the defendant, and called him dad.

10          In other words, the defendant made this little boy

11   choose between staying with him and getting raped or going back

12   to a household where he faced abuse, hunger, and neglect.  By

13   positioning himself as a father figure when JW had none, the

14   defendant's influence over JW compromised the voluntariness of

15   JW's behavior.

16          Similarly, defendant exercised undue influence over KW

17   that compromised the voluntariness of KW's behavior.  As a close

18   family friend for many years, KW and his family trusted the

19   defendant.  When defendant reentered their lives, KW's mom was

20   separated from his dad, so when the defendant offered to take KW

21   to school, KW's mom gratefully accepted the help.

22          In other words, as he did with JW, the defendant

23   positioned himself in KW's life as a trusted parent-like figure.

24   He invited KW into his house, provided him with food, toys, and

25   trips, things that this family could not afford.  He also more

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   sinisterly, as the Government indicates, provided KW with doses

2   of melatonin before some of the instances of abuse, making him

3   more susceptible and less able to resist.

4        Defendant has submitted no evidence to rebut the

5   presumption.  His sole argument is that KW and JW were either

6   asleep or so sick when he assaulted them that they were not

7   aware of what was happening to them, thus there could be no

8   undue influence to get them to engage in sexual activity with

9   him.  The fact of the matter is, though, that they did trust him

10  in a way that young children trust a parent, that he would

11  protect them rather than harm them.

12       That is why they were able to be induced to sleep in

13  the bed with him and go on overnight trips where they would have

14  to sleep in the same bed with him, knowing that he would then be

15  able to rape them.

16       Defendant's objections are overruled.  The Court finds

17  that United States sentencing guidelines section 2G1.3(b)(2)(B)

18  does apply to counts two, four, and five.  Mr. McDermott, do you

19  wish to make any further statements for the record?

20       MR. McDERMOTT:  I just stand on the objections as

21  submitted, Your Honor.

22       THE COURT:  All right.  The total offense level in

23  this case is 43.  The defendant's criminal history category is a

24  two.  That results in an advisory guideline range of life

25  imprisonment, five years to life of supervised release, and a

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    final in the range of 25,000 to $250,000.

2            As part of my protocol for determining whether the

3    advisory guideline range is a range that is sufficient but not

4    greater than necessary to achieve the objectives of sentencing,

5    I have reviewed the presentence report.  I have considered the

6    sentencing guidelines and the factors set forth at 18 United

7    States Code Section 3553.

8            MS. SURRATT:  Your Honor?

9            THE COURT:  Yes.

10           MS. SURRATT:  I apologize.  Again, before we move off

11   of the PSR objections, I don't think the Court specifically

12   ruled on whether MS can be considered as a victim in this case

13   in terms of other relevant conduct.

14           THE COURT:  I am only relying on the four that

15   testified at trial.  I am not relying on anything else.

16           MS. SURRATT:  And MS, Your Honor, as I'm sure the

17   Court recalls, is the victim that the defendant abused and then

18   admitted to abusing.

19           THE COURT:  Right.  I'm only going to consider the

20   ones that testified at trial.

21           MS. SURRATT:  Okay.  I just wanted to clarify, Your

22   Honor.  Thank you.

23           THE COURT:  All right.  All right.  The total offense

24   level in this case is 43.  The defendant's criminal history

25   category is a two.  This results in a guideline range -- I'm

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   sorry.  I've already done all that.  The defendant has filed

2   document number 162, his motion for a non-guideline sentence of

3   30 years on counts one and three, and 20 years on counts two,

4   four, and five, to run concurrently to one another.

5           The Government has filed document number 165 opposing

6   any non-guideline sentence and requesting life, which is the

7   advisory guideline sentence.

8           In his motion, the defendant argues for a 30-year

9   sentence, asserting that the Court should have a lingering or

10  residual doubt that he assaulted JW and KW, because no

11  independent witness ever saw any such assaults on these two

12  children, and no physical evidence was ever found.

13          He also argues that the testimony at trial demonstrated

14  that he has a side that shows he cares for other people, and he

15  argues that at age 52, a 30-year sentence is likely a life

16  sentence.

17          The Government responds that despite being convicted by

18  juries in two different courts, defendant is merely rehashing

19  his old arguments that he is innocent, and that IS lied about

20  being abused, which set off a group of kids and their parents to

21  also fabricate lies about him, including JW and KW.

22          The defendant is before this Court for sentencing after

23  being found guilty at trial of two counts of crossing state

24  lines with intent to engage in a sexual act with a minor under

25  the age of 12, and three counts of transportation of a minor

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1  with intent to engage in a sexual activity.

2        He was previously found guilty of sexually abusing six

3  children, JW, KW, IE, ES, SJW, and DR in Mesa County, case

4  numbers 2013-CR-27, 2013-CR-239, and 2013-CR-342.  He was at

5  that time determined to be a habitual sex offender against

6  children and sentenced to life, an indeterminate sentence in the

7  Colorado Department of Corrections.

8        He appealed that conviction based on speedy trial

9  violations, and the case was ultimately -- the cases were

10  ultimately dismissed in 2018, and he was released from custody.

11  He was then indicted a year later for conduct in this case.

12        In this case, at trial, it was testified and proven

13  that he sexually abused both JW and KW while on long haul truck

14  trips which crossed state lines.  He also abused these children

15  at various homes in Grand Junction.  The abuse of JW lasted

16  between the ages of six and twelve.  The abuse of KW lasted

17  between the ages of ten and eleven.

18        Both victims described how the defendant gave them

19  doses of melatonin to make them sleepy, and then assaulted

20  them -- or he assaulted them when he believed they were asleep.

21  They were left in the care and custody of him because their

22  parents were not very -- well, the parents were -- had other

23  difficulties, and didn't concentrate so much on their children.

24        His influence over these children was very great.  As I

25  mentioned, JW testified that the defendant became a father

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   figure to him, and I remember in particular his testimony that

2   when he went to get glasses, he bought glasses that looked just

3   like the defendant's because he wanted to be just like him.

4           In addition to JW and KW, there were four other

5   juvenile victims who testified in court, as I previously

6   mentioned, in state court trial.

7           In this case -- the defendant also was convicted of

8   sexual assault on a child in 1991 for forcibly raping an

9   eight-year-old boy while he was staying in the child's home.

10   The defendant pled guilty to this offense and was initially

11   sentenced to probation.  The Court records indicate that his

12   probation was revoked for failure to comply with several

13   conditions, including continuing to have unsupervised contact

14   with minors, which included one minor spending the night with

15   the defendant.

16           The defendant's risk to the community resulted in the

17   Court resentencing him to eight years in prison.  The defendant

18   having been convicted of that offense was required to register

19   as a sex offender at the time that he committed the offenses in

20   this case.

21           The defendant essentially took away the innocence and

22   changed the lives of these children forever when he sexually

23   assaulted them.  They have had to relive the trauma of this

24   abuse, as the Government indicates not once but twice, by having

25   to testify in state court against him.

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    Based on my review of this case and after consideration

2    of the 3553(a) factors, I am inclined to impose a sentence of

3    life on each count, to run concurrently.  That being said,

4    Mr. McDermott, I will hear from you.  Then I will hear from

5    Ms. Surratt.  And then I will hear from Mr. McFadden if he

6    wishes to make a statement on his own behalf.

7    MR. McDERMOTT:  Your Honor, first of all, given the

8    procedural posture of the case, I have advised Mr. McFadden to

9    not make a statement today.  And that is my counsel and my

10   decision.  And I know that there are other people who are

11   present virtually, and if that makes anyone unhappy, then they

12   should be unhappy with me, because that's my decision and my

13   advice.

14   I will tell the Court I had elicited a letter from

15   Mr. Hockenberry, who did reside at the address who was also

16   listed as a trial witness.  The focus that I wanted that letter

17   to have is that he states that Mr. McFadden is a very good man,

18   and he does also reemphasize that Mr. McFadden does assist

19   people.

20   In my motion for non-guideline sentence, I believe that

21   I at least asserted our position, which essentially is the trial

22   theory of the case, which the jury, after a day and then a

23   second day of deliberation, rejected, and they found

24   Mr. McFadden guilty.

25   Part of the thrust of that motion as well is I -- while

19-cr-243-CMA     Sentencing Hearing     03-09-2023

 1    our theory of defense was rejected, I feel compelled to at least

 2    set forth what I believed the -- well, what I believed to be a

 3    response to relevant conduct needed to occur.  I had read the

 4    Government's sentencing statement, and I had attempted to

 5    respectfully reassert what we said at trial that was rejected.

 6    And in the pages of that document, I did at least try and set

 7    forth some facts that would say, Your Honor, they're asking you

 8    to believe absolutely every bad thing that has been asserted

 9    against Mr. McFadden, and there is room in there for you to

10    honor the jury's verdict but also find that Mr. McFadden is not

11    as -- and I'm going to say as, that he's not the horrific person

12    that has been depicted.

13         The point of my motion, and those were my words, was to

14    hopefully get that across to the Court so that the Court would

15    be inclined to impose the sentence that I am asking for instead

16    of the one that the Court just articulated.

17         I will point out that if the Court granted my objection

18    or if Mr. McFadden had not exercised his right to a trial, he

19    would guideline at 360 months to life instead of life.

20         He did assert his right to trial, and we did not

21    prevail, and the guideline is what the guideline is, but I do

22    believe that the 3553(a) factors do militate in favor of a

23    sentence less than life.  I will let the Court know and I will

24    reiterate that Mr. McFadden turns 52 on August 18.  He has

25    already spent a lot of time in custody for the allegations, both

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   in the federal system and the state system.

2        When he was released on February 27, 2018, between that

3   date and the date that he was brought back into custody, which

4   was May 21st, 2019, Mr. McFadden was leading a law abiding life.

5   He was living in Colorado Springs, as he's always done.  He was

6   working.  He was volunteering at a church in Colorado Springs,

7   and I believe, although I would have preferred for that window

8   to be wider, I think the window of over a year's time when he

9   was in the community demonstrates that something other than a

10  life sentence is appropriate.

11       In my motion, I do also make mention of some abuse that

12  occurred to Mr. McFadden when he was young.  I respectfully

13  request that the Court take that into account when the Court

14  imposes sentence.  Without getting into specifics, because I do

15  want to respect the families that have been involved in this

16  case, one witness -- one adult witness that we did interview,

17  she at least acknowledged Mr. McFadden's good side, and she

18  believed that even though -- even though she would not make a

19  defense witness, she did believe that Mr. McFadden was

20  redeemable, and she believed he would be redeemable with the

21  proper treatment, and she said she wished that that would have

22  happened back when Mr. McFadden was 18.

23       I just say that, Your Honor, because our trial position

24  has not changed, but we did not prevail.  And although we did

25  not prevail, I believe Mr. McFadden does deserve something other

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1    than a life sentence.

2         The one other thing I will point out is during the

3    course of this case, and it's been a long road for everyone,

4    Mr. McFadden has gone through four different facilities prior to

5    trial.  He was frustrated about the moves.  It made contact with

6    his counsel, both me and the attorneys who preceded me more

7    difficult than it would be under ideal circumstances.

8         Throughout every hearing, throughout every trial, even

9    though Mr. McFadden has wanted to jump up and say something, he

10   hasn't done that.  And he has treated everyone in connection

11   with this case during the course of the proceedings with nothing

12   but respect.  And I think that speaks volumes, and I frankly

13   would love to be bringing more people in here to talk about

14   Mr. McFadden and what he really is like and not what is on those

15   pages.  And to be very honest, Your Honor, it's been a

16   tremendous challenge, because probably the worst thing that has

17   happened from Mr. McFadden's perspective during this is he's on

18   his own.

19        And as we've talked about the state trial, when I

20   interviewed certain witnesses, they had reasons for not

21   testifying at the state trial.  And those generally were not

22   attributable to Mr. McFadden, but taking his side in the

23   community and putting your neck out there, it's been a tall ask

24   of anyone, and Mr. McFadden has been isolated for almost ten

25   years now.  And that's what this case has done to him.

19-cr-243-CMA      Sentencing Hearing    03-09-2023

1      I will simply say, even if the Court imposes a 30-year

2   sentence, that is likely a life sentence.  And if Mr. McFadden

3   did get out, he would be very late in life, and I am at least

4   asking for that window and a little bit of hope.  And

5   respectfully, Your Honor, I think that the sentence that I have

6   requested is appropriate under the circumstances.

7      And if the Court has any questions with respect to

8   anything that I've said or written, please let me know.  I will

9   do my best to answer them.

10      THE COURT:  Thank you, Mr. McDermott.  And I don't

11   have any questions.  You're very clear in your writing, and I

12   understand exactly your arguments.

13      MR. McDERMOTT:  Thank you.

14      THE COURT:  All right.  Ms. Surratt?

15      MS. SURRATT:  Thank you, Your Honor.  I don't take the

16   recommendation of a sentence of life imprisonment lightly here,

17   but it is the only appropriate sentence that's appropriate under

18   the circumstances.

19      As an initial matter, the guidelines range is life.

20   Mr. McDermott argues that had Mr. McFadden accepted

21   responsibility, his guidelines range would be lower.  It would,

22   but we stand here today after ten years of court proceedings,

23   and Mr. McFadden still doesn't accept responsibility for what

24   he's done to these victims and their families.

25      As the Court knows, the abuse in this case lasted for

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   at least five years.  Whether JW began being abused when he was

2   six or he was eight means that the abuse lasted five or -- five

3   or more years.

4       And so it started in at least 2008 when JW was around

5   six or eight years old, and it continued until the defendant's

6   arrest in 2013.  So, ten years ago, the defendant was arrested

7   in this matter.

8       For five years, the defendant sexually abused at least

9   five different children.  Most of them were around ten years old

10  or younger, and most of them he abused repeatedly.  JW testified

11  that not more than a few days went by before the defendant came

12  back to him and raped him again, and this went on for years and

13  years and years.

14      As the Court noted, this destroyed these children's

15  lives.  It destroyed their families' lives, and that is never

16  going to be repairable no matter what.  The sentence of life

17  imprisonment will feel like justice and finality for these

18  victims, but their lives have been forever changed by what

19  Mr. McFadden did.

20      Some of the kids are doing well, thankfully.  JW is

21  doing relatively well.  He told us that this changed his family

22  forever, but he's holding down a job, and he has a girlfriend,

23  and he hopefully has a bright future in front of him.

24      Other of the children are not doing well.  Many of them

25  have been arrested.  Some went on to have sexual abuse issues of

19-cr-243-CMA     Sentencing Hearing    03-09-2023

1    their own later in life.  And for some of them, their lives were

2    forever changed in a way they can never get back.

3           Simply, Your Honor, these offenses are pretty much the

4    most serious that we see in the criminal justice system, and so

5    from a pure punishment perspective, life imprisonment is

6    warranted here.

7           The nature and circumstances of the offense also

8    deserve a sentence of life.  As the Court has noted throughout

9    this proceeding, the defendant turned himself into a father

10   figure for these children when a number of them didn't have

11   biological fathers in their lives.  JW is perhaps the best, but

12   not the only example of this.  In fact, one thread that binds a

13   lot of these victims is they didn't have a father in their life.

14          Even KW, whose parents are still together, at the time

15   KW met Mr. McFadden, his father wasn't in his life.  So, the

16   defendant intentionally preyed on children from either broken or

17   fractured homes, and who otherwise didn't have a lot of material

18   or emotional support in their households.  And those were the

19   kids that we find as victims in this case.

20          He took advantage of these kids and their families.

21   Mr. McDermott characterizes some of this as the good that

22   Mr. McFadden had, and he tried to support these families.  He

23   took kids to school.  He bought them things their parents

24   couldn't afford.  This wasn't good.  This was grooming, and the

25   jury clearly believed Cheryl Young's testimony when she

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   explained that successful abusers of children go to great

2   lengths to abuse those children in order to keep the abuse from

3   becoming public.  And that is precisely what happened here.

4          That is exactly what happened in this case.

5   Mr. McFadden spent years gaining the trust and the affection of

6   these children and their families.  That wasn't being good.

7   That was grooming kids to have access to them for years and

8   years and years.

9          THE COURT:  I just want to interrupt for the sake of

10   the record, you said they go to great lengths to abuse the

11   children.  I think you meant to groom the children.

12          MS. SURRATT:  To groom the children so he could abuse

13   them for years and years and years, Your Honor.  Thank you.  He

14   made himself a trusted adult figure when there weren't many

15   trusted adult figures around.  As the Court noted, JW called

16   Mr. McFadden dad.  Others of the kids called him Uncle Mike, but

17   regardless of what they called him, they all expressed a degree

18   of affection for Mr. McFadden.  Some of them to this day, even

19   though they know what he did to them, even though they know how

20   horrible this abuse was and how he ruined their lives, some of

21   them look back and say, yeah, I loved him.  He treated me better

22   than anyone else in my life treated me.  That's the good that

23   Mr. McDermott is talking about.  It was grooming.  It wasn't

24   good.

25          So, the defendant took this trust, the trust he had

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1   built up over a number of years, and used it to do one of the

2   worst things an adult can do to children.  One of the very worst

3   things an adult can do to children.  In some ways it's worse

4   than killing them, because these kids will live with this for

5   the rest of their lives.  Most of them are never going to get

6   over it, and some of them we know aren't going to get over it.

7        The Court saw KW on the stand.  He barely made it

8   through his testimony.  His pain was palpable for the jury and

9   for everyone in the courtroom.  It's because of everything the

10  defendant did to these kids that the abuse was able to go on for

11  so long.  That's not good.  That's grooming.

12       The history and characteristics of the defendant also

13  counsel for a life sentence.  The defendant is also a recidivist

14  sex offender.  He was convicted, as the court noted, in the

15  early '90s, and to this day he hasn't taken responsibility for

16  his offenses.  At trial, he essentially called the kids liars.

17  He said repeatedly, well, I'm not calling them liars, but

18  they're lying.

19       And that's where we stand here today.  Ten years after

20  his first arrest in this case, he is still maintaining that all

21  these kids, now young adults, are simply lying.  The Court saw

22  the testimony.  The jury saw the testimony.  These kids weren't

23  lying.  They were bearing their souls for this courtroom because

24  they felt like it was the right thing to do.  And the jury

25  believed that testimony and convicted the defendant again for a

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1   second time.

2          I noted in my sentencing submission, Your Honor, that

3   it's not clear that this defendant can be specifically deterred.

4   He's already a recidivist.  He's not taking responsibility for

5   what he did.  And he spent all of the years that he abused these

6   children taking pains to cover up the abuse so it could

7   continue.  And so if that's the case, if this defendant can't be

8   specifically deterred, that makes a life sentence even more

9   important, because it is the only sentence that will protect the

10  public.

11         Being convicted once of raping MS didn't deter the

12  defendant, and there is nothing to suggest that this conviction

13  will deter him either.  And so it is the responsibility of the

14  Government and I believe the Court to make sure that this can

15  never happen to any other child ever again, and that's why I'm

16  asking for a life sentence.

17         Of course, general deterrence is also an important

18  factor for the Court to consider.  I think in the scope of

19  things for this Court to consider, it is not the most important,

20  but certainly we want to be sending the message to the public

21  that an individual who commits one of the most heinous crimes

22  that can be committed in society today will never see the light

23  of day again.  That is an important message for society to hear.

24  It's an important message for the victims and their families to

25  hear.

Kevin P. Carlin, RMR, CRR

19-cr-243-CMA     Sentencing Hearing    03-09-2023

1      At bottom, Your Honor, the horror of Michael McFadden

2  has gone on for 15 years.  That's ten years since he was

3  arrested, and at least five before that that he was abusing JW,

4  KW, and the other children.  That is more than long enough for

5  all of these kids and their families.  This defendant needs to

6  go to jail for the rest of his life for his crimes.  There's no

7  other sentence that's appropriate.  And for that reason, Your

8  Honor, the Government is very clearly strenuously arguing for a

9  sentence of life imprisonment.

10      THE COURT:  All right.  Thank you.  Mr. McFadden, I

11  understand what Mr. McDermott said, but I need to hear from you.

12  Do you wish to make any statement to me before I impose sentence

13  on your own behalf?

14      THE DEFENDANT:  No, Your Honor.

15      THE COURT:  All right.  As a result of the United

16  States Supreme Court's rulings in *United States versus Booker*

17  and *United States versus Fanfan*, the United States sentencing

18  commission guidelines have become advisory to this Court.

19  Although this Court is not bound to apply those guidelines, it

20  has consulted them and taken them into account along with the

21  sentencing factors identified at 18 United States Code Section

22  3553(a).

23      The Court makes the following findings concerning the

24  objections to the presentence report.  The two-level increase

25  pursuant to United States sentencing guideline section

19-cr-243-CMA    Sentencing Hearing    03-09-2023

1  2G1.3(b)(2)(B) does apply to the calculations for both KW and

2  JW.  The Court overrules the defendant's objection to its

3  consideration of other relevant conduct to the extent that it

4  noted it on the record.

5       The Court determines that no finding is necessary

6  concerning the remaining objections, because the controverted

7  matters have either been addressed through revisions of the

8  report or will not be taken into account.  They were not taken

9  into account in calculating the sentence, and will not be taken

10 into account by this Court in determining the sentence it should

11 impose.

12      Neither the Government nor the defendant has challenged

13 any other aspect of the presentence report.  Therefore, the

14 remaining factual statements and guideline applications are

15 adopted without objection as the Court's findings of fact

16 concerning sentencing.  The Court finds that the total offense

17 level is 43.  The defendant's criminal history category is two.

18 That results in an advisory imprisonment range of life and a

19 fine range of 25,000 to $250,000, a supervised range of five

20 years to life.

21      For the reasons previously stated by this Court and by

22 the Government, the Court finds that when the history and

23 characteristics of this defendant as well as the nature and

24 circumstances of the instant offense are juxtaposed with the

25 goals of sentencing pursuant to 18 United States Code Section

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    3553(a), a variant sentence is not warranted in this case.

2          The Court finds no reason to depart or vary from the

3    guideline range which does not exceed 24 months, and will impose

4    a sentence within that range.

5          Pursuant to the Sentencing Reform Act of 1984, it is

6    the judgment of the Court that the defendant, Michael McFadden,

7    is hereby committed to the custody of the Bureau of Prisons to

8    be imprisoned for a term of life as to each of counts one, two,

9    three, four, and five, all counts to run concurrently to one

10   another.

11         Upon release from imprisonment, he shall be placed on

12   supervised release for a term of life on each of counts one,

13   two, three, four, and five, all counts to run concurrently.

14         Within 72 hours of his release from the custody of the

15   Bureau of Prisons, he shall report in person to the probation

16   office in the district in which he is released.  While on

17   supervised release, he shall not commit another federal, state,

18   or local crime, shall not possess a firearm as defined in 18

19   United States Code Section 921, and shall comply with the

20   standard conditions that have been adopted by this Court.

21         He shall not unlawfully possess a controlled substance.

22   He shall refrain from any unlawful use of a controlled

23   substance.  I didn't note, Officer Kinsella, was there a waiver

24   in this case, or did he impose the drug testing?

25             MR. KINSELLA:  It looks like -- I'm reading what

Kevin P. Carlin, RMR, CRR

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    Meghan wrote, Your Honor.  It seems that there was not a waiver.

2         THE COURT:  I didn't think there was a waiver, but I

3    didn't think there was an issue with that.

4         MR. KINSELLA:  I did notice one other thing, as the

5    Court is pronouncing sentence, technically the guideline range

6    does exceed 24 months, but as the Court has stated on the record

7    as to why the sentence is being imposed the way it is.

8         THE COURT:  Yeah.  That's standard language I use.

9    Okay.  So, the defendant shall submit to one drug test within 15

10   days of release on supervised release and to periodic tests

11   thereafter.  The defendant shall cooperate in the collection of

12   DNA as directed by the probation officer.  He also must comply

13   with the requirements of the Sex Offender Registration and

14   Notification Act as directed by the probation officer, the

15   Bureau of Prisons, or any state sex offender registration agency

16   in any location of where he resides, works, is a student, or was

17   convicted of a qualifying offense.

18        The Court notes that the following special conditions

19   of supervision are reasonably related to the factors set forth

20   at 18 United States Code Section 3553(a) and 3583(b).

21        Further, based on the nature and circumstances of this

22   offense and the history and characteristics of this particular

23   defendant, the following conditions do not constitute a greater

24   deprivation of liberty than reasonably necessary to accomplish

25   the goals of sentencing.

Kevin P. Carlin, RMR, CRR

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1    The defendant must participate in a sex

2  offense-specific evaluation and/or treatment program approved by

3  the probation officer.  This may include polygraph and visual

4  response testing as part of the required participation.  The

5  probation officer in consultation with the treatment provider

6  will supervise his participation in and compliance with the

7  treatment program.  He must comply with all rules and

8  regulations of the treatment program that he is -- that are

9  specified by the treatment agency and the probation officer.  He

10  must pay for the cost of treatment based on his ability to pay.

11    Second, he shall submit his person, property, house,

12  residence, papers, computers, other electronic communication or

13  data storage devices or media or office to a search conducted by

14  a United States probation officer.  Failure to submit to search

15  may be grounds for revocation of release.  He shall warn any

16  other occupants that the premises may be subject to searches

17  pursuant to this condition.

18    An officer may conduct a search pursuant to this

19  condition only when reasonable suspicion exists that he has

20  violated a condition of his supervision and that the areas to be

21  searched contain evidence of this violation.  Any search must be

22  conducted at a reasonable time and in a reasonable manner.

23    Third, except for his biological children, he must not

24  associate with any child or children under the age of 18, except

25  in the presence of supervision of an adult specifically

19-cr-243-CMA      Sentencing Hearing     03-09-2023

1  designated in writing by the probation officer.  The probation

2  officer will notify the designated adult of risk occasioned by

3  his criminal record or personal history or characteristics.  He

4  must permit the probation officer to make such notifications.

5  If he has incidental contact with children, he will be civil and

6  courteous to the children and immediately remove himself from

7  the situation.  All such incidental contacts must be immediately

8  reported to the probation officer.

9        Fourth, he must not have contact with any victim,

10 including correspondence, telephone contact, or communication

11 through a third party except under circumstances approved in

12 advance and in writing by the probation officer.  If he has

13 incidental contact with a victim, he must immediately remove

14 himself from the situation.  All such incidental contacts must

15 be immediately reported to the probation officer.

16        Although the provisions of the Mandatory Victims

17 Restitution Act of 1996 apply to this Title 18 offense, the

18 Court finds there is no restitution to be ordered.  The

19 defendant shall pay a special assessment of $500 which is

20 ordered due and payable immediately.  The Court finds that he

21 does not have the ability to pay a fine, so the Court will waive

22 a fine in this case.

23        Now, Mr. McFadden, I do want you to understand that I

24 take my task of sentencing very seriously.  It's the hardest

25 thing I have to do, and I have a lot of hard things on my

19-cr-243-CMA      Sentencing Hearing      03-09-2023

1   shoulders.  It's hard because on the one hand I know that I have

2   your life or at least part of it in my hands, and I want to be

3   fair to you.  But I also have an obligation to the public and to

4   society to protect them from these types of crimes, to promote

5   respect for the laws, and to impose a just punishment, but one

6   that's going to deter you and others from having similar

7   criminal conduct.

8          Now, what you did to these young children -- and I

9   believe that you did do them.  I believe their testimony -- was

10  heinous.  It truly was.  You have destroyed their lives, and you

11  didn't do it to just one.  You did it to multiple victims, and

12  you were very deliberate in your grooming of both the families

13  and these children.  And that's why I am sentencing you to life,

14  because I think you are a danger to children.

15         I do believe that a sentence of life on each count to

16  run concurrently with, if you ever get out, life of supervised

17  release, with the special conditions that I impose does reflect

18  the seriousness of your crime and is sufficient but not greater

19  than necessary to achieve the objectives of sentencing.

20         You are advised that if you desire to appeal, a notice

21  of appeal must be filed with the clerk of the court within 14

22  days after entry of judgment, or your right to appeal will be

23  lost.  If you are not able to afford an attorney for an appeal,

24  one will be appointed to represent you.  And if you request, the

25  clerk of the court must immediately prepare and file a notice of

19-cr-243-CMA     Sentencing Hearing     03-09-2023

1    appeal on your behalf.

2          Is there any other business to be brought to my

3    attention?

4          MS. SURRATT:  For the record, Your Honor, we did offer

5    the victims to speak today.  I know a number of them are on the

6    line listening, but it is my understanding that none of them

7    wished to make statements today.

8          THE COURT:  I'm sorry, and I should have asked about

9    that earlier.  Thank you, Ms. Surratt.  All right.

10   Mr. McDermott, anything further?

11         MR. McDERMOTT:  No.  Thank you, Your Honor.

12         THE COURT:  All right.  Thank you to the Deputy U.S.

13   Marshals for your assistance.  Mr. McFadden, I hope I don't ever

14   see you in my courtroom again.  I hereby remand you to the

15   United States Marshal for the District of Colorado.  Court will

16   be in recess.

17         (Proceedings concluded at 9:54 a.m.)

18

19

20

21

22

23

24

25

Kevin P. Carlin, RMR, CRR

1                          REPORTER'S CERTIFICATE

2

3

4              I, KEVIN P. CARLIN, Official Court Reporter for the

5      United States District Court for the District of Colorado, a

6      Registered Merit Reporter and Certified Realtime Reporter, do

7      hereby certify that I reported by machine shorthand the

8      proceedings contained herein at the time and place

9      aforementioned and that the foregoing pages constitute a full,

10     true, and correct transcript.

11              Dated this 14th day of April, 2023.

12

13

14

15

16                                  _____
                                    Kevin P. Carlin, RMR, CRR
17                                  Official Court Reporter

18

19

20

21

22

23

24

25