```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3    Criminal Action No. 19-cr-243-CMA

 4     UNITED STATES OF AMERICA,

 5          Plaintiff,

 6          vs.

 7     MICHAEL TRACY McFADDEN,

 8          Defendant.

 9    ----------------------------------------------------------------

10                      REPORTER'S TRANSCRIPT

11                 Trial Preparation Conference

12    ----------------------------------------------------------------

13          Proceedings before the HONORABLE CHRISTINE M. ARGUELLO,

14    Judge, United States District Court for the District of
      Colorado, commencing on the 25th day of October, 2022, in

15    Courtroom A602, United States Courthouse, Denver, Colorado.

16                         APPEARANCES
      For the Plaintiff:

17    JEREMY L. CHAFFIN and ANDREA L. SURRATT, United States
      Attorney's Office, 1801 California Street, Suite 1600, Denver,

18    CO 80202

19

20    For the Defendant:
      SEAN M. McDERMOTT, McDermott Stewart & Ward LLP, One Sherman

21    Place, 140 East 19th Avenue, Suite 300, Denver, CO 80203

22    BENJAMIN LaBRANCHE, Benjamin R. LaBranche PLLC, 1544 Race
      Street, Denver, CO 80206

23

24
      Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room

25    A259, Denver, CO 80294, (303)335-2358
```

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1              P R O C E E D I N G S

2          (Proceedings commenced at 3:16 p.m.)

3              THE COURT:  Good afternoon.  The Court calls criminal

4    case number 19-cr-243-CMA, encaptioned United States of America

5    versus Michael Tracy McFadden.  Counsel, would you please enter

6    your appearances.

7              MR. CHAFFIN:  Good afternoon, Your Honor.  Jeremy

8    Chaffin for the Government.  Co-counsel Andrea Surratt is also

9    on video today, Your Honor.

10             THE COURT:  Good afternoon.

11             MR. McDERMOTT:  Good morning, Your Honor.  Sean

12   McDermott appearing on behalf of Michael McFadden.  Mr. McFadden

13   is present.  Also, co-counsel Ben LaBranche is also present.

14             THE COURT:  Good afternoon.  So, we're here today for

15   the final trial preparation conference.  This case is set for a

16   two-week trial beginning on November 7, 2021.  I'm hearing some

17   feedback from somewhere.  It's the jail?  Okay.  Although it's

18   set for two weeks, because that Friday of the first week of

19   trial is a holiday, a federal holiday, we only have four days

20   that week.  And as I told you, I am flying out of state on the

21   following Friday, so we have eight days to try this case.

22             Before we turn to the trial schedule, I want to address

23   the COVID-19 protocol.  It's fairly simple at this point.

24   Everyone is going to wear a mask during jury selection, but

25   after the jury is selected, my practice is to allow the jurors

Kevin P. Carlin, RMR, CRR

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1  to decide whether or not they want to continue to have people

2  wear masks.  If people have been fully vaccinated, they do not

3  have to wear a mask.  It they are not fully vaccinated, they do

4  have to wear a mask.  My staff and I are fully vaccinated.  I

5  need to find out from you all whether you all are fully

6  vaccinated.

7              MR. CHAFFIN:  I am, Your Honor.

8              MS. SURRATT:  I am too, Your Honor.

9              THE COURT:  Mr. McFadden, you're on mute, but I take

10  that to mean that you are vaccinated?  All right.  You're on

11  mute.

12              MR. LaBRANCHE:  And I am also vaccinated, Your Honor.

13  This is Ben LaBranche.

14              THE COURT:  And, Mr. McFadden, are you vaccinated?

15              THE DEFENDANT:  Yes.  I did get vaccinated.

16              THE COURT:  All right.  I will need for you all to

17  check with the witnesses to make sure that they are vaccinated.

18  And if they're not, then they need to wear masks when they're in

19  the courtroom testifying or at any other time.  All right.

20              Now let's turn to the trial schedule.  Jury selection

21  will begin at 8:30 a.m. on that first day of trial.  I like to

22  pick my juries a week in advance if it's going to be longer than

23  two weeks.  I just can't fit it into my schedule this time.  I

24  have requested -- because of the two-week length of the trial

25  and the issues that are involved in this case, I have requested

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1  a special panel of 100 jurors just to make sure we have enough

2  jurors.  And with that large a jury pool, we cannot conduct voir

3  dire at the courthouse, so I have also made arrangements to have

4  a room reserved at the convention center for jury selection.

5       Each subsequent day of trial, we will begin at

6  8:00 a.m.  I do the condensed trial day, as you all know.  I

7  expect counsel to be present in the courtroom at 7:30 each day

8  of trial if there are any outstanding issues that need to be

9  addressed, because we do not address them once the jury has

10  arrived.  We address them before the jury arrives.

11       I intend to seat 12 jurors plus one alternate.  That

12  means that we will need 31 in what I will call the virtual jury

13  box at the convention center.  That will be 13 plus the 11

14  peremptory strikes by the defendant, and seven peremptory

15  strikes by the Government.  So, jurors one through 31 will be

16  seated in numerical order in, I believe it's going to be the

17  space to my right as we sit there.  And then the rest of the

18  jurors will be in what I call the gallery in the back of the

19  room.  And then counsel tables will be set up there probably

20  facing -- well, on the left side of me facing the jury.

21       All right.  I have changed the way I do jury selection

22  in terms of the voir dire, because to avoid as much as possible

23  the spread of any virus or germs, passing the microphone from

24  juror to juror just doesn't work, and it doesn't work to have

25  each juror get up out of their seat, cross over a bunch of other

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1    jurors, go to the microphone to answer each question.

2         So, I have modified the entire selection process, and

3    with the exception of the initial hardship questions -- we will

4    address those first -- I am going to ask all of the questions

5    that I intend to ask before I have any of the jurors stand up

6    and give their answers.  So, I will ask a question.  I will have

7    the jurors who would say yes raise their hand, and then I will

8    give them shorthand for what they need to write in their

9    notebooks.  They will each have a notebook.  If they would have

10   answered yes -- so, when they come up to the microphone they

11   will have a list of questions they would have answered yes to.

12        We will do that for each question until I finish asking

13   all of my questions.  And then after I ask all of my questions,

14   we will have 31 sitting in the box.  Each of them will come

15   forward to the microphone.  They will answer all the background

16   information such as name, where they live, employment,

17   education, et cetera.  And then they will answer -- I will ask

18   them were there any questions you would have answered yes to,

19   and we will go through that further voir dire with them.

20        Once I finish, I will ask you all if there are any

21   challenges for cause.  And if there are, then we will deal with

22   those at that point.  If there aren't, and/or if there are and

23   I've dealt with it, then I will give each of you 15 minutes to

24   conduct further voir dire.

25        After you conduct your voir dire, I will call you up

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1  once again to ask if you have any challenges for cause.  And

2  then after we deal with that, then we have the 31 seated, there

3  will be no further voir dire of the jurors.  You will be given a

4  strike sheet.  You will do simultaneous strikes.  So, 31 names

5  will be there.  Defendant will be able to do his strikes.  The

6  Government will do their strikes.  You won't know who each other

7  is striking, and the first 13 left in the jury box in numerical

8  order will be the jurors who will be serving on that jury.  Are

9  there any questions?

10        MR. CHAFFIN:  Your Honor, in a trial that we did

11  recently, we did openings during jury selection.  Do you

12  anticipate that again?

13        THE COURT:  No, I do not.  Just because of the nature

14  of this case and the fact that I'm calling 100 jurors, I think

15  that we will just wait for opening statements to be done after

16  we have selected the jurors.

17        MR. CHAFFIN:  Your Honor, is there a particular seat

18  that will be the alternate, or I can't recall --

19        THE COURT:  No.  The way I conduct mine is we -- no

20  one knows, not even me, who that alternate is.  At the end of

21  the trial, when the case is going to be delivered, we take the

22  cards, put them in the box, and we draw one at random then.  No

23  one knows who that juror is going to be until the very end.

24        And I think that works better, because if we know, then

25  it kind of causes you to play to certain jurors, and I don't

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1   want the jurors thinking that they need to pay less attention

2   because they might be an alternate juror.  So, I will tell them

3   we're picking 12 plus an alternate, but I don't explain to them

4   what that all means.

5            MR. CHAFFIN:  Thank you, Your Honor.

6            THE COURT:  Mr. McFadden, you're still on mute.

7            MR. McDERMOTT:  I apologize.  I thought I had unmuted

8   that.  Your Honor, one question I have, I had discussed with the

9   prosecution the possibility of a joint juror questionnaire.  I

10  would intend to keep it short, if the Court would entertain

11  that.  Is that anything the Court would be interested in?  I

12  feel it might expedite some of the jury selection, especially if

13  we have a large panel in this case.

14           THE COURT:  I usually do not use juror questionnaires

15  because I think they take up more time than they're worth.  I'm

16  not sure what you would anticipate putting into the juror

17  questionnaire.  If you all want to get together and come up with

18  something, I would be glad to look at it, but I will tell you my

19  experience is they're more time-consuming than they are worth in

20  terms of I can discover the same information by asking the

21  questions as we can through the jury questionnaire.

22           MR. McDERMOTT:  Okay.  Thank you.

23           THE COURT:  All right.  As I mentioned, once we select

24  the 13 jurors in this case, they decide whether or not we will

25  continue to wear masks during the course of the trial.  I will

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1   tell you from my experience in Grand Junction, we won't be

2   wearing masks, although if people are not vaccinated, they will

3   have to wear masks.

4           On the subsequent days of trial, we will -- as I

5   mentioned, we will begin at 8:00.  We will finish around 3:00 or

6   3:30.  And I do that because several years ago I was selected,

7   believe it or not, to serve on a four-week jury trial, criminal

8   trial in Adams County, and that experience taught me several

9   things.  Number one, the jurors are brain dead by about 3:00 or

10  3:30.  They are not absorbing anything that you're giving to

11  them at that time.  If they manage to keep their eyes open after

12  lunch, they're just not absorbing it.

13          And I found that there was a lot of wasted time, and I

14  knew what was happening, or they would give us a 15-minute

15  recess, and 45 minutes later we're still there.  They give us an

16  hour and a half for lunch.  We ate our lunch in half an hour.  A

17  lot of wasted time that didn't have to be wasted.

18          So, we will start at 8:00.  We will go from 8:00 to

19  10:00 with what I call transcript time, which is the witness is

20  being examined.  We will take a 15-minute break at 10:00, from

21  10:00 to 10:15.  And it will truly be just a 15-minute break to

22  the extent we can keep it that way, because the jurors are told

23  they need to bring their own snacks.

24          We will then go from 10:15 to 12:15 with another two

25  hours of transcript time.  We will take a half an hour for lunch

Kevin P. Carlin, RMR, CRR

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1    at 12:15, from 12:15 to 12:45, and then we will come back and go

2    from about 1:45 to 2:45, 3:00, or 3:30, depending on where we're

3    at with the witnesses.  And then I let the jury go home.

4         So, my calculations are that because we don't waste

5    time on long breaks or bench conferences, we get all but about

6    maybe half an hour of what most judges get in a 9:00 to

7    5:00 regular scheduled trial.  So, you will have about six hours

8    of transcript time each day.

9         I'm trying to figure out for jury selection, at least,

10   how we will handle objections.  I have asked to have

11   transceivers, but we don't have the white noise, so I have asked

12   to see if there may be a hallway or something we could retire to

13   so when we have hardship challenges we can go out into the

14   hallway and discuss it.

15        In the courtroom itself, I have ordered the

16   transceivers so that we can use them there.  We should have the

17   white noise there, and then you all don't have to be getting up

18   and coming to me if there are any longer objections.  We will

19   just turn on the transceivers.  And I find those work really

20   well, especially for our court reporter, because he or she hears

21   distinctly what is being said, and we tend not to talk over each

22   other when we're on the transceivers.  We wait for each other to

23   talk.

24        So, I ordered two for the defense counsel and one for

25   the defendant and two for the Government and then mine, and so

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1  we should have enough transceivers to be able to conduct that

2  without having to approach the bench.

3          We're going to post signs, because it is a public

4  trial, but if people come in, if they're not -- if they're not

5  vaccinated, they have to wear masks.  If they are vaccinated,

6  they do not have to wear masks.  All right.  Any questions about

7  that aspect of the trial?

8          MR. CHAFFIN:  Your Honor, I imagine that there will be

9  an exclusion order for witnesses, but I did have a question

10  about even victims that may want to be present in the courtroom.

11          THE COURT:  Victims, as long as they're not

12  testifying, can be present in the courtroom.  If they're

13  testifying, they will be subject to the sequestration order.

14  And as I said, I don't know what your witnesses look like, so I

15  will leave it to you to advise your witnesses what the

16  sequestration order means in terms of their not being able to

17  talk to anyone else or hear any of the testimony that's going

18  on.  And that if they violate that, they could be subject to

19  contempt of court, or they could be excluded as being witnesses

20  at this trial.

21          MR. CHAFFIN:  Yes, Your Honor.  I think that in order

22  to exclude the witnesses, the Court has to make a particular

23  finding under 18 USC 1771.

24          THE COURT:  To exclude witnesses?

25          MR. CHAFFIN:  To exclude victims from the courtroom,

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1    it requires clear and convincing evidence that their testimony

2    would be affected.  So, if the Court would make those findings,

3    or --

4              THE COURT:  Yeah.  I think it's very obvious that if

5    the witnesses who are victims could hear the other witnesses

6    testify and hear what's going on in court, that would definitely

7    have the impact of perhaps pushing their testimony a certain

8    way, and so I find that it is in the best interest of everyone

9    concerned that the sequestration order apply to them as well.

10             Once they testify, then they can sit in the courtroom,

11   but prior to their testimony, I don't want them discussing their

12   testimony with anyone other than the lawyers, and I don't want

13   them listening to anybody else's testimony.  All right.

14             With respect to exhibits, I did receive the defense

15   exhibit list this morning.  I have the Government's exhibit list

16   from before.  I guess my one question looking through the

17   Government's exhibit list, under what scenario does the

18   Government anticipate that it would offer prior testimony of

19   witnesses such as Ed Prescott or Michelle Ricks?

20             MR. CHAFFIN:  Your Honor, I don't think that it's

21   likely that we would introduce them, but it certainly could come

22   up if they just completely don't recall a specific fact that we

23   think is important.

24             THE COURT:  And I would assume you would use it more

25   to refresh recollection than as substantive testimony?

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1       MR. CHAFFIN:  Yes, Your Honor.  That's true.  We were

2   just -- it could also potentially be admissible as prior

3   testimony under the hearsay exception, but we don't anticipate

4   that that's likely to occur.

5       THE COURT:  Okay.  I had a question about that.  I

6   understand the authentication.  I understand that it could be,

7   if the witness is considered unavailable, prior testimony under

8   oath, all of that.  And not remembering could be unavailability.

9   But I just wanted to anticipate, especially those two witnesses.

10  I would anticipate that those two witnesses would not have a

11  problem recalling what they did in terms of this case.

12      MR. CHAFFIN:  We don't anticipate that.

13      THE COURT:  All right.  Very good.  And is there any

14  stipulation to any of the exhibits, or is foundation going to

15  have to be laid for all of them?

16      MR. CHAFFIN:  I think we're still working on that,

17  Your Honor.

18      THE COURT:  All right.

19      MR. CHAFFIN:  I think that we will have that

20  discussion and hopefully be able to reach an agreement on some

21  or most, hopefully, exhibits.  I do, Your Honor, have a question

22  about the delivery of exhibits.

23      THE COURT:  Yes.  Because I'm going to be leaving for

24  Grand Junction, and I'd like to actually have them -- is it too

25  early to get a thumb drive of the exhibits delivered here by

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1   Monday of next week?

2          MR. CHAFFIN:  We can do that, Your Honor.

3          THE COURT:  All right.  Because I would like to --

4   actually, I need to get my laptop and have it inserted in my

5   laptop so I have it for trial once we're all there.  So, if you

6   all can give a thumb drive with the exhibits to us by Monday,

7   October 31st, of course with a copy to opposing counsel, that

8   would be greatly appreciated.  If you could have an exhibit list

9   to me indicating which exhibits have been stipulated to, send

10  that by email to Arguello chambers by 5:00 p.m. on Friday before

11  trial, that would be greatly appreciated.

12         And with respect to witnesses, I have received a

13  witness list from the Government.  Mr. McDermott, I haven't

14  received anything from you.  I need that mostly for purposes of

15  voir dire.  So, I understand that defendant does not want to

16  disclose what its defense theory is, but I do need to have a

17  list of witnesses.  I didn't know if I could just rely on the

18  subpoenas that have been issued for that purpose.

19         MR. McDERMOTT:  Your Honor, the subpoenas contain most

20  of them.  I am going through and double checking everything.  I

21  will go ahead and send you something.  I was following your

22  practice standards with respect to that.  So, yes.  I do intend

23  to --

24         THE COURT:  If you could get that to me by sometime

25  middle of next week, because I will be working on my voir dire

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1  preparation next week, and I would just plug that into it.  And

2  that can be ex parte just to me.  You don't have to share that

3  with the Government.

4          MR. McDERMOTT:  Okay.  And I will -- I do have a

5  question related to witnesses and the trial that I planned on

6  asking at the end, Your Honor.

7          THE COURT:  Actually, you can ask it now, since we've

8  already talked about witnesses.

9          MR. McDERMOTT:  Okay.  Just, as the Court knows, I had

10  filed a couple of motions to continue.  I had planned on filing

11  one more and letting the Court know that I have -- I filed the

12  motion for subpoenas with the marshals.  I have not delivered

13  them yet.  I do not -- I'm very concerned that the marshal will

14  not have enough time to subpoena the witnesses.  And I will just

15  say, you know, I apologize, but I kind of wanted to see what

16  witnesses were necessary, and after our hearing last week on the

17  17th, I endeavored to get all of this done.

18          I went to Grand Junction yesterday to take care of a

19  couple of them myself.  After speaking with the marshals today,

20  they sounded confident that they would be able to subpoena these

21  witnesses.  I did work with your document staff, Your Honor, as

22  well, and I will follow up with them and the marshals.

23          My question is if I'm having difficulty getting these

24  witnesses served and to court, how would you like me to handle

25  that, Your Honor?  That's the only reason I moved to continue is

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1    I wanted some margin for error so that if something bad

2    happened, we wouldn't be in the middle of trial.

3            THE COURT:  At that time, you're just going to have to

4    file whatever motion you think is appropriate, if that indeed

5    becomes the case.

6            MR. McDERMOTT:  Okay.  All right.  And the other thing

7    related to that, Your Honor, I did speak with the marshals

8    today, and they indicated that they were aware of a number of

9    subpoenas that are outstanding between the two parties.  And

10   they kind of questioned whether we [audio distortion] have days

11   for the trial right now.  So, I just -- I just pose that to you,

12   Your Honor, because I didn't really know how many subpoenas the

13   prosecution had outstanding.  The marshals indicated that it was

14   quite a few.

15           THE COURT:  I guess I didn't understand.  What do you

16   want me -- what is the question of me?

17           MR. McDERMOTT:  I understand we have eight -- it

18   sounds like we have eight days reserved.  The marshals, when he

19   looked at everything, thought that even the -- even a full ten

20   days may not be enough.

21           THE COURT:  Well, that's -- I told you what you have,

22   and that's what you have.

23           MR. McDERMOTT:  Okay.

24           THE COURT:  If we have to continue it until after the

25   Thanksgiving break, then we will continue it until after the

19-cr-243-CMA      Trial Preparation Conference     10-25-2022

1   Thanksgiving break, but I don't -- do not anticipate -- I mean,

2   I know that lawyers in an abundance of caution subpoena

3   everybody they think might be needed, but that when it comes

4   down to it, oftentimes they can decide how to limit the number

5   that are coming in.

6          So, I don't -- I don't think based on even what I've

7   issued that this case should take longer than eight days.  And

8   I'm not the type that allows you all to just dillydally.  I will

9   keep pushing you if I think that you're delving into areas that

10  are not really relevant.  My feeling for this case is that eight

11  days should be sufficient.

12         An eight-day jury trial equates to about 48 hours of

13  testimony, or what I call the transcript time.  And so I think

14  when you take out opening -- voir dire and opening statements

15  and closing arguments, you are still left with about 40 hours,

16  so 20 hours per side.  I think that's more than enough for the

17  witnesses.

18         I also will tell you that I do not allow the re-calling

19  of witnesses in my courtroom.  If a witness is put on to

20  testify, they will testify only one time, unless it's for

21  rebuttal.  All direct and cross examination of that witness will

22  be done while that witness is on the stand.  So, if you have

23  subpoenaed that witness, both sides have subpoenaed the witness,

24  then there is no objection that it goes beyond the scope of

25  direct.  Then we just do all of our examination at that time.

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1      MR. McDERMOTT:  Your Honor, can we rely on will call

2  witnesses without having to subpoena that witness?

3      THE COURT:  Well, that's something you gotta work out

4  with the Government.

5      MR. McDERMOTT:  Okay.

6      THE COURT:  All right.  I will conduct the voir dire,

7  the bulk of the voir dire as I indicated.  If you all submit to

8  me reasonable and non-argumentative questions for voir dire, I

9  will incorporate those into my voir dire.  But in this

10  particular case, I will also give you each 15 minutes to dig

11  down deeper if I don't dig deep enough when we do the voir dire

12  of the panel.

13      I have received the Government's jury instructions.  I

14  don't know, Mr. Chaffin, if you and Mr. McFadden have been able

15  to get together to indicate whether or not you stipulate to

16  those jury instructions or not.  But, Mr. McDermott, I haven't

17  received anything from you, and so I need you all to let me know

18  whether there are going to be competing instructions or whether

19  you can stipulate to the instructions that are submitted by the

20  Government.

21      MR. McDERMOTT:  Okay.  And, again, I apologize, Your

22  Honor.  As I indicated, I admittedly am a little bit behind with

23  a couple of those things.  When would you like me to submit

24  mine?

25      THE COURT:  Well, I like to have the proposed final

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1    instructions to you all before trial starts so that you know

2    what I think the law in the case is going to be.  So, I'm not

3    sure how much time you have, but if you can get that to me by

4    Monday of next week, the 28th -- I'm sorry.  That's the 31st.

5    That will be helpful to me, because then I can get them to you

6    by the end of the week.

7         MR. McDERMOTT:  Okay.

8         THE COURT:  The charging conference -- what I do is I

9    will go through the instructions.  If they're stipulated to,

10   that's great.  If they're not, if there's competing or

11   non-stipulated, I will go through those.  I will send out the

12   instructions that I propose as the final instructions, and I

13   will have detailed notes in those instructions as to why I

14   adopted the defendant's or why I adopted the Government's or why

15   I adopted neither, and I will cite to case law.  And also so

16   that you can be adequately prepared for the charging conference

17   which will be held near the close of the Government's case.

18        And at that point, we will go through each instruction

19   one by one, and you will be able to put on the record any

20   objection you have to the decision I've made or to persuade me

21   that my decision is wrong and I should actually go in another

22   direction.

23        With respect to the transcribing of the final

24   instructions as they will be read to the jury, I request your

25   permission to -- as careful as we try to be, there's always

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1    some, you know, grammatical or other error that's in there that

2    doesn't affect the substance of the instruction, but I

3    interlineate any changes like that, non-substantive, and I

4    initial it.  So, I'm asking your permission to be able to do

5    that type of interlineation if it turns out that there are those

6    sorts of amendments that are necessary to correct typographical,

7    clerical, or syntactical errors.

8         MR. CHAFFIN:  No objection from the Government, Your

9    Honor.

10         MR. McDERMOTT:  That sounds fine, Your Honor.

11         THE COURT:  And also, I speak fast.  I read even

12    faster.  And I will read the instructions as they are finalized

13    verbatim.  They will become part of the court record.  I also

14    ask your permission not to force my court reporter to try to

15    keep up with me as I read these instructions, since they will be

16    part of the court record anyway.  Do I have your permission not

17    to have them transcribed?  Anybody?

18         MS. SURRATT:  Your Honor, I think Jeremy is cutting in

19    and out.  No objection from the Government.

20         THE COURT:  Okay.

21         MR. McDERMOTT:  No objection, Your Honor.

22         THE COURT:  All right.  Very good.  And I mentioned

23    the witnesses will be sequestered, and you all need to -- with

24    the exception of the Government's advisory witness, of course.

25    I need you all to make sure your witnesses know that, and what

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

1  the consequences are.

2          As I mentioned, I minimize bench conferences during the

3  trial.  I don't think we should be taking up the jury's time, so

4  if there are issues that come up, either evidentiary or legal

5  issues, you all need to show up early, and we will conduct those

6  matters before 8 o'clock when the jury is here and we start, or

7  you stay later at the end of the day, and we will address them

8  at that time, but we will minimize and use only as really

9  necessary any bench conferences for something that may arise

10  from the trial.

11          All right.  If there are any unusually spelled names or

12  words, it is very helpful to get those to the court reporter

13  before trial.  I am not sure who my court reporter for this

14  trial is going to be.  Now that I'm senior, I do not have an

15  assigned court reporter.  So, I need you to submit that glossary

16  to Nicholas_Richards@cod.uscourts.gov by 4:00 p.m. on the

17  Thursday before trial.

18          All right.  Now it's your turn to ask me any questions

19  that you may have about conducting trials before me.  I know the

20  Government has tried cases before me, so you're probably pretty

21  up to speed.  I think it's been a while, Mr. McDermott, since

22  you've tried anything before me.

23          MR. McDERMOTT:  Yes, Your Honor.  I guess one question

24  I do have is with respect to order of proof.  Does the Court

25  require us to submit that ahead of time?

19-cr-243-CMA    Trial Preparation Conference    10-25-2022

 1          THE COURT:  In what regard?  I've never had that

 2   happen.

 3          MR. McDERMOTT:  Just a witness order.

 4          THE COURT:  Oh, no.  It is helpful if you have your

 5   witness lists in the order that you intend to call them, but I

 6   don't hold you to it, because things come up during trial.  But

 7   it would be helpful if you and the Government could get together

 8   and decide what witnesses are going to be called in what order

 9   so that you all can be prepared.

10          MR. McDERMOTT:  And I assume the United States has

11   done that, but I have not tried a case with Mr. Chaffin or

12   Ms. Surratt.  So, that's part of the reason for my question.

13          THE COURT:  They're very -- I have found Mr. Chaffin

14   to be very cooperative with defense counsel, and very

15   professional.  So, I know that they've worked out -- in the last

16   trial that we had, they worked out, you know, ahead of time

17   these are the witnesses that will cover this day, and we're

18   going to reorder.  And maybe tomorrow we will do this, but I

19   know he's very good at working with opposing counsel.

20          MR. CHAFFIN:  And, Your Honor, just to, I guess, put

21   everyone -- or let everyone know, the order that is on the

22   witness list is the order that we anticipate.  We anticipate

23   calling every witness that's on the will call list.  We also

24   anticipate calling the 414 witnesses, but we put them on the may

25   call list in light of the Court's ruling.  The only caveat to

19-cr-243-CMA     Trial Preparation Conference     10-25-2022

1   that is we may try and work in Cheryl Young in a different

2   order, depending on her availability.  Just to make sure that we

3   can get her testimony in on a day that she is available.  So the

4   Court is aware, we estimate that we would likely rest, probably

5   on the 15th, assuming that the 414 witnesses come in, and

6   earlier if they do not.

7           THE COURT:  Okay.  All right.  Well, we may have to

8   push it earlier than that, because that doesn't give the defense

9   much time.  Because that will only be two days for them.

10          MR. CHAFFIN:  We will endeavor to move as quickly as

11  we possibly can, Your Honor.

12          THE COURT:  All right.  And if necessary, if we

13  push -- I guess I will just redo my airline tickets, and we will

14  just stay to finish this trial.  But I am going to be pushing

15  you all, because I do have -- I have confirmed reservations to

16  leave on the 18th for months now.  But this case is more

17  important, so if necessary, I will just change my flight plans.

18  All right.  Anything further from you all?  Any other questions?

19          MR. CHAFFIN:  No, Your Honor.

20          MR. McDERMOTT:  Not at this time, Your Honor.

21          THE COURT:  All right.  Very good.  If there's nothing

22  further, then Court will be in recess.

23      (Proceedings concluded at 3:50 p.m.)

24

25

Kevin P. Carlin, RMR, CRR

23

<u>REPORTER'S CERTIFICATE</u>

I, KEVIN P. CARLIN, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true, and correct transcript.

Dated this 12th day of May, 2023.

_____
Kevin P. Carlin, RMR, CRR
Official Court Reporter