1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3    Criminal Action No. 19-cr-00243-CMA-GPG

4

5    UNITED STATES OF AMERICA,

6          Plaintiff,

7          vs.

8    MICHAEL TRACY MCFADDEN,

9          Defendant.

10   ---------------------------------------------------------------

11                      REPORTER'S TRANSCRIPT
                           Status Conference
12

13   ---------------------------------------------------------------

     Proceedings before the HONORABLE CHRISTINE M. ARGUELLO, Senior
14      Judge, United States District Court for the District of
        Colorado, commencing on the 3rd day of November, 2022, in
15    Courtroom A602, United States Courthouse, Denver, Colorado.

16                           APPEARANCES

17   For the Plaintiff:
     JEREMY L. CHAFFIN, U.S. Attorney's Office, 205 North 4th St.,
18   Ste. 400, Grand Junction, CO 81501

19   ANDREA L. SURRATT, U.S. Attorney's Office, 1801 California
     St., Ste. 1600, Denver, CO 80202
20
     For the Defendant:
21   SEAN M. MCDERMOTT, McDermott Stuart & Ward, LLP, 140 East 19th
     Ave., Ste. 300, Denver, CO 80203
22

23

24

25       Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
                Denver, CO 80294, 303-335-2108
            Proceedings reported by mechanical stenography;
                transcription produced via computer.

1              *         *         *         *         *

2         (The proceedings commenced at 10:00 a.m.)

3              THE COURT:  Good morning.  The Court calls criminal

4    case number 19-cr-00243-CMA, encaptioned United States of

5    America versus Michael Troy McFadden.  Counsel, we're having

6    this status conference essentially to go over some of the

7    logistics of trial starting on Monday.  I noted this morning,

8    though, that Mr. McDermott had filed another motion to

9    continue the trial, not for an EOJ continuance, but within the

10   speedy trial timeframe based on essentially that he has

11   witnesses who have not yet been subpoenaed.

12             Do you wish to add anything more to that,

13   Mr. McDermott?

14             MR. MCDERMOTT:  Your Honor, I will simply say that

15   the friendly witnesses that I have I intend to come to -- they

16   will come to court.  I have the main one under subpoena.  I

17   did issue a motion this morning because, while I have a

18   promise for another friendly witness to come to court, they're

19   not secured by a subpoena, and I did get a good address for

20   them, and they are now -- well, hopefully they will be

21   secured, but I am confident that they will be here for the

22   trial.

23             Part of the problem that I have is the witnesses that

24   I am attempting to secure by and large are not friendly

25   witnesses.  They're generally family members of others or

1   people who have heard someone they care about say something

2   that is inconsistent with the Government's theory of the case.

3   So I am still missing quite a few of those witnesses, and I --

4   frankly, earlier in October when I perhaps seemingly

5   overreacted with the venue change, this was a big reason why

6   is I was concerned that I wouldn't have a margin of error to

7   get these kinds of witnesses to trial, and just with the

8   amount of potential 414 evidence that may or may not come in,

9   I just feel that I need to have these witnesses secured before

10  I can say with a straight face that we're ready for trial.

11          Factually and everything else, we'll be ready.  I

12  will be ready within speedy.  We've gotten up to speed, but I

13  -- you know, if something comes in, and I believe that I could

14  have impeached that witness, but I don't have someone there to

15  do it, then I feel that I have a problem, and I have an

16  obligation to let the Court know that this is where I'm at

17  right now.  And parenthetically, I just put in the motion as

18  well, and I will kind of say this, and I want to be very

19  clear, Ms. Surratt and Mr. Chaffin were very cooperative, and

20  before I received any returns, Ms. Surratt went and gave me

21  the addresses of witnesses that I anticipated I might have

22  problems with, and so I appreciate that.

23          They are, however, adverse, and I've been trying to

24  organize things so that I can hopefully get them served at the

25  same time with the other witnesses, and that's what I've been

19-cr-00243-CMA-GPG     Status Conference        11/03/2022    4

1   trying to accomplish the last couple to few days.  And I have

2   I think one witness who I did not mention to be a potential

3   problem that is one.  I think I can mollify that with a short

4   continuance.

5          And then the only other thing I will -- the only

6   other thing I will add is two of the returns that came in

7   today -- and this has been kind of a problem -- for instance,

8   it looks like that we've secured L.Wr.  That is actually a

9   different L.Wr. than the one who is involved in this case, and

10  that's the same with Crystal M.  Ms. Surratt did give me a

11  phone for Ms. M////////.  I do not have -- I did not have an

12  address for her until late last night when my investigator was

13  able to track down a good address for her.  And I am calling

14  off the other Crystal M. who did receive the subpoena.

15         And these are just kind of the things that have come

16  up, and that's the basis for me asking to set it within ends

17  of justice is I feel that these are things that I can clear up

18  in a short period of time, and, you know, if I -- this is our

19  focus right now, and if I can't find a witness with my

20  resources in the remainder amount of time in another 30 days

21  or so, then I will just have to go without.  And I have

22  already started to eliminate what I would say are some of the

23  less critical impeachment witnesses, but there are a lot of

24  witnesses that -- they're just not secured that I think very

25  well would be needed to rebut the Government's case.

                         Sarah K. Mitchell, RPR, CRR

1          THE COURT:  Mr. Chaffin.

2          MR. CHAFFIN:  Thank you, Your Honor.  Mr. McFadden

3    (sic) alerted us he had difficulty locating some witnesses.

4    Within hours we provided addresses at his request.  We

5    explained as we had explained I think three weeks ago that we

6    would be more than happy to assist with trying to locate these

7    witnesses and getting them served, but he specifically

8    requested only addresses about a week ago.  It's not until

9    today, the Thursday before trial, that he is asking for

10   assistance serving these witnesses.  I think most of the

11   witnesses that I'm aware of that Mr. McDermott is attempting

12   to locate are here in Grand Junction, and if he provides the

13   subpoenas we will work to facilitate their service, but I also

14   believe that many of these witnesses are likely not relevant

15   to the trial.  I'm not aware of what purpose they would serve

16   in this case.

17          Your Honor, to be frank, there is no continuance that

18   would be possible within speedy trial.  If we continue this

19   trial, we will have to -- there will need to be a different

20   attorney to replace me.  I have been appointed -- I will be

21   leaving the bench -- or I will be leaving the office to join

22   the state bench, and that will severely prejudice the

23   Government if we continue this trial for a short period of

24   time because there is no attorney that can just jump in and

25   replace me who has been involved in this case for three and a

19-cr-00243-CMA-GPG    Status Conference        11/03/2022    6

1   half years and is shouldering at least half of the

2   Government's case.  I don't think it's fair to the witnesses.

3   I don't think it's fair to the Government to delay this case

4   even one day, and we would be opposed to that, Your Honor.

5   Thank you.

6           THE COURT:  All right.  Well, I've looked at the

7   motion.  I've looked at the subpoenas that were requested, and

8   I will say the most recent round of subpoenas, 80 to

9   85 percent of them are local.  I'm not sure what other

10  witnesses.  I did also look through the description of the

11  testimony, and I will tell you right now some of their

12  testimony would be totally irrelevant to this case.  Now, that

13  testimony that would go to the character for truthfulness of

14  some of the witnesses, the alleged victims, would be relevant,

15  but there are others that would be totally irrelevant to this

16  case.  We're not going to get off on collateral impeachment

17  matters.

18          So the jury has been noticed up.  We expect 100

19  people to come in on Monday.  We are all set up for that, and

20  I think that it's just a little bit too late at this point.

21  There's no reason these witnesses couldn't have been tracked

22  down earlier.  And as the Government says, they have indicated

23  that they would assist, and that assistance wasn't requested

24  for a couple of weeks after the fact.  So I'm denying the

25  motion.  There's no way I can continue this trial.  I have

Sarah K. Mitchell, RPR, CRR

1    another two-week trial coming up after Thanksgiving which I

2    would have to bump for this, and I just don't think we can --

3    all our jury personnel, everybody is going out there now, so I

4    think it would be unduly prejudicial to the Government, to the

5    witnesses, and to the Court, as a matter of fact.

6            And I think most of these witnesses -- at a certain

7    point impeachment witnesses become cumulative and redundant,

8    and I think with the list you have of the local people, if

9    those can be served, then that's what will happen.  Some of

10   these that we're bringing in that are out of state I'm not

11   really sure how relevant their testimony is because there's

12   not been an offer of proof with respect to how they would

13   testify as to the character for truthfulness of the witnesses.

14   So I'm not even sure that the out-of-state witnesses are all

15   that relevant to this case, and we're not going to get out in

16   the bushes on some of these others that have been indicated.

17   So I'm denying the motion for a continuance.  We are going to

18   trial on Monday morning.

19           MR. MCDERMOTT:  Your Honor, if I may, just so my

20   record is clear, I had the communication with the Government

21   before I even received any of the returns.  I had been in

22   contact with the clerk's office to see -- and the marshals

23   service to try and find out who had not been served, and, for

24   example, we had attempted to serve the W////////////.  One of

25   them is an eye and ear witness with respect to Counts 1 and 2.

19-cr-00243-CMA-GPG    Status Conference    11/03/2022    8

1   That's not just a collateral witness.  Ms. Surratt did give me

2   addresses, but, frankly, that was before I even knew that we,

3   in fact, did not have service.

4       And what I told the United States is I said I was

5   hoping to have the returns of service by now, but I don't, so,

6   yes, if you can give me the addresses, I'd appreciate it.  And

7   what I did tell them is I would still try to have the marshals

8   do it and perhaps use them as a backup.  And part of the

9   reason for that is one of the witnesses who called the court,

10  and you may not view her as imperative, but Dian S. is a

11  witness.  She's been dodging my subpoena.  Ms. R////, who I

12  was provided an address for, but I did already have a correct

13  address for her, she's been dodging my subpoena as well.

14      So I appreciate Mr. Chaffin and Ms. Surratt's

15  assistance, but I don't think they can promise me they're

16  going to be able to serve all the witnesses, and I've just

17  been trying to coordinate it so that I could hopefully secure

18  them with a high success rate.  So I wasn't just ignoring them

19  or not doing something.  Those were the reasons behind it, and

20  I just want the Court to be very well aware that I don't view

21  these as -- there are a few here that I could probably live

22  without, but there are a couple who I'd consider very critical

23  witnesses that I would like under subpoena.

24      THE COURT:  All right.  The motion is denied.  We're

25  starting trial on Monday morning.  And one of the reasons I

Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG     Status Conference          11/03/2022     9

1    wanted the status conference is that there's a pool of 100

2    coming in.  The jury division has indicated that they're going

3    to need the courtroom and the conference room downstairs to

4    set up and orient them.  Therefore we're not going to be able

5    to take any matters on Monday morning if there are any, and

6    that's what this is all about.

7           So I have set up a -- just to let you know, a tour of

8    the courthouse, which, Mr. Chaffin, you may not need, but I'm

9    not sure how familiar you are with the courthouse,

10   Mr. McDermott.  But I've set up a tour at 4 o'clock on Sunday

11   afternoon.  We're meeting at the back door of the courthouse.

12   Don't be late, because I'm very timely.  We will enter.  If

13   you're not there at four, you're not going to get in.  So

14   they're letting us in.  I wanted a tour so you all can see the

15   setup.

16          For voir dire what we're going to do is there are 15

17   seats in the jury box.  There are seven benches that will fit

18   five, unless they're really big people, fairly comfortably.

19   We're putting chairs in the aisles so that essentially the 34

20   that I need for the jury box are going to be 15 in the jury

21   box and then 19 in the left-hand side by the jury box.  Well,

22   right-hand side from the bench where I'm sitting.  Those will

23   be -- that will be essentially my virtual jury box because I

24   wanted you to be able to see that as well.

25          There are -- and then the rest of the jurors -- well,

19-cr-00243-CMA-GPG    Status Conference          11/03/2022    10

1   not really the rest.  You can only really fit comfortably in

2   there -- my count is 59.  So we have 34 on one side and 25 on

3   the other in the benches and chairs that are there.  Then

4   we're just going to have some down in the conference room that

5   is downstairs that they use for jury deliberations, I believe.

6   And then some will just be on text.  Just you're going to be

7   free to go until we need you, the ones who are later in

8   number.

9          So that we can do 59 there, and if we have to run

10  through all of those 59, then we'll bring some up from the

11  jury room, and then the others will be texted to come in so

12  that they're ready to be on call.  But that means that we're

13  probably going to have several instances of the questions,

14  because, unlike in Denver where we could have them in the jury

15  deliberation room listening to the questions I ask, we're

16  essentially going to have to do two or so rounds of voir dire

17  if we go beyond the 59 that are going to be in the courtroom

18  at the time.

19         So the tour is set up so that you can see how the

20  setup is going to be.  I had asked them if there are smaller

21  rooms.  They have two witness rooms, I guess, we will use for

22  you all to wait in because we cannot be in the courtroom while

23  they're doing the orientation and all that with the jury.  I

24  wanted you to see those rooms.

25         Mr. McDermott, are you familiar with the technology

Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG    Status Conference          11/03/2022    11

1    that is in that courtroom?

2          MR. MCDERMOTT:  I actually meant to ask about that at

3    our last trial prep conference.  I even went to the CLE that

4    Mr. Butler did, and I asked what do they have in Grand

5    Junction.  It's been a few years since I've been in Grand

6    Junction.  So if you can inform me, I would appreciate it,

7    Your Honor.

8          THE COURT:  Well, essentially it's not for me to do

9    it.  That's for you -- they asked me because we've not been

10   contacted by anybody to do tech training.  I told her if you

11   are going to be there at four, she could stay and show you how

12   to do the tech in that courtroom versus what we have up here,

13   and she said she'd be willing to do that.  So if you want tech

14   training, it will be after the tour at four.

15         MR. MCDERMOTT:  Okay.  We will take them up on that.

16   What I mean is -- do they -- my understanding is they don't

17   have the same advanced technology that is in the Arraj

18   courtroom.  Is it primarily Elmo or --

19         THE COURT:  Yes.  I believe -- Mr. Chaffin, you're

20   much more familiar with that.  I think it's just the Elmo.

21   Maybe you can even connect in.  I'm not sure.

22         MR. CHAFFIN:  So you can -- there's an Elmo, and then

23   you can also connect a laptop and present using a computer,

24   but there's not the tablets that you can draw on.  There's not

25   things like that in the Grand Junction courtroom.

                          Sarah K. Mitchell, RPR, CRR

1    THE COURT:  And they don't have the individual

2    monitors.  They have a big TV screen up that's up by the bench

3    that kind of blocks my view of the jury, but that's what they

4    use for showing the exhibits.  And so, yeah, you will --

5    you'll meet with Angela Barnes is the JA there for Judge

6    Gallagher.  She'll be showing up at four to give us the tour

7    and show you how to work the technology in there.

8         That also means, though, that because you can't get

9    in there, you all are going to need to set up on Sunday as

10   well in the courtroom whatever you want to have in there

11   unless you want to bring it all in after we get the jury

12   seated.  So I just want to let you know it is probably best

13   for you to set up with what you feel comfortable leaving there

14   in the courtroom on Sunday as well.  Then you'll be in the

15   little conference rooms that they have while they're getting

16   the jury oriented.

17        I couldn't remember, Mr. Chaffin, if I'd asked you

18   this, but is your advisory witness going to be Ed Prescott?

19        MR. CHAFFIN:  No, Your Honor.  Our advisory witness

20   is going to be Special Agent Alex Zappe.  We've instructed

21   Detective Prescott to act as a normal witness, so he will be

22   under the sequestration order.

23        THE COURT:  And how do you spell his name?

24        MR. CHAFFIN:  Alex, A-l-e-x, and then Zappe,

25   Z-a-p-p-e.

19-cr-00243-CMA-GPG   Status Conference          11/03/2022   13

1        THE COURT:  Okay.  All right.  That's with respect to

2   the tour then I just need to enter that.  Jury instructions

3   you all did an excellent job.  I have incorporated the

4   disputed unanimity instruction into the elements instructions

5   that were in the final and in the preliminary instructions.

6   So I am including the unanimity instruction, but not as five

7   separate instructions.  It's essentially going to go into the

8   element instructions for Counts 1 -- I believe it was 1 and 2

9   and then 3 -- the three that -- three that were together and

10  then the two that were together.  It will just go in there.

11  I'll send those out to you.  I'm going to be reading the

12  preliminary instructions which do have the elements

13  instructions.  Do you want to have at least the jurors to have

14  copies of the two elements instructions so they have that

15  during the course of the trial?

16        MR. CHAFFIN:  The Government doesn't have an

17  objection to that.

18        MR. MCDERMOTT:  I, frankly, had not thought about

19  that ahead of time, Your Honor.  I think that's okay.  Would

20  you let me defer until Monday on that?

21        THE COURT:  No, I need to make copies.  I am going to

22  be without copies and everything.  I don't have the same

23  luxuries that I have in my Denver office.

24        MR. MCDERMOTT:  That's fine, Your Honor.

25        THE COURT:  If you can get back to me by the end of

19-cr-00243-CMA-GPG    Status Conference         11/03/2022   14

 1   today.

 2            MR. MCDERMOTT:  Okay.

 3            THE COURT:  Talk to your co-counsel.

 4            MR. MCDERMOTT:  Okay.

 5            THE COURT:  Just e-mail chambers.  Let me know.  I'll

 6   be in the office tomorrow getting everything ready to bring up

 7   to Grand Junction.

 8            MR. MCDERMOTT:  I appreciate that.  Thank you.

 9            THE COURT:  All right.  I also wanted to let you know

10   we're not going to do a condensed trial day.  There's no way

11   we're going to get through this case -- if the 414 witnesses

12   come in and then the impeachment witnesses come in, there's no

13   way we're going to be able to do a condensed trial day and get

14   this done in the eight days that we have.  So we'll start at

15   8:30, and we will adjourn at 4:30 each day.  Only half an hour

16   for lunch and two 15-minute breaks, so we're going to go

17   pretty much full days.

18            Now, I would appreciate if you all could narrow down

19   the witness lists.  I have -- well, before I saw the subpoenas

20   this morning, I'm not sure how many are duplicates, but I had

21   12 will-call and 12 may-call on the Government's list.  I had

22   18 on the defendant's list, and then this morning there were a

23   bunch more subpoenas requested.  I would really appreciate if

24   you could narrow it down to those witnesses that you really

25   need and you intend to call, because I think that's just way

19-cr-00243-CMA-GPG    Status Conference        11/03/2022    15

1    too many witnesses for what's involved in this case.

2            MR. MCDERMOTT:  Your Honor, a lot of those subpoenas

3    are duplicates.  I almost submitted ones that were previously

4    issued, but I changed the date on these to the 14th from the

5    7th, and I didn't want to start -- I didn't want to start

6    doctoring the subpoenas that had already been issued.  That

7    was my thinking.

8            THE COURT:  All right.  And then I wanted to discuss

9    how do we -- how do you all think we should proceed with the

10   minors and their families in order to provide the

11   confidentiality where we don't use their full names, we use

12   initials during voir dire, because I have to give the full

13   names.  And in my court we have each juror or set of jurors

14   has the box, and then we would have them seated there.  So I

15   guess the only thing I can do is print them all out on paper,

16   give 34 and make sure we collect 34 from those who are in the

17   box, and then we have to go through those again with any new

18   ones that come in.  But I didn't know if you had --

19   Mr. Chaffin, if you've done this in Grand Junction how you all

20   handle the confidentiality.

21           MR. CHAFFIN:  Your Honor, I think -- I think the

22   ability to ensure that Mr. McFadden receives a fair trial sort

23   of trumps the interests of privacy, and so traditionally I

24   think we have just referred to the victims by their names in

25   court so that jurors could explain whether or not they knew

                        Sarah K. Mitchell, RPR, CRR

1    these people because I think that's a factor that goes into

2    whether or not Mr. McFadden receives a fair trial.  And so I

3    don't have an objection to referring to the minor victims by

4    their full name during trial.  I would ask that transcripts of

5    proceedings be redacted and use initials in transcripts, but I

6    think it will be easier, less confusing, and enable a fair

7    trial if we refer to the victims by their full names.

8         THE COURT:  All right.  And that -- I appreciate

9    that, because I do think that's -- it would be very

10   complicated to do something otherwise.  So we will do that,

11   and then my court reporter is here so she will know that when

12   we do the transcripts, they would be redacted, and we will --

13   I'll provide her with the coded sheet that you gave me for

14   what the initials are that need to go in so that she can -- I

15   hope she can put those in her machine, and any time that comes

16   up it will come up with the initials anyway.  Very good.  That

17   was one thing I was a little concerned about.

18        I have heard that the deputy marshals in Grand

19   Junction always restrain -- they use leg restraints on

20   defendants, and I called them and said, no, no, there's no

21   way.  Mr. McFadden has not been unruly.  He's -- there's no

22   reason to have to put him in leg chains, and even if they have

23   the -- unless he acts up during the trial, I don't want him

24   restrained in any way.  So they checked with their

25   supervisors, and they've agreed to that.

Sarah K. Mitchell, RPR, CRR

1      MR. MCDERMOTT:  Thank you, Your Honor.  I appreciate

2  that.

3      MR. CHAFFIN:  And, Your Honor, Deputy Marshal Estes

4  and Deputy Marshal Brown are in my office.  I invited them

5  over because they had had some logistical questions that I

6  thought Mr. McDermott and the Court might want to chime in on

7  or direct.  I don't know if the Court wants to take that up

8  now, but they're here in my office.

9      THE COURT:  I do.  I've gone through what I wanted to

10  go through with you, and I was going to open it up to you all.

11  Are there any other matters that you think -- we did instruct

12  the new set of subpoenas.  We've contacted the clerk's office

13  downstairs and said we need to issue these ASAP, so hopefully

14  those are going out this morning, and we can get those served.

15  But is there anything else that you all want?  I'd be glad to

16  hear from the deputy marshals.

17      MR. CHAFFIN:  Thank you, Your Honor.  So my

18  understanding is the deputy marshals wanted some clarification

19  on movement of Mr. McFadden so that the jurors don't see him

20  in marshal custody.  They had some initial concern about

21  bringing Mr. McFadden in to the building when jurors might be

22  in the lobby.  My understanding, however, is that the

23  courthouse doesn't open up until 7:30 in the morning, and that

24  it would be -- it would require a contract change with the

25  Federal Protective Service guards to open up any earlier than

19-cr-00243-CMA-GPG     Status Conference        11/03/2022    18

1   that.  And assuming that that is the case, the marshals

2   believe they can bring Mr. McFadden in, get him into the

3   building before any juror arrives, but they do have concerns

4   about bringing him into the courtroom and how that will

5   appear.  That I wanted to bring up.

6           THE COURT:  I'm not sure how to handle that because

7   normally we don't have a problem because we have him seated in

8   the courtroom before they even bring up the jury, but that's

9   because we can do the orientation downstairs in the assembly

10  room in Denver.  Here they're going to have to use the

11  courtroom to orient jurors, and so I'm not sure -- we may have

12  to just -- well, I guess once we orient the first set of

13  jurors, we may just have to have them exit and come back in so

14  they can get the defendant seated, and then excuse them --

15  when we take breaks, excuse them.  They have to go out in the

16  hall before they take him out.  That's all I can think of we

17  can do there.

18          MR. CHAFFIN:  Your Honor, they traditionally --

19          THE COURT:  Open to it.

20          MR. CHAFFIN:  Your Honor, I think what makes the most

21  sense is to excuse the jurors while Mr. McFadden is brought

22  into the courtroom.  I'm not sure if the marshals would remove

23  his leg irons prior to him -- during transportation.  I

24  understand the Court to say that they would remove it while he

25  is in the courtroom, but --

                        Sarah K. Mitchell, RPR, CRR

1          THE COURT:  No.  I would like them removed outside in

2    the back area where he comes in so he walks in without leg

3    chains.  I'm not sure what security protocol they use there,

4    and I know it's more difficult because there's no holding cell

5    next to the courtroom the way there is in Denver.  It is much

6    more difficult for us to hold these trials in Grand Junction

7    because we don't have the right facilities, but I guess I

8    would hear from Marshal Estes what he would recommend.

9          MR. CHAFFIN:  And, Your Honor, this may make more

10   sense to discuss during the 4:00 p.m. Sunday tour.  That way

11   we have -- we can all see how the courtroom is set up, where

12   the holding cell is.  I know there's a screen that they place

13   in the hallway so that jurors won't be able to see them moving

14   the defendant from the marshal's office into the entrance of

15   the courtroom, but I think perhaps it makes sense to defer

16   this discussion until Sunday.

17          THE COURT:  All right.  So anything further that you

18   all need to bring up?

19          MR. CHAFFIN:  Your Honor, I do have a few questions

20   and topics that I would like to address.  The first is we have

21   a victim who is in custody that will be writted over.  I would

22   request based on the Victim Rights Act and the right of

23   victims be treated with dignity and respect he be allowed to

24   appear in street clothes.  We will facilitate that and obtain

25   those clothes, but I ask the Court to order that he be allowed

                    Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG    Status Conference          11/03/2022    20

 1   to appear in casual clothing rather than jail uniform.

 2          THE COURT:  Yes.  That's granted.

 3          MR. CHAFFIN:  Along those same lines, Your Honor, I

 4   wanted to inform the Court that E.S., the victim I was

 5   referring to who is in custody, his attorney has informed me

 6   that he would invoke his Fifth Amendment privilege if asked

 7   any questions about the details of his pending charges.  We

 8   had a discussion where he understands that it is certainly

 9   fair game to inquire about any potential benefit that

10   Mr. S////////, may anticipate, but if asked about the factual --

11   the facts of his charge, he would invoke his privilege against

12   self-incrimination.  I wanted to make Mr. McDermott and the

13   Court aware of that so that hopefully that doesn't become an

14   issue during trial.

15          THE COURT:  In what way would that even be relevant?

16          MR. CHAFFIN:  I don't think the facts are relevant at

17   all.  I just -- I think that it would be --

18          THE COURT:  The fact that he might be incarcerated at

19   this point would be relevant, I guess, but the underlying

20   charges I think are totally irrelevant to this case unless

21   someone can make an argument to me otherwise.

22          MR. CHAFFIN:  I agree with the Court and ask that --

23   I wanted to highlight this.  I would -- I don't want a

24   situation where our witness has to invoke on the stand.  I

25   think that is improper, and so I wanted to bring that to the

19-cr-00243-CMA-GPG     Status Conference     11/03/2022     21

1    Court and Mr. McDermott's attention beforehand to avoid that.

2          MR. MCDERMOTT:  We had attempted to interview that

3    witness, and his attorney contacted us and made the same

4    request, so we are aware of it.

5          THE COURT:  All right.

6          MR. CHAFFIN:  Another item that I learned is that

7    some of the victims had contacted BACA, Bikers Against Child

8    Abuse, and my understanding is that there may be members of

9    that organization there during trial at some points to support

10   the victims.  I wanted to make the Court aware of that, and if

11   there are any concerns, the Government's position is that they

12   are members of the public that can appear as they wish, but if

13   there are concerns that the Court has, we can try to address

14   them.

15         THE COURT:  No, as long as they're not disruptive.

16   It's a public courtroom.  They're allowed to come in.  They

17   cannot be disruptive, but there's no way you can exclude them

18   unless they are disruptive.  I would just say let them know

19   they need to behave themselves.

20         MR. CHAFFIN:  And, Your Honor, I don't think that

21   they -- I don't think that there will be any disruption.  They

22   do -- I don't know how they will be attired.  They do on

23   occasion wear, I guess, biker leathers that say Bikers -- that

24   say BACA on them.  I'm not familiar with how distinctive that

25   is, but they may appear in that fashion.  I don't know if the

Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG    Status Conference        11/03/2022    22

1   Court has concerns about that or Mr. McDermott has concerns

2   about that, but I'm not sure the Government has any control

3   over that either.

4        MR. MCDERMOTT:   That was the one thing that crossed

5   my mind as you were talking about them, but spontaneously I

6   don't have anything to say.   I'll take a look over the weekend

7   and see if I have concerns, and if I do have concerns, whether

8   the Court could even do anything about them.

9        THE COURT:   Right.   It's a public courtroom, and just

10  -- I don't know how -- when I have cases with Hells Angels,

11  and they show up, and they sit in the back of the courtroom,

12  and as long as they're not disruptive, that's their right.

13       MR. CHAFFIN:   Your Honor, the last thing that I

14  wanted to inform the Court and Mr. McDermott is that I -- he

15  mentioned Dian S.   The Government has -- Ms. S////////, and I.S.

16  has been actively avoiding service.   I do not believe that we

17  will actually call I.S. to testify in the case.   We have not

18  been able to locate him.   I think that he is intention -- he

19  and his grandmother are intentionally avoiding service because

20  they do not want to be involved in any of this.

21       I wanted the Court to know that almost certainly we

22  will be scratching him off the list of may-call witnesses.

23  Our intent is to limit any additional witnesses to just the

24  414 witnesses, and so I think beyond the will-call witnesses

25  that we identified, we are likely to only call four additional

Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG    Status Conference         11/03/2022    23

1   witnesses who are all 414 victims.

2          Your Honor, we estimated our schedule and took into

3   account the Court's condensed trial schedule, and even taking

4   the condensed trial schedule we anticipate that we will likely

5   rest -- assuming that we can pick a jury on the first day, we

6   will likely rest the afternoon of the 14th.  The Government

7   intends to expedite our case as much as possible, and we have

8   condensed -- in our preparations we have condensed our

9   evidence as much as we can.  And so I think that we will be --

10  I think we'll be in a good position for trial.

11         THE COURT:  Okay.

12         MR. MCDERMOTT:  Your Honor, I do have a question, and

13  it dovetails with the Government's presentation and also the

14  way that you have indicated you like to do trials.  I know

15  that you do not like the recalling of witnesses.  I do note

16  that Detective Prescott is the first witness, and given the

17  evidentiary posture of the case I believe that if he's the

18  first witness, there's certain things he's not going to

19  testify to, and depending on whether and how any 414 evidence

20  comes in, I can envision me wanting to recall him in my case.

21  Will that be permissible, Your Honor?

22         THE COURT:  I guess -- I guess what you're telling me

23  is that there may be some issues you would not want to

24  cross-examine him about until you know the Government is going

25  to put on evidence with respect to that.  Is that what you're

Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG     Status Conference        11/03/2022     24

1   telling me?

2        MR. MCDERMOTT:  Yes, essentially.  I mean, I think

3   from my response to their other acts motion you can kind of

4   see where I was coming from, that I thought that Mr. S////////,

5   who was having problems kind of started everything with an

6   allegation, and even one of the kids who had said he was not

7   telling the truth then piled on, and then we ended up having a

8   number of allegations after the fact.  And if we're not --

9        THE COURT:  Right.  I understand.  And that would be

10  an exception.  I would make an exception there.  You do have

11  him under subpoena as well?

12       MR. MCDERMOTT:  I do not, and that's why I'm asking,

13  because I know he's a will-call witness, and my experience

14  with may-call or will-calls is generally in the civil arena

15  where if we list them as a will-call, you have to have them

16  available for the other party.  So that was the reason for my

17  question last week is do I need to secure him under subpoena

18  in order to recall him or can I --

19       THE COURT:  Mr. Chaffin, are you okay with him -- I

20  think that under the circumstances of this case until he knows

21  what you are going to introduce, he may not want to

22  cross-examine him about certain points.  Do you have any

23  objection to him calling him and does he have to put him under

24  subpoena to do so?

25       MR. CHAFFIN:  I would ask -- let me back up, Your

19-cr-00243-CMA-GPG    Status Conference        11/03/2022    25

1   Honor.  From the Government's perspective and based on the

2   Court's ruling, we think that it's largely in Mr. McDermott's

3   control whether or not the 414 evidence comes in.  The Court

4   has indicated that depending on how Mr. McDermott

5   cross-examines the victims, the 414 evidence will come in if

6   he undermine -- if he attempts to undermine the credibility of

7   these witnesses.  So I think that Mr. McDermott better than

8   perhaps anyone here knows full well whether or not 414

9   evidence is going to come in.

10          With that said, if Mr. McDermott elects not to

11  cross-examine Mr. Prescott on certain topics, we would ask

12  that the Court explain to the jury that the Court had

13  initially reserved ruling on whether certain evidence came in.

14  My concern is that it will make our witness look like he is

15  withholding evidence if the defense has to call him later, and

16  I don't want the jury to believe that the Government is -- was

17  hiding anything from them.  They were limited based on

18  evidence.

19          THE COURT:  I will leave it to you all to come up

20  with what instruction you want me to give the jury if and when

21  that happens.  The question is do you require Mr. McDermott to

22  actually subpoena him?

23          MR. CHAFFIN:  No.

24          THE COURT:  I will allow you to call him later in

25  your case if that becomes necessary.

                    Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG    Status Conference         11/03/2022    26

1          MR. MCDERMOTT:  And the only -- I guess just let me

2    address this because Mr. Chaffin brought it up.  I did not

3    interpret the Court's ruling the same way as the United States

4    did.  I mean, I am going to -- I mean, I'm going to challenge

5    the credibility in one way or another of the two complaining

6    witnesses.  I mean, there's just no way around that, and I

7    don't think me doing that automatically opens us up to all the

8    414 material.  My understanding from the hearing is that we

9    still wanted to see how evidence came out and whether under

10   403 -- under the 403 prong of 414 it was admissible.  That was

11   my takeaway from the hearing.

12         THE COURT:  And it's not as simple as opening the

13   door.  I still have to do the 403 analysis and all.  But the

14   likelihood is, depending on how you challenge their

15   credibility, if I do the balancing test, and these cases are

16   so hard because it's always just he said/he said in this case,

17   and that's why they have the Rule 414 in these cases.  We'll

18   have to see how it turns out in trial, but I do have to do the

19   403 balancing test even if you challenge their credibility.

20         MR. MCDERMOTT:  Okay.  I don't think I'm saying

21   anything out of turn.  Just so everyone knows, I have kind of

22   -- I mean, that's why my witness list is so long, and that's

23   why I was asking for more time is things that might not appear

24   very important can become important, and I have kind of done

25   my preparation on a few different contingencies that are based

                     Sarah K. Mitchell, RPR, CRR

19-cr-00243-CMA-GPG    Status Conference        11/03/2022    27

1   on how the evidence comes in, and I'll just leave it at that.

2          THE COURT:  Okay.  All right.  Anything further from

3   either of you?

4          MR. CHAFFIN:  Nothing further from the Government,

5   Your Honor.  Thank you.

6          THE COURT:  Mr. McDermott?

7          MR. MCDERMOTT:  Nothing, Your Honor.  Thank you very

8   much.

9          THE COURT:  All right.  So we'll see you at 4 o'clock

10  on Sunday, and we'll be prepared to go.  I understand that our

11  jury coordinators are going to be there at 6:30 on Monday to

12  be ready for you to come in at 7:30.  I think they've been

13  noticed up for 7:30.  And if the deputy marshals can be there

14  or at least somebody can be there so we can walk through with

15  them at 4 o'clock on Sunday, that would be helpful.

16         MR. CHAFFIN:  Yes, Your Honor.

17         THE COURT:  Because I'd like to understand where they

18  need to bring him in and how can we essentially work with them

19  to make it as fair as we can for Mr. McFadden.  All right.  If

20  there's nothing further then, Court will be in recess.

21      (The proceedings were concluded at 10:43 a.m.)

22

23

24

25

                    Sarah K. Mitchell, RPR, CRR

1                          REPORTER'S CERTIFICATE

2

3          I, SARAH K. MITCHELL, Official Court Reporter for the

4    United States District Court for the District of Colorado, a

5    Registered Professional Reporter and Certified Realtime

6    Reporter, do hereby certify that I reported by machine

7    shorthand the proceedings contained herein at the time and

8    place aforementioned and that the foregoing pages constitute a

9    full, true and correct transcript.

10         Dated this 23rd day of May, 2023.

11

12

13

14              _____/s/ Sarah K. Mitchell_____

15                   SARAH K. MITCHELL
                    Official Court Reporter
16            Registered Professional Reporter
                 Certified Realtime Reporter
17

18

19

20

21

22

23

24

25

                    Sarah K. Mitchell, RPR, CRR